**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL J. CLEVELAND, SR.,**

                              **Plaintiff,**

        **v.**                                                **1:16-CV-1235 (NAM/DJS)**

**SCHENECTADY COUNTY, NORTHEAST PARENT &**
**CHILD SOCIETY, and TINA CHEETHAM-COLON,**

                              **Defendants.**
_____

**APPEARANCES:**

Michael J. Cleveland, Sr.
15 Nixon Street
Hoosick Falls, NY 12090
_Plaintiff, pro se_

Parisi, Coan & Saccocio, PLLC
Patrick J. Saccocio, Esq., of counsel
Steven V. DeBraccio, Esq., of counsel
376 Broadway, 2nd Floor
Schenectady, New York 12305
_Attorneys for Defendants Schenectady County & Tina Cheetham-Colon_

Burke, Scolamiero & Hurd, LLP
Peter M. Scolamiero, Esq., of counsel
George J. Hoffman , Jr., Esq., of counsel
7 Washington Square
P.O. Box 15085
Albany, New York 12212
_Attorneys for Defendant Northeast Parent and Child Society_

**Hon. Norman A. Mordue, U.S. Senior District Court Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.        INTRODUCTION**

        Plaintiff _pro se_ Michael J. Cleveland, Sr. brings this action under 42 U.S.C. § 1983

alleging various claims regarding the removal of five children from the custody of Plaintiff and

his wife, Angela I. Cleveland. (Dkt. No. 10). Now pending before the Court are two motions to dismiss, by Defendants Schenectady County and Tina Cheetham-Colon ("County Defendants"), and by Defendant Northeast Parent and Child Society ("NEPC"). (Dkt. Nos. 36, 43). Plaintiff has not responded to the motions. For the reasons that follow, both motions are granted.

## II.    PROCEDURAL HISTORY

On October 12, 2016, Plaintiff commenced this action, along with Ms. Cleveland, by filing a 33-page Complaint against over a dozen individuals and various entities including the Schenectady County Department of Children and Families, the Schenectady County Sheriff's Department, the Schenectady County Conflict Defenders Office, NEPC, and Berkshire Farms. (Dkt. No. 1). On December 30, 2016, United States Magistrate Judge Daniel J. Stewart issued a Report-Recommendation and Order, which granted Plaintiffs' motions to proceed *in forma pauperis* and conducted an initial review of the Complaint pursuant to 28 U.S.C. § 1915(e). (Dkt. No. 8). Magistrate Judge Stewart recommended that: the case proceed against Defendant Schenectady County on Plaintiffs' claim under *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978); Plaintiffs' claims against Defendants Mark Powers, Michael Godlewski, Schenectady County Department of Children and Families, Schenectady County Conflict Defenders Office, and Schenectady County Sheriff's Department be dismissed with prejudice; that Plaintiffs' claims against the remaining Defendants be dismissed without prejudice; and that Plaintiffs be given leave to file an amended complaint. (*Id.*). Magistrate Judge Stewart noted that the Complaint, albeit thinly, set forth a cognizable *Monell* claim based upon alleged improper policies and practices of Schenectady County regarding removal, wrongful detention, and inadequate care and custody of the children who had been removed. (*Id.*, pp. 4–5.).

On February 1, 2017, this Court adopted the Report and Recommendation, ruling that Plaintiffs' *Monell* claim against Schenectady County could proceed, but dismissing the remaining claims and Defendants. (Dkt. No. 11). On January 26, 2017, after Magistrate Judge Stewart's Report and Recommendation but before this Court's decision, Plaintiffs filed a 47-page Amended Complaint. (Dkt. No. 10). Magistrate Judge Stewart reviewed the Amended Complaint and found that, in addition to their *Monell* claim against Schenectady County, Plaintiffs set forth a cognizable claim against Defendant NEPC, which allegedly carried out the County's policies regarding improper removal of children, improper medical and psychological examinations, as well as other unconstitutional policies. (Dkt. No. 12, pp. 5–6). Plaintiffs also set forth a cognizable claim against Defendant Tina-Cheetham-Colon, the children's case manager, who was allegedly involved in the constitutional violations, including a conspiracy to deprive Plaintiffs of their parental rights, allegedly manufacturing false evidence to be used against them, and improperly advising third parties that Plaintiffs were guilty of misconduct, including sexual misconduct, relating to their children. (*Id.*, p. 6). Magistrate Judge Stewart expressed no opinion as to whether any of these claims could withstand a properly filed dispositive motion. (*Id.*).

On August 7, 2017, this Court adopted the Report and Recommendation, ordering that the Amended Complaint be accepted for filing limited to the claims stated against Schenectady County, Northeast Parent and Child Society, and Tina Cheetham-Colon. (Dkt. No. 14). The Court dismissed Plaintiffs' remaining claims. (*Id.*). Following Defendants' motions to dismiss, Ms. Cleveland requested to withdraw from the case, and the Court dismissed her claims and those she brought on behalf of her five children. (Dkt. Nos. 47, 50). Therefore, this decision will address the remaining claims brought by Plaintiff Michael J. Cleveland, Sr.

## III.    FACTS

In general, Plaintiff claims that as a result of the conduct of the Defendants, he was deprived of his constitutional rights, including the right to due process, the right to family association and custody of his children, the right to privacy, and the right to make medical decisions on behalf of his children.  (Dkt. No. 10).  Primarily, Plaintiff alleges that the Defendants conspired to unlawfully remove and detain his children based on false pretenses.  (*Id.*).  Plaintiff's allegations largely revolve around proceedings in New York State Family Court, and therefore, the Court will take judicial notice of these proceedings.  (*See* Dkt. Nos. 36-2, 36-3, 36-4; *see also Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998 ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.")).

### A.  Relevant Individuals and Entities

Plaintiff is the biological father of three of the children that were subject to Family Court proceedings, identified as K.C, E.C, and D.C., and he is the step-father of two other children, identified as J.C. and D.Co.  (Dkt. No. 10, p. 3).  Former Plaintiff Angela Cleveland is the biological mother of all five children.  (*Id.*).  They have been married since 2005.  (*Id.*, p. 14).  The Schenectady County Department of Social Services ("DSS") is an agency of Defendant Schenectady County, which is tasked with properly investigating abuse and neglect allegations, and protecting children and families.  (*Id.*, p. 6).  Defendant Tina Cheetham-Colon is a social worker and employee of DSS, who acted as the case manager for the Cleveland children.  (*Id.*, pp. 10–11, 15).  Defendant NEPC is a private corporation hired to provide services certain services on behalf of DSS.  (*Id.*, p. 35).

4

**B.  Family Court Proceedings**

The Family Court proceedings involved allegations of neglect, permanent neglect, and abandonment against Plaintiff and Ms. Cleveland, based on various petitions made by DSS. (Dkt. Nos. 36-2, 36-3, 36-4).  On August 3, 2016, Judge Mark L. Powers of the Schenectady County Family Court issued a Decision and Order, which recounted the Cleveland family's history with the DSS and the court, made various findings, and ruled on several petitions.  (Dkt. No. 36-2).  Per the decision, the Cleveland family moved to Schenectady County in 2008, following neglect findings in Albany County, and soon thereafter, their child D.C. (then five years-old) "was found alone in the middle of a public roadway, wearing only a diaper, with marks on his body."  (*Id.*, p. 15).  As a result, Plaintiff  was arrested and charged with endangering the welfare of a child and assault.  (*Id.*).  Following these events, in August 2008, all five children were removed from the Cleveland home pursuant to Section 1027 of the New York State Family Court Act ("FCA").  (*Id.*).  Although the younger children were eventually returned to their parents' home, the older children, J.C and D.Co., remained in DSS care.  (*Id.*).

Later, additional concerns arose about the care and safety of the younger children which led to their removal.  (*Id.*).  According to the decision, K.C. (then three years-old) had climbed atop of a stove and climbed onto the roof of the home, where he was discovered by a neighbor. (*Id.*).  Ms. Cleveland also admitted that she had shaken E.C.  (*Id.*, p. 16).  Inspection of the home found it to be "infested with fleas, lice and gnats and cluttered with trash and personal items," with animal urine and feces stuck to various places on the floor.  (*Id.*).  D.C. was removed by DSS on October 4, 2010, in accordance with FCA § 1027, and has remained almost exclusively in the custody of DSS since then.  (*Id.*).  The removals of J.C., D.Co., and D.C. were sustained by the Family Court on December 6, 2010 following a § 1028 hearing, "which

revealed the home to be unsanitary and the children covered with insect bites." (*Id.*).

Thereafter on March 28, 2011, all of the children were adjudicated to be neglected. (*Id.*).

On August 14, 2014, the youngest children, K.C. and E.C., were again removed from the

Cleveland home. (*Id.*). At the time, Plaintiff's relationship with Ms. Cleveland had allegedly

turned volatile, "characterized by Michael Cleveland explosively screaming at Angela

Cleveland in the presence of these children . . . and being non-compliant with his own mental

health treatment." (*Id.*). The Cleveland home was "again infested, this time with cockroaches

and bed bugs," and it "was again littered with garbage and animal droppings." (*Id.*). Later, Ms.

Cleveland "entered a domestic violence shelter, at the recommendation of the Department, only

to depart two days later and return to Michael Cleveland." (*Id.*, p. 31). As of January 2015,

Plaintiff and Ms. Cleveland were visiting with the children on alternate weeks for three hour

time periods. (*Id.*, p. 17).

The Family Court conducted hearings on the various petitions on dates in 2012, 2013,

2014, 2015, and 2016, receiving testimony from Plaintiff and Ms. Cleveland, as well as

Defendant Cheetham-Colon and other witnesses. (*Id.*, pp. 18–19). Ultimately, the court

determined that there existed "a persistent pattern of ongoing neglect to which the respondents

have failed to progress despite a plethora of services." (*Id.*, p. 30). The court further found that

"[t]heir continued failure to provide a suitable home environment for the children is evidence of

their fundamentally flawed understanding of their parenting responsibilities." (*Id.*). The court

noted that Ms. Cleveland "suffers from major depression and, absent medication, experiences

deteriorating mental health which, in the past, has posed a danger to her children." (*Id.*, p. 10).

As to Plaintiff, it was noted that he had diagnoses including Generalized Anxiety Disorder,

Post-Traumatic Stress Disorder, Major Depressive Disorder, Antisocial Personality Disorder,

and Bi-Polar Disorder. (*Id.*). It was also noted that Plaintiff had fathered at least fifteen children by six different women, and that his parental rights to several of the other children had been extinguished "via either termination or surrender." (*Id.*, p. 11 n.11).

In addition, the court noted that "the Department has developed service plans aimed at reunification, including facilitating regular contact between the respondents and the children, mental health treatment, marriage counseling, housework services, transportation arrangements and expenses, etc.," and that Plaintiff and Ms. Cleveland were assisted with in-home parenting skills "via the Department's linkage to services at Northeast Parent and Child Society." (*Id.*, p. 20). Further, "[p]sychiatric care, counseling and parent education and training were also extended to the respondents at NEPC, which endeavored to assist the respondents in behavioral strategies and emphasize the importance of structured parenting." (*Id.*, p. 21).

The Family Court recognized "that the respondents love their children and, although desirous of rearing them, are overwhelmed by the enormity of their needs, in light of their own mental health impairments and those of the children." (*Id.*, p. 22). The court also found that "both respondents have frequently failed to avail themselves of the rehabilitative services and resources extended to them by the Department," and for the services they did access, "they have failed to show significant improvement in their parenting abilities." (*Id.*, p. 24). Further, "[t]he home environment remained infested with fleas, animal droppings and general clutter." (*Id.*, p. 25). Medication compliance was noted to be "an issue for both respondents, resulting in their mutual failure to progress with mental health management." (*Id.*, p. 27). The court concluded that "they have demonstrated a lack of progress in understanding and meeting the needs of these multiple and complex children." (*Id.*, p. 28).

Ultimately, the Family Court found that Plaintiff had permanently neglected D.C., and

that Ms. Cleveland had permanently neglected J.C., D.Co., and D.C. (*Id.*). The court also found that "both respondents have neglected (and also derivatively neglected) the children, K.C. and E.C., by having such a flawed understanding of the duties of parenthood as to render the children, K.C. and E.C., in imminent danger of physical, mental or emotional impairment." (*Id.*, pp. 31–32). Further, the court found that Plaintiff had abandoned D.C. and thus terminated his parental rights to the child. (*Id.*, p. 35).

On June 23, 2017, Judge Powers issued a Decision and Order regarding DSS's petition alleging abandonment by Plaintiff as to K.C. and E.C. (Dkt. No. 36-3). The court heard testimony from witnesses including Plaintiff and Defendant Cheetham-Colon, and the trial was held over four days in 2016 and 2017. (*Id.*, p. 4). The court found that Plaintiff had failed to take advantage of available visits with K.C. and E.C., and that "his proffered basis for an inability to visit is belied by his other activities throughout the operative period." (*Id.*, p. 9). The court concluded that Plaintiff had abandoned K.C. and E.C. and terminated his parental rights to them. (*Id.*, pp. 9–10). On July 7, 2017, Judge Powers issued another Decision and Order, which found that Ms. Cleveland had permanently neglected J.C., D.Co., and D.C. and terminated her parental rights to them. (Dkt. No. 36-4). The court noted that it had received "heart-wrenching" correspondence from J.C. and D.Co. "beseeching this Court to free them for adoption." (*Id.*, p. 8).

### C. Plaintiff's Allegations

Plaintiff alleges that starting in 2010 and continuing through the date he filed this action, Defendants conspired "to unlawfully remove, detain, question, threaten, examine, investigate, and/or search all five children of THE CLEVELAND'S . . . without proper justification or authority, and without, exigency, or court order." (Dkt. No. 10, p. 32). Plaintiff also alleges

that he was "subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government" in order to remove the children from his care. (*Id.*, pp. 36–37). Plaintiff alleges that Defendants conspired to "invent reasons for removing Plaintiff's children" from his care. (*Id.*, p. 37).

Plaintiff alleges that Defendant Cheetham-Colon "aided, assisted, and abetted each of the other social worker defendants in their efforts to violate Plaintiff's rights." (*Id.*, p. 11). Specifically, Plaintiff alleges that Defendant Cheetham-Colon gave false testimony against him in the Family Court proceedings, even though "she has admitted that she has NO FACTS on any of her motions that it was only what 'someone' told her." (*Id.*, p. 15). Plaintiff alleges that "every word of the testimony presented by the State regarding the environment the children were living in was hearsay," and that at most, the home was a little cluttered. (*Id.*, p. 21). Plaintiff alleges that during the Family Court proceedings, he "objected to the slanderous and defamatory evidence being manufactured against him." (*Id.*, p. 24). Plaintiff alleges that "there was no evidence that Plaintiffs were putting any of the CHILDREN in imminent danger of serious bodily injury or death--or any other danger for that matter." (*Id.*, p. 33).

Plaintiff alleges that Defendants violated his due process rights by removing the children "from the care, custody, and control of their parents without exigent circumstances and without providing adequate notice or observance of statutory and legal opportunity to be heard." (*Id.*). Further, Plaintiff alleges that Defendants "[d]uring the past hearings made repeated attempts to intrude upon the Clevelands 4th amendment protections demanding the parents comply with multitudes of request for drug testing, getting into counseling, and other demands showing no regard for the illegal manner in which the children were taken, nor showing any interest in protecting the rights of the parents despite multiple protestations." (*Id.*, p. 22).

Plaintiff also alleges that his children were removed as a result of certain polices by the Defendant County, such as "the policy and/or practice of detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious bodily injury), court order and/or consent as part of their greater efforts to collaborate with government child welfare agencies in fabricating evidence to support the government's unlawful detention of children from their parents." (*Id.*, p. 34). Other alleged policies include "falsely accusing parents of suffering from other undiagnosed mental disorders as a basis for removing children from their parent's care," and "fabricating evidence against a parent in order to support a knowingly false referral for child abuse." (*Id.*).

As to Defendant NEPC, Plaintiff alleges that it had a "policy and/or practice of jointly collaborating with state child welfare services agencies in detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious bodily injury), court order and/or consent as part of their greater efforts to collaborate with government child welfare agencies in fabricating evidence to support the government's unlawful detention of children from their parents." (*Id.*, pp. 39–40). Other alleged policies include "knowingly assisting in the wrongful removal and detention of children, and continuing to detain them for an unreasonable period after any alleged basis for detention is negated." (*Id.*, p. 41).

Further, Plaintiff alleges that Defendants unlawfully made medical decisions on behalf of his children and "force-medicated" them. (*Id.*, p. 29). Plaintiff also alleges that, while in Defendants' care, at least three of the children "have been abused sexually and physically." (*Id.*). Plaintiff alleges that there was a "policy and/or practice of conducting medical/psychological examinations of children without a warrant or court order, parental consent, or exigent circumstances, in connection with investigations of child abuse as part of their greater

efforts to collaborate with government child welfare agencies in fabricating evidence to support the government's unlawful detention of children from their parents." (*Id.*, p. 34).

## IV.    STANDARDS OF REVIEW

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *New York by Schneiderman v. Utica City Sch. Dist.*, 177 F. Supp. 3d 739, 745 (N.D.N.Y. 2016) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). "Dismissal for lack of subject matter jurisdiction is proper when the district court lacks the statutory or constitutional power to adjudicate a case." *Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider competent evidence outside the pleadings, such as affidavits and exhibits. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (internal quotation marks and citation omitted).

### B.  Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss, a complaint must also "provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must make factual allegations sufficient "to raise a right to relief above

the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

## V.    DISCUSSION

Although the Amended Complaint is somewhat difficult to decipher, it may be liberally construed to allege the following constitutional claims, all of which relate to the Family Court proceedings and the removal of Plaintiff's children: 1) a procedural due process violation under the Fourteenth Amendment; 2) a substantive due process violation under the Fourteenth Amendment[1]; and 3) a violation of the Fourth Amendment. (Dkt. No. 10). Plaintiff also alleges a *Monell* claim based on various policies that led to the claimed constitutional violations. Finally, Plaintiff appears to allege certain claims on behalf of his children. Defendants argue that Plaintiff's due process claims should be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Dkt. No. 36-5, pp. 17–21; Dkt. No. 44, pp. 7–12). Defendants argue that Plaintiff's other claims should be dismissed for

---

[1] While Plaintiff references an alleged violation of his right to "familial association" under the First Amendment, (Dkt. No. 10, pp. 32, 36, 39), this sort of claim falls within the Fourteenth Amendment's substantive due process right to intimate association. *See Oglesby v. Eikszta*, 499 F. App'x 57, 60 (2d Cir. 2012).

failure to state a claim under Rule 12(b)(6).  (Dkt. No. 36-5, pp. 23–46; Dkt. No. 44, pp. 17–27).

Since subject matter jurisdiction is a threshold issue, the Court will address that argument first.

*See New York by Schneiderman v. Utica City Sch. Dist.*, 177 F. Supp. 3d 739, 745 (N.D.N.Y.

2016) ("Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss

under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion

first.") (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### A.  Due Process Claims

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's due

process claims because they derive from the Family Court proceedings and thus fall within two

exceptions to federal subject matter jurisdiction: 1) the "domestic relations" exception; and 2)

the *Rooker-Feldman* doctrine.

### 1)  Domestic Relations Exception

The Supreme Court long ago held that "the whole subject of the domestic relations of

husband and wife, parent and child, belongs to the laws of the State and not to the laws of the

United States."  *Ex Parte Burrus*, 136 U.S. 586, 593–94 (1890).  More recently, the Supreme

Court reaffirmed what had become known as "the domestic relations exception" to federal

jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody

decrees."  *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).  Thus, "federal courts will not

exercise jurisdiction over cases on the subjects of divorce, alimony or the custody of children."

*Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir. 1995).  This narrow exception recognizes that

"the states have traditionally adjudicated marital and child custody disputes and therefore have

developed competence and expertise in adjudicating such matters, which federal courts lack."

*Thomas v. New York City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993) (citing *Ankenbrandt*, 504 U.S. at 703–04).

### 2) *Rooker-Feldman* Doctrine

In *Rooker v. Fidelity Trust Company*, the Supreme Court explained that the jurisdiction of the district courts is strictly original and no federal court, other than the Supreme Court, can consider a claim to reverse or modify a state court judgment.  263 U.S. 413, 416 (1923).  In *District of Columbia Court of Appeals v. Feldman*, the Supreme Court expanded upon this principle and held that to the extent that the plaintiff's claims before the district court were "inextricably intertwined" with the state court's determinations, the district court did not have jurisdiction to entertain those claims.  60 U.S. 462, 483 (1983).  The *Rooker-Feldman* doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp., v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The doctrine directs federal courts to abstain from considering claims when four requirements are met: "(1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff invites district court review of that judgment; and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010).  Therefore, "[j]ust presenting in federal court a legal theory not raised in state court . . . cannot insulate a federal plaintiff's suit from *Rooker–Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 86 (2d Cir. 2005).

### 3) Analysis

In this case, Plaintiff alleges that Defendants violated his due process rights by removing the children "from the care, custody, and control of their parents without exigent circumstances and without providing adequate notice or observance of statutory and legal opportunity to be heard." (Dkt. No. 10, p. 33). Plaintiff also alleges that, in order to remove the children from his care, Defendants violated his due process rights by subjecting him to "false accusations on the basis of false evidence that was deliberately fabricated by the government." (*Id.*, pp. 36–37). These allegations could in theory support violations of Plaintiff's rights to substantive and procedural due process. It is well-settled that parents have a constitutionally protected liberty interest in the custody of their children. *See Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000); *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 95 (N.D.N.Y. 2013). "With respect to procedural due process rights, a state actor may not deprive a parent of the custody of his children without a pre-deprivation hearing unless the children are immediately threatened with harm, in which case a prompt post-deprivation hearing is required." *Southerland v. Giuliani*, 4 F. App'x 33, 36 (2d Cir. 2001) (internal quotations and citations omitted). "With respect to substantive due process rights, state seizure of children is constitutionally permitted only where case workers have a reasonable basis for their findings of abuse." *Id.* (internal quotations and citations omitted).

However, Plaintiff's due process claims, while couched in constitutional terms, can only be read as an assault on the decisions of the New York State Family Court and an attempt to regain custody of his children. Plaintiff repeatedly alleges that the children were removed "without proper justification or authority, and without, exigency, or court order." (Dkt. No. 10, p. 32). For instance, Plaintiff alleges that, contrary to the Family Court's finding, "there was no

evidence" that he put the children in any danger.  (*Id.*, p. 33).  Plaintiff alleges that the

determinations made against him by the court were wrong and based on false and fabricated

evidence.  (*Id.*, pp. 36–37).  As to relief, he writes that "[t]his declaration is being written in

support of a motion to dismiss all petitions and ask for the return of all children in the matter of

justice."  (*Id.*, p. 14).  He seeks "a court order for return of my children immediately."  (*Id.*, p.

16).  Further, Plaintiff seeks "an injunction prohibiting the Defendants from continuing to

deprive them of custody of CHILDREN," and "an order of stay and to discontinue any further

proceedings [in the Family Court] until this court can have said trial."  (*Id.*, p. 47).

After careful review of the pleadings and the Family Court proceedings, the Court

concludes that Plaintiff's due process claims run afoul of both the domestic-relations exception

and the *Rooker-Feldman* doctrine.  The removal of Plaintiff's children was the subject of

extensive proceedings in New York State Family Court, a forum with expertise on such matters.

(*See* Dkt. Nos. 36-2, 36-3, 36-4).  Plaintiff now seeks to effectively unwind those proceedings

and asks for an order awarding him custody of his children.  But this matter of domestic

relations is plainly beyond the Court's jurisdiction.  *See Ankenbrandt*, 504 U.S. at 703.

Moreover, Plaintiff's claims are also barred by the *Rooker-Feldman* doctrine because they

challenge the judgments of the Family Court.  Indeed, the Second Circuit has addressed this sort

of situation:

> Suppose a state court, based purely on state law, terminates a father's parental
> rights and orders the state to take custody of his son.  If the father sues in federal
> court for the return of his son on grounds that the state judgment violates his
> federal substantive due-process rights as a parent, he is complaining of an injury
> caused by the state judgment and seeking its reversal.  This he may not do,
> regardless of whether he raised any constitutional claims in state court, because
> only the Supreme Court may hear appeals from state-court judgments.

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005).  All of the

requirements for the doctrine are met in this case.  By the time of the Family Court's decision

on August 3, 2016, all five of the children had been removed from Plaintiff's home pursuant to

Section 1027 of the New York State Family Court Act, which requires a hearing and court order

to sustain the removal of children.  *See* N.Y. Fam. Ct. Act § 1027.  Indeed, J.C., D.Co., and

D.C. had been removed much earlier, and their removal sustained following a 2010 hearing.

(Dkt. No. 36-2, p. 16).  K.C. and E.C. were removed in 2014.  (*Id.*).  The decision further found

that Plaintiff neglected K.C. and E.C., and that he abandoned D.C.  (Dkt. No. 36-2)  Plaintiff

now brings due process claims inextricably intertwined with the state court's determinations and

complains of injuries caused by the state court's judgments, namely the loss of custody and

removal of his children.  Plaintiff asks the district court to reverse the August 3, 2016 decision

and the earlier court-ordered removals, which were rendered before he commenced this suit on

October 12, 2016.[2]  (Dkt. No. 1).  But this Court does not have jurisdiction to undo the

unfortunate years-long custody saga, nor to review these Family Court judgments.[3]

In sum, Plaintiff's due process claims fall within the domestic relations exception and

the *Rooker-Feldman* doctrine, and therefore, must be dismissed for lack of subject matter

jurisdiction.  *See Phifer v. City of New York*, 289 F.3d 49, 60 (2d Cir. 2002) ("Thus, we find that

---

[2] *See also Kaminski v. Commr. of Oneida County Dept. of Soc. Services*, 804 F. Supp. 2d 100, 106 (N.D.N.Y. 2011) ("Finally, even though Kaminski's parental rights were terminated following the commencement of this action, her children were removed from her custody and placed in foster care where they remain pursuant to state court judgments. Thus, the *Rooker–Feldman* doctrine applies to plaintiffs' claims alleging a deprivation of due process, and no statutory or constitutional power exists to adjudicate that claim.").

[3] The fact that Plaintiff seeks monetary damages, "in no event less than $1,000,000 per child per year that are held unlawfully and in denial of Plaintiff's civil rights and due process," (Dkt. No. 10, p. 46), does not change this analysis because any damages Plaintiff claims to have suffered regarding the removal of his children flow directly from the state court's judgments. *See Lawson v. City of Buffalo*, 52 F. App'x 562, 563 (2d Cir. 2002) ("The district court correctly dismissed the plaintiffs' remaining claims for monetary damages under the *Rooker-Feldman* doctrine, as they seek damages in conjunction with the orders of demolition entered against them in state court.").

Phifer's substantive due process claim is inextricably intertwined with the family court's

determinations and that the lower federal courts lack jurisdiction to consider this claim.");

*Rotondo v. New York*, No. 17 Civ. 1065, 2017 WL 5201738, at *5, 2017 U.S. Dist. LEXIS

182166, at *11 (N.D.N.Y. Oct. 31, 2017) (finding due process claims "precluded by both the

domestic relations exception to this court's jurisdiction and the *Rooker-Feldman* doctrine"

where the plaintiff "challenges a state-court's determination denying him relief from a family

court's child support order"), *report and recommendation adopted*, 2017 WL 5198194, 2017

U.S. Dist. LEXIS 186183 (N.D.N.Y. Nov. 9, 2017); *Amato v. McGinty*, No. 17 Civ. 593, 2017

WL 4083575, at *6, 2017 U.S. Dist. LEXIS 150198, at *13 (N.D.N.Y. Sept. 15, 2017) (finding

that the court lacked jurisdiction over the plaintiff's claim to the extent it sought "overturn the

custody determination" of the family court); *Bukowski v. Spinner*, No. 17 Civ. 845, 2017 WL

1592578, at *4, 2017 U.S. Dist. LEXIS 65073, at *9 (E.D.N.Y. Apr. 28, 2017) (dismissing

complaint where "Plaintiff's allegations seek to collaterally attack the state court's orders

against Plaintiff relating to the custody and visitation of her son"), *aff'd*, 709 F. App'x 87 (2d

Cir. 2018); *Woolsey v. Mitzel*, No. 17 Civ. 33, 2017 WL 1323931, at *2, 2017 U.S. Dist. LEXIS

32265, at *5 (N.D.N.Y. Mar. 6, 2017) (dismissing the plaintiff's claim which focused on "the

return custody of her biological daughter following determinations in state family court placing

the child in the custody of defendants," based on domestic relations exception and *Rooker-

Feldman* doctrine), *report and recommendation adopted*, 2017 WL 1322197, 2017 U.S. Dist.

LEXIS 54095 (N.D.N.Y. Apr. 10, 2017); *Phillips ex rel. Green v. City of New York*, 453 F.

Supp. 2d 690, 718 (S.D.N.Y. 2006) ("Because the Court finds that Plaintiffs' due process claims

concerning Antonia's removal complain of injuries caused by a state court judgment, the Court

concludes that under *Rooker–Feldman* it lacks jurisdiction to hear those claims."); *Matthews v.*

*Breen*, No. 06 Civ. 704, 2006 WL 1877141, at *2, 2006 U.S. Dist. LEXIS 47612, at *7 (N.D.N.Y. July 6, 2006) (dismissing complaint where the plaintiff's claims "arise out of and assert the unconstitutionality of the decision rendered by the Warren County Supreme Court in a domestic relations matter best left to the state courts").

### 4) *Younger* Abstention

To the extent Plaintiff alleges a due process claim related to the removal of his children which is not barred by *Rooker-Feldman*, such as for any injuries caused by state court judgments post-dating the start of this action, the domestic relations exception would still apply. Moreover, the Court would also have to abstain from taking jurisdiction because at least some of the Family Court case is still ongoing. *Younger* abstention requires federal courts to refrain from exercising jurisdiction over claims that implicate ongoing state proceedings. *Younger v. Harris*, 401 U.S. 37, 43–44 (1971). Specifically, abstention applies if the federal action involves ongoing: 1) "state criminal prosecutions"; 2) "civil proceedings that are akin to criminal prosecutions"; or 3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commun., Inc. v. Jacobs*, __ U.S. __, 134 S. Ct. 584, 586 (2013) (citations omitted). A "state-initiated proceeding to gain custody of children allegedly abused by their parents" falls into the second category. *Id.* at 592 (quoting *Moore v. Sims*, 442 U.S. 415, 419–420 (1979)).

In this case, the State initiated various petitions regarding Plaintiff's children, which were the subject of the August 3, 2016 Family Court decision. (Dkt. No. 36-2). That decision found that Plaintiff had neglected K.C., E.C., and abandoned D.C., but the dispositional phase of the proceedings continued after Plaintiff filed suit. On June 23, 2017, the Family Court found that Plaintiff had abandoned K.C. and E.C. and terminated his parental rights to them.

(Dkt. No. 36-3). Since then, Plaintiff has filed an appeal to regain custody of his children, which remains pending in state court.[4] (Dkt. No. 46, ¶ 33). Accordingly, the Court must abstain from taking jurisdiction over any due process claim related to this ongoing proceeding.[5] *See Davis v. Baldwin*, 594 F. App'x 49, 51 (2d Cir. 2015) ("Because Davis does not dispute that the federal action here involved an ongoing, state-initiated custody proceeding, the proper basis for the district court's dismissal was the *Younger* abstention doctrine."); *Herbert v. Cattaraugus County*, 17 Civ. 248S, 2017 WL 5300009, at *4, 2017 U.S. Dist. LEXIS 187263, at *9 (W.D.N.Y. Nov. 13, 2017) ("This Court finds that, although Count Five does not meet the *Rooker-Feldman* requirements because the Family Court proceedings are not yet final, this claim is nevertheless barred by the abstention doctrine set forth in *Younger v. Harris* . . ."); *Torres v. Gaines*, 130 F. Supp. 3d 630, 636 (D. Conn. 2015) (abstaining where the plaintiffs' claims involved "ongoing, state-initiated proceedings to gain custody of their minor son: they explicitly seek to enjoin those proceedings and raise only claims calling them into question"); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 354 (E.D.N.Y. 2014) (finding that *Younger* abstention doctrine prohibited the court from exercising jurisdiction over the plaintiff's claim regarding an ongoing custody dispute in state court).

### B. *Monell* Claim

Plaintiff's *Monell* claim must also be dismissed for the same reasons discussed above. In order to sustain a Section 1983 claim for municipal liability, a plaintiff must show that he

---

[4] *See also* http://www.nycourts.gov/reporter/motions/2018/2018_63710.htm.

[5] When it comes to abstention, courts may also consider the following factors: "1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009). All of these factors support abstention, since Plaintiff's appeal is ongoing in state court, where Plaintiff has avenue open for review of his constitutional claims, and further, "the resolution of domestic relations matters has been recognized as an important state interest." *Parent v. New York*, 485 F. App'x 500, 503 (2d Cir. 2012).

suffered a constitutional violation, and that the violation resulted from an identified municipal policy or custom. *Monell*, 436 U.S. at 694–95. In essence, Plaintiff alleges that he suffered a violation of his due process rights as the result of policies and practices of Defendants Schenectady County and NEPC regarding the removal of children. (Dkt. No. 10, pp. 34–40). For instance, Plaintiff alleges that his children were wrongfully removed as a result of "the policy and/or practice of detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious bodily injury), court order and/or consent as part of their greater efforts to collaborate with government child welfare agencies in fabricating evidence to support the government's unlawful detention of children from their parents." (*Id.*, pp. 34, 39–40). However, once again, Plaintiff complains of an injury—the removal of his children—caused by the judgments of the Family Court. At its root, Plaintiff's *Monell* claim seeks review and rejection of those judgments. Therefore, Plaintiff's *Monell* allegations do not constitute an "independent claim" beyond the scope of the *Rooker-Feldman* doctrine. *See Hoblock*, 422 F.3d at 86. Accordingly, Plaintiff's claim must be dismissed. *See also Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 718 (S.D.N.Y. 2006) ("Even if the legal theory put forth in a federal suit differs from those raised in state court, *Rooker–Feldman* still bars that federal suit if the federal suit nonetheless complains of injury produced by a state-court judgment.").

### C. Fourth Amendment Claim

The County Defendants argue that Plaintiff's Fourth Amendment claim must be dismissed because his allegations do not support a plausible constitutional violation. (Dkt. No. 36-5, pp. 28–30). Plaintiff's claim appears to be twofold: 1) that Defendants seized his children without a warrant; and 2) that Defendants violated his right to privacy by making intrusive

requests during the Family Court proceedings, including that he submit to drug testing.  (*See* Dkt. No. 10, pp. 22, 24, 32).

As to the first theory, it is well-settled that Fourth Amendment rights "are personal rights that cannot be asserted vicariously."  *Graham v. City of New York*, 869 F. Supp. 2d 337, 355 (E.D.N.Y. 2012) (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)).  "A Fourth Amendment child-seizure claim belongs only to the child, not to the parent, although a parent has standing to assert it on the child's behalf."  *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012).  Therefore, to the extent Plaintiff has pled a Fourth Amendment claim on his own behalf for the "warrantless seizure of children," the claim must be dismissed.

As to the second theory, Plaintiff's allegations are simply too vague and conclusory to support a plausible claim.  Plaintiff alleges that Defendants "[d]uring the past hearings made repeated attempts to intrude upon the Clevelands 4th amendment protections demanding the parents comply with multitudes of request for drug testing, getting into counseling, and other demands showing no regard for the illegal manner in which the children were taken, nor showing any interest in protecting the rights of the parents despite multiple protestations."  (Dkt. No. 10, p. 22).  Plaintiff also alleges that "he was arbitrarily ordered to submit to talk with a court appointed lawyer, which he refused citing his 4th amendment protections."  (*Id.*, p. 24).  Of these allegations, only the drug testing appears to have a possible constitutional dimension.[6]  But even this claim lacks any information whatsoever as to the individuals involved, the dates, or specific circumstances.  Without more, the claim is too vague to infer a plausible constitutional violation and must be dismissed.  *See McKenzie v. Watson*, No. 16 Civ. 5029, 2017 WL 435310, at *2, 2017 U.S. Dist. LEXIS 14559, at *4 (D.N.J. Feb. 2, 2017 ("Therefore,

---

[6] *See Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 615 (1989) (finding that urine test may implicate the Fourth Amendment).

the Court will dismiss the complaint without prejudice because Plaintiff has not alleged sufficient facts for the Court to determine whether the drug test violated the reasonableness requirement of the Fourth Amendment.").

### D. Claims On Behalf Of Children

Finally, Plaintiff appears to allege certain claims on behalf of his children, such as unlawful seizure, "force-medicating," and both sexual and physical abuse.  (Dkt. No. 10, pp. 29, 31–33).  However, as a *pro se* litigant, Plaintiff cannot bring claims on behalf of his children. *See Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) ("It is thus a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child."); *Griffin v. Doe*, 71 F. Supp. 3d 306, 316 (N.D.N.Y. 2014) ("Thus, to the extent that plaintiff is attempting to bring a damage action based on the alleged constitutional or statutory violations suffered by her daughter, plaintiff has no standing to do so.").

Moreover, since Plaintiff's parental rights have been terminated as to all five children, (Dkt. Nos. 36-2, 36-3, 36-4), he does not have standing to bring claims on their behalf.  *See Kaminski v. Commr. of Oneida County Dept. of Soc. Services*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) ("Once parental rights are terminated, a parent lacks standing to bring claims on behalf of his or her children."); *Lomnicki v. Cardinal McCloskey Services*, No. 04 Civ. 4548, 2007 WL 2176059, at *6, 2007 U.S. Dist. LEXIS 54828, at *21 (S.D.N.Y. July 26, 2007) ("Plaintiff lacks standing to bring claims on behalf of the children, since her parental rights were terminated by the Family Court.").

Accordingly, to the extent Plaintiff brings any claims on behalf of his children, those claims must also be dismissed.

### E.  State Law Claims

Defendants also argue that Plaintiff's claims under New York State Law should be dismissed for various reasons.  (Dkt. No. 36-5, pp. 46–51; Dkt. No. 44, pp. 27–30).  However, assuming Plaintiff has asserted state law claims that were not previously dismissed, the Court need not address Defendants' arguments.  Since none of Plaintiff's federal claims survive the motions to dismiss, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims under New York State law.  *See* 28 U.S.C. § 1367(c)(3); *Snow v. Village of Chatham*, 84 F. Supp. 2d 322, 329 (N.D.N.Y. 2000).

## VI.    LEAVE TO AMEND

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  For *pro se* claims, leave should be given "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"  *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  However, "leave to amend need not be granted when amendment would be futile."  *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016).  Here, Plaintiff's due process and *Monell* claims are barred by the *Rooker-Feldman* doctrine and/or the domestic relations exception, and therefore, any amendment would be futile.  *See Weissbrod v. Gonzalez*, 576 F. App'x 18, 19 (2d Cir. 2014) ("granting leave to amend would have been futile in light of the applicability of the *Rooker–Feldman doctrine . . .*"); *Coleman v. Engle*, No. 16 Civ. 833, 2017 WL 752178, at *4, 2017 U.S. Dist. LEXIS 26602, at *11 (N.D.N.Y. Feb. 27, 2017) ("[A]mendment would be futile as to Plaintiff's section 1983 claims because they depend on the propriety of the removal of Plaintiff's children from her custody and, therefore, are barred by the *Rooker-Feldman*

doctrine."); *Forjone v. Federated Fin. Corp. of Am.*, 816 F. Supp. 2d 142, 153 (N.D.N.Y. 2011) ("Plaintiff's claims that are not barred by the *Rooker–Feldman* doctrine, are barred by *res judicata*; and, therefore, any amendment would be futile.").

As to Plaintiff's remaining claims, he has already been granted leave to amend once and provided specific instructions to do so. (*See* Dkt. No. 8). However, as Magistrate Judge Stewart observed, there has been no compliance with those directions and "the Amended Complaint remains vague and wholly conclusory insofar as to many of the Defendants at issue, there is simply no indication as to what they specifically did to cause a constitutional violation." (Dkt. No. 12, p. 8). Therefore, under the circumstances, since Plaintiff has already been given an opportunity to amend the pleading and he has not corrected the previously noted deficiencies, it would be futile to permit further amendment. *See Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (affirming denial of leave to amend where the *pro se* plaintiff had already been afforded "one opportunity to amend the complaint, and [he] made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend"); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 54 (N.D.N.Y. 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.")

## VII.    CONCLUSION

For these reasons, it is

**ORDERED** that the County Defendants' motion to dismiss (Dkt. No. 36) is **GRANTED**; and it is further

**ORDERED** that Defendant Northeast Parent and Child Society's motion to dismiss (Dkt. No. 43) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims against the Defendants are **DISMISSED with prejudice**; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 10) is **DISMISSED in its entirety with prejudice**; and it is further

**ORDERED** that the Clerk of the Court is directed to serve this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York and to serve Michael J. Cleveland, Sr., by both regular mail and certified mail, return receipt requested along with copies of the unpublished decisions cited herein.

**IT IS SO ORDERED.**

Dated: March 15, 2018
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge

709 Fed.Appx. 87
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

Joyelle BUKOWSKI, Plaintiff-Appellant,

v.

Jeffrey Arlen SPINNER, Family Judge, Court
of State of New York, Mary Beth Daniels, Law
Guardian, Joanne Merrihue, Philip J. Castrovinci,
Attorney for Adam Saylor, Dennis M. Brown,
Attorney, Suffolk County, Lori Towns, Kathleen
Turner, Adam Saylor, Defendants-Appellees.

17-1658
|
January 19, 2018

Appeal from a judgment of the United States District
Court for the Eastern District of New York (Seybert, *J.*).
**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Joyelle Bukowski, pro
se, Coram, NY.

FOR DEFENDANTS-APPELLEES: JEFFEREY A.
SPINNER, DAVID LAWRENCE III (Barbara D.
Underwood, Solicitor General, and Andrew W. Amend,
Senior Assistant Solicitor General, on the brief),
for Eric T. Schneiderman, Attorney General of
the State of New York, New York, NY. MARY

BETH DANIELS, MATTHEW K. FLANAGAN,
Catalano Gallardo & Petropoulous, LLP, Jericho, NY.
JOANNE MERRIHUE, DENNIS M. BROWN, LORI
TOWNS, KATHLEEN TURNER, Brian C. Mitchell,
Assistant County Attorney, for Dennis M. Brown,
Suffolk County Attorney, Hauppauge, NY. PHILLIP
J. CASTROVINCI, Phillip J. Castrovinci, Esq., pro se,
Smithtown, NY. ADAM SAYLOR, Adam Saylor, pro se,
Lake Grove, NY.

PRESENT: DENNIS JACOBS, PETER W. HALL,
CHRISTOPHER F. DRONEY, Circuit Judges.

**Opinion**

**\*88 SUMMARY ORDER**

Joyelle Bukowski, pro se, filed an action under 42
U.S.C. § 1983 against a state family court judge, her
child's law guardian, an attorney for New York Child
Protective Services ("CPS"), three CPS workers, the father
of her child, and the father's attorney, arguing that
she suffered various constitutional injuries arising from
temporary state-court orders related to her custody and
visitation rights. The district court sua sponte dismissed
Bukowski's complaint (without leave to amend) under
both the domestic-relations exception to federal subject-
matter jurisdiction and the *Rooker-Feldman* doctrine. *See*
Fed. R. Civ. P. 12(h)(3). Bukowski appeals. We assume
the parties' familiarity with the underlying facts, the
procedural history of the case, and the issues presented for
review.

**1.** We review the district court's dismissal of Bukowski's
complaint—under both the domestic relations exception
and the *Rooker-Feldman* doctrine—de novo. *See Liranzo
v. United States*, 690 F.3d 78, 84 (2d Cir. 2012). We may
affirm the dismissal on either ground relied on by the
district court, but we are also "free to affirm on any
ground that finds support in the record." *Brown Media
Corp. v. K&L Gates, LLP*, 854 F.3d 150, 160 n.6 (2d Cir.
2017) (quoting *Headley v. Tilghman*, 53 F.3d 472, 476
(2d Cir. 1995)). We affirm the dismissal of Bukowski's
complaint on the ground that federal-court abstention is
required under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct.
760, 27 L.Ed.2d 669 (1971), insofar as Bukowski seeks
declaratory or injunctive relief that would interfere with a
"[s]tate court's ability to perform its judicial function in ...
[an ongoing] custody proceeding[ ]." *Falco v. Justices of the
Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805

F.3d 425, 428 (2d Cir. 2015), *cert. denied sub nom. Falco v. Justices of the Matrimonial Parts of the Supreme Court of Suffolk Cty.*, —— U.S. ——, 136 S.Ct. 2469, 195 L.Ed.2d 802 (2016).

To the extent that Bukowski also seeks monetary damages, we decline to stay her federal suit pending resolution of the state proceeding because Bukowski's claims for damages plainly fail. *See Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000). Bukowski failed to raise any allegations against defendants Kathleen Turner and Dennis Brown. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004). Absolute immunity defeats the claims against Jeffrey Tavel (CPS's prosecutor), Jeffrey Spinner (the family court judge), Lori Towns (a CPS worker who testified against Bukowski), and Joanne Merrihue (another CPS worker who testified). *See Cornejo v. Bell*, 592 F.3d 121, 127–28 (2d Cir. 2010) (prosecutors); *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (judges); *Briscoe v. LaHue*, 460 U.S. 325, 345, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (witnesses). To the extent that **\*89** Bukowski attempts to state against any of those defendants a claim that is *not* barred by absolute immunity, *see Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994), she fails, *see Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir. 1987). Finally, the claims against Adam Saylor (the father of Bukowski's child), Philip Castrovinci (Saylor's lawyer), and Mary Beth Daniels (the child's law

guardian)—which Bukowski brought under § 1983—must be dismissed because none of those defendants is a state actor, *see Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015), and Bukowski's oblique reference to those private actors conspiring with CPS to deprive her of her child is fatally conclusory or otherwise unsupported, *see Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). Bukowski's complaint was properly dismissed.

**2.** We review de novo the district court's decision to deny Bukowski leave to amend on the ground that amendment would be futile. *See Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015). Notwithstanding the solicitude accorded to pro se plaintiffs, the court's decision was proper because the complaint, read liberally, "suggests that [Bukowski lacks] a claim" rather than merely "that she has inadequately or inartfully pleaded." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

We have considered all of Bukowski's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

**All Citations**

709 Fed.Appx. 87

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

375 Fed.Appx. 136
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Baruch COLEMAN, Plaintiff-Appellant,

v.

BROKERSXPRESS, LLC, et
al., Defendants-Appellees.

No. 09-1089-cv.
|
April 30, 2010.

Appeal from the United States District Court for the Southern District of New York (Shira A. Scheindlin, Judge).

UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the district court's February 5, 2009 judgment and March 3, 2009 order are AFFIRMED.

**Attorneys and Law Firms**

Baruch Coleman, pro se, Closter, New Jersey.

John P. Lopresti, Jr. (Harris L. Kay, Henderson & Lyman, Chicago, Illinois, on the brief), New York, New York, for appellees.

PRESENT: REENA RAGGI, PETER W. HALL, Circuit Judges.[*]

**Opinion**

**\*137 SUMMARY ORDER**

**\*\*1** Appellant Baruch Coleman appeals *pro se* from (1) the dismissal of his claims alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and state and local law, and (2) the denial of his post-judgment motion for reconsideration and for leave to file a second amended complaint. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1. *Motion To Dismiss*
"We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002); *see also Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* ---U.S. ---- 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

Our independent review of the record confirms that the district court properly dismissed the complaint, as Coleman failed to allege facts sufficient to render plausible his conclusory allegations that defendants (1) terminated him because of his religion, and (2) retaliated against him after he filed a discrimination charge with the Equal Employment Opportunity Commission. Given the absence of specific factual allegations, the complaint does not support the inference that defendants are liable for the misconduct alleged. *See id.*

2. *Motion for Reconsideration and for Leave To Amend*
Because the district court properly dismissed Coleman's complaint, and because Coleman identified no controlling decisions or facts that the district court overlooked in doing so, we cannot conclude that the denial of his motion for reconsideration was an abuse of discretion. *See Devlin v. Transp. Commc'ns Int'l Union,* 175 F.3d 121, 131-32 (2d Cir.1999) (reviewing motion for reconsideration for abuse of discretion). Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend. The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 108 (2d Cir.2007) (reviewing denial of leave to amend for abuse of discretion).

### 3. Conclusion

**\*\*2** We have considered Coleman's remaining arguments on appeal and conclude that they lack merit. Accordingly, the district court's February 5, 2009 judgment and March 3, 2009 order are AFFIRMED.

**All Citations**

375 Fed.Appx. 136, 2010 WL 1731821

## Footnotes

\*    Judge Rosemary S. Pooler, originally assigned to this panel, did not participate in the consideration of this appeal. The remaining two members of the panel, who are in agreement, have determined this matter in accordance with Second Circuit Internal Operating Procedure E(b).

---

**End of Document**                                         © 2018 Thomson Reuters. No claim to original U.S. Government Works.

594 Fed.Appx. 49
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

Tyreek DAVIS, on behalf of N. Brown, S. Brown,
I. Brown and A. Davis, Plaintiff–Appellant,
v.
Chini BALDWIN, Caseworker, in her individual
and official capacity, and John Mattingly,
in his individual and official capacity as
Commissioner of ACS, Defendants–Appellees,
Amanda E. White, in her individual and
official capacity as Justice of the Superior
Court of Kings County, Defendant.

No. 14–753.
|
Feb. 25, 2015.

Appeal from a judgment of the United States District
Court for the Southern District of New York (Ramos, J.).

**Attorneys and Law Firms**

Tyreek Davis, pro se, Richmond, VA, for Plaintiff–
Appellant.

Marta Soja Ross, for Zachary W. Carter, Corporation
Counsel of the City of New York, New York, NY, for
Defendants–Appellees.

Present: BARRINGTON D. PARKER, PETER W.
HALL, and DEBRA ANN LIVINGSTON, Circuit
Judges.

**Opinion**

*SUMMARY ORDER*

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED.**

Appellant Tyreek Davis, proceeding pro se, appeals from
the district court's December 31, 2013 judgment granting
the defendants' motion to dismiss his 42 U.S.C. § 1983
complaint and denying his 28 U.S.C. § 2254 petition.
We assume the parties' familiarity with the underlying
facts, the procedural history of the case, and the issues on
appeal.

As a preliminary matter, Davis seeks to appeal the
denial of his petition for writ of habeas corpus. Because
a petitioner must obtain a certificate of appealability
("COA") prior to appealing "a final order in a habeas
corpus proceeding in which the detention complained of
arises out of process issued by state court," 28 U.S.C. §
2253(c), we construe his brief as also requesting a COA.
As the district court observed, however, Davis cannot
challenge a child-custody determination pursuant to a
habeas corpus petition. *See Middleton v. Attorneys Gen. of
States of N.Y. & Penn.,* 396 F.3d 207, 209 (2d Cir.2005).
Accordingly, we decline to grant a COA and dismiss the
appeal from the denial of Davis's habeas corpus petition
for lack of jurisdiction.

"A plaintiff asserting subject matter jurisdiction has the
burden of proving by a preponderance of the evidence that
it exists." *Makarova v. United States,* 201 F.3d 110, 113
(2d Cir.2000). When determining whether subject matter
jurisdiction exists, the district court may examine evidence
outside the pleadings. *Id.* When, as here, it has done so, we
review the district court's factual findings for clear error
and its legal conclusions de novo. *Id.*

Regardless of the status of Davis's state court appeal, *see
Gabriele v. Am. Home Mort. Servicing,* 503 Fed.Appx.
89, 92 (2d Cir.2012) (assuming, without deciding,
that *Rooker–Feldman* applied even though state appeal
pending), the *Rooker–Feldman* doctrine does not apply
here because Davis does not invite review and rejection
of a "final state-court judgment," *Lance v. Dennis,* 546
U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006).

Davis challenged the Family Court's temporary orders of removal and protection rather than a final order of disposition. Indeed, Davis did not dispute that a final custody order had not yet been entered when he filed his complaint, and his exhibits demonstrate that an interlocutory appeal from temporary orders entered in those proceedings was taken well after the filing of his federal complaint. Like the plaintiff in *Green v. Mattingly,* Davis sought review and rejection of temporary orders rather than a **\*51** final order of disposition of the custody of his child. *See* 585 F.3d 97, 100 (2d Cir.2009). Thus, Davis cannot be deemed to be seeking review and rejection of a final state court judgment because the family court proceedings were ongoing: that court could have superseded its temporary rulings and rendered a final disposition different from the challenged orders. *See id.* at 102–03 (holding that plaintiff did not invite review and rejection of a state court judgment because Family Court issued order superseding its prior temporary order).

The district court nonetheless properly dismissed the action. *See Cephas v. Nash,* 328 F.3d 98, 100 (2d Cir.2003) (Court of Appeals may affirm on any basis supported by the record). Under the abstention doctrine set out by the Supreme Court in *Younger v. Harris,* 401 U.S. 37, 43–45,

91 S.Ct. 746, 27 L.Ed.2d 669 (1971), a district court must dismiss the federal action if it involves ongoing: (1) "state criminal prosecutions"; (2) "civil proceedings that are akin to criminal prosecutions"; or (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs,* —— U.S. ——, ——, 134 S.Ct. 584, 588, 187 L.Ed.2d 505 (2013). As the Supreme Court observed, a "state-initiated proceeding to gain custody of children allegedly abused by their parents" falls within the second category. *Id.* at 592 (citing *Moore v. Sims,* 442 U.S. 415, 419–20, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)). Because Davis does not dispute that the federal action here involved an ongoing, state-initiated custody proceeding, the proper basis for the district court's dismissal was the *Younger* abstention doctrine.

We have considered Davis's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the order of the district court.

**All Citations**

594 Fed.Appx. 49

---

52 Fed.Appx. 562
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Marcus LAWSON, James Mancuso, As
attorney in fact for Louis V. Mancuso and Lee
Mancuso, on behalf of himself and all others
similarly situated, Plaintiffs–Appellants,

v.

The CITY OF BUFFALO, and Diane Y.
Devlin, In her official capacity as Associate
Judge of the Buffalo City Court Assigned
to Housing Court, Defendants–Appellees.

Docket No. 02–7204.
|
Dec. 16, 2002.

**Synopsis**

Homeowners brought action alleging that city and state
court judge violated their due process rights in course
of criminal proceedings when court ordered demolition
of their homes. The United States District Court for
the Western District of New York, Richard J. Arcara,
J., dismissed complaint, and homeowners appealed. The
Court of Appeals held that: (1) *Younger* abstention was
appropriate, and (2) *Rooker–Feldman* doctrine barred
homeowners' damages claims.

Affirmed.

**\*562**  Appeal from the United States District Court for
the Western District of New York (Richard J. Arcara,
Judge).

**Attorneys and Law Firms**

James Ostrowski, Buffalo, NY, for Appellants.

David R. Hayes, Assistant Corporation Counsel, City
of Buffalo, Buffalo, NY, for City of Buffalo, Victor
Paladino, Assistant Solicitor General, State of New York,
New York, NY, for Diane Y. Devlin, for Appellees.

Present: F.I. PARKER, STRAUB, and B.D. PARKER,
Jr., Circuit Judges.

**Opinion**

**SUMMARY ORDER**

**\*\*1**  UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED  **\*563**  AND DECREED that
the decision of said district court be and it hereby is
AFFIRMED.

Plaintiffs-appellants Marcus Lawson, James Mancuso,
and Lee Mancuso appeal from the July 31, 2001 judgment
dismissing, on abstention grounds, their complaint against
defendants-appellees the City of Buffalo and Diane Y.
Devlin, in her official capacity as Associate Judge of
the Buffalo City Court, [1] and denying their motions for
injunctive relief, summary judgment, class certification
and attorney's fees. The complaint alleged that defendants
violated plaintiffs' due process rights in the course of
criminal proceedings in the Buffalo City Court when the
court ordered the demolition of plaintiffs' homes. The
complaint also posed a facial challenge to § 204 of the
Buffalo City Housing Court Act, Chap. 516 of the Laws of
New York, 1978, and sought declaratory and permanent
injunctive relief ordering the defendants to refrain from
demolishing buildings as part of criminal proceedings.

[1]  The district court dismissed the Mancuso plaintiffs'
claims for injunctive relief on *Younger* abstention
grounds. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct.
746, 27 L.Ed.2d 669 (1971). The plaintiffs argue that
*Younger* abstention was inappropriate because they face
irreparable harm (*e.g.,* demolition of the Mancusos'
house). The district court correctly declined to apply
the "irreparable harm" exception to *Younger* abstention
because there is no demolition order currently in effect,
and any demolition order issued in the future, if unlawful,
could be challenged on appeal in state court. *See
Diamond D Constr. Corp. v. McGowan,* 282 F.3d 191, 201
(2d Cir.2002) (exception to *Younger* abstention requires
"extraordinarily pressing need for immediate federal
equitable relief"). Although not specifically addressed
by the district court, it was also proper to dismiss the
Mancusos' facial challenge to § 204 on *Younger* grounds.
*See Samuels v. Mackell,* 401 U.S. 66, 72–73, 91 S.Ct.
764, 27 L.Ed.2d 688 (1971); *Hansel v. Town Court for
Springfield,* 56 F.3d 391, 393 (2d Cir.1995).

**[2]**    The district court correctly dismissed the plaintiffs' remaining claims for monetary damages under the *Rooker–Feldman* doctrine, as they seek damages in conjunction with the orders of demolition entered against them in state court. *See Hachamovitch v. DeBuono,* 159 F.3d 687, 693–94 (2d Cir.1998). Plaintiffs could have raised their due process challenges in the state proceedings or on appeal, and indeed, Lawson's as-applied challenge was squarely rejected by the Erie County Court on appeal. *See id.* at 695 ("[A]t a minimum, ... where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion."); *Moccio v. New York State Office of Ct. Admin.,* 95 F.3d 195, 198–200 (2d Cir.1996). Lawson is also collaterally estopped from pursuing his facial challenge to § 204 because he litigated his due process claims in state court (as he himself argued in his petition for *certiorari*). *See Temple of Lost Sheep Inc. v. Abrams,* 930 F.2d 178, 183 (2d Cir.1991).

**\*\*2**    Finally, Lawson's request for attorney's fees pursuant to 42 U.S.C. § 1988 was properly denied; although the defendants agreed to what the plaintiffs described as a "temporary preliminary injunction," the **\*564** district court did not address the merits of Lawson's claims, which were ultimately either mooted or dismissed. *See LaRouche v. Kezer,* 20 F.3d 68, 74–75 (2d Cir.1994). This Court has considered all of the plaintiffs' other arguments and found them to be without merit. For the reasons stated above, the judgment of the district court is AFFIRMED.

**All Citations**

52 Fed.Appx. 562, 2002 WL 31819602

Footnotes

1    The Mancusos' case is now assigned to Judge Joseph Fiorella. Under Federal Rule of Appellate Procedure 43(c)(2), Judge Fiorella is thus automatically substituted as defendant.

499 Fed.Appx. 57
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. See Federal Rule of Appellate
Procedure 32.1 and this court's local Rule 32.1.1. for
rules regarding the citation of unpublished opinions.)
United States Court of Appeals,
Second Circuit.

Sandra J. OGLESBY and Donald
Oglesby, Plaintiffs–Appellants,

v.

Holly EIKSZTA, individually, LISA WILES,
individually, Nancy Sharoff, individually,
Victoria Leland, individually, Theresa Sheely,
individually, Ellenville Central School District,
New York, Sherry Sharpe, individually, and Tashia
Brown, individually, Defendants–Appellees.

No. 11–4349–cv.
|
Sept. 28, 2012.

**Synopsis**
**Background:** Student's parents brought action against
school district and school employees, alleging that
defendants referred them to Child Protective Services
(CPS) in retaliation for their having complained about
the treatment of students to the school in violation of
their First Amendment rights, and also violated their
substantive due process right of intimate association. The
United States District Court for the Northern District
of New York, Neal P. McCurn, J., 2011 WL 4442932,
granted summary judgment in favor of defendants.
Parents appealed.

**Holdings:** The Court of Appeals held that:

[1] employees' making a referral to CPS was not
retaliatory, and

[2] defendants did not violate parents' substantive due
process right of intimate association.

Affirmed.

*58 Appeal from a September 22, 2011 judgment of the
United States District Court for the Northern District of
New York (Neal P. McCurn, Judge).
UPON CONSIDERATION WHEREOF, IT IS
HEREBY ORDERED, ADJUDGED, AND DECREED
that the September 22, 2011 judgment is **AFFIRMED.**

**Attorneys and Law Firms**

Michael H. Sussman, Sussman & Watkins, Goshen, NY,
for Plaintiffs–Appellants.

Holly L. Reinhardt (Richard Liberth, on the brief),
Tarshis, Catania, Liberth, Mahon & Milligram, PLLC,
Newburgh, NY, for Defendants–Appellees.

PRESENT: PIERRE N. LEVAL, JOSÉ A. CABRANES,
and ROBERT A. KATZMANN, Circuit Judges.

**Opinion**

**SUMMARY ORDER**

***1** Plaintiffs-appellants Sandra and Donald Oglesby
appeal from the September 22, 2011 memorandum
decision and order of the District Court granting
defendants-appellees' motion for summary judgment. We
assume the parties' familiarity with the facts of prior
proceedings, which we reference only as necessary to
explain our decision to affirm.

**BACKGROUND**

In 2002, the Oglesbys—who have one biological son,
"ID"—were given pre-adoptive custody of a sibling group
of four children. The four children were an eight-year
old boy, a six-year old boy, and two four-year old twin
girls, "IG" and "NR." After the Oglesby's received reports
that the two older boys engaged in inappropriate sexual
conduct with IG and NR, the boys were removed from the
home.

In 2003, the Oglesbys officially adopted IG and NR, and
the twins began kindergarten. During kindergarten, a rug
used during reading time reportedly was a "trigger" that
caused IG to act in a sexual manner. This situation was
remedied when plaintiffs provided a pillow for IG to sit

on during reading time. The Oglesbys also told school officials that they installed video cameras in their home to monitor IG's and NR's behavior. No other significant incidents were reported during kindergarten, and IG's conduct during the first grade was within the normal limits for a child her age.

IG's condition, however, began to deteriorate in second grade. In November 2005, IG inserted a trophy and a caulking gun into her vagina while at home. IG was hospitalized for four weeks, and this incident was communicated to the Ellenville School District. After IG's hospitalization, Mrs. Oglesby told the school nurse that she inspected IG's and NR's vaginas for injuries.

After IG returned to school in January 2006, plaintiffs expressed concerns that IG was taking items into the bathroom and using them to masturbate. In response, a procedure was implemented where IG **\*59** would empty her pockets before going to the bathroom. Moreover, IG was to use the nurse's bathroom, and the nurse kept a log reflecting when and for how long IG was in the bathroom. The log showed, on average, that IG used the bathroom at school once a day and that each visit lasted about three minutes.

During IG's first week back at school, she told Mrs. Oglesby that an object (a spigot) in the nurse's bathroom made her feel unsafe. Plaintiffs repeatedly contacted school officials to discuss the spigot issue as well as IG's alleged compulsive masturbation.

On March 29, 2006, four school employees called the Ellenville School District's attorney regarding concerns about IG and NR based on information relayed by plaintiffs. The attorney recommended that the school employees make a referral to Child Protective Services ("CPS"). Between April 18 and April 24, 2006, plaintiffs made three complaints to various defendants regarding the safety and treatment of IG and other students at school.

 **\*\*2**  On April 24, 2006, a report was made by telephone to CPS regarding plaintiffs. The call narrative, compiled by a CPS employee, stated as follows:

> There is concern for the emotional welfare of both I[G] and N[R]. The adoptive parents are preoccupied with discussing sexual issues of the

two children with anyone who will listen. They discuss how the children were horribly sexually abused while in their biological parent's care in Texas and in foster care. The Oglesby's *[sic]* had adopted four children from the biological family, but have systemically rid themselves of two children and are now working on the last two, that being I[G] and N[R]. The Oglesby's *[sic]* discuss how the girls masturbate too much, how they masturbate and the inappropriate style and settings of one versus the other. They discuss the items the girls masturbate on including water spigots and sinks. They have examined the girls themselves and claim that one of the twin's vaginas is very red inside. The parents claim that the girls are sitting on special rugs and pillows and excessively masturbating. They have requested that the [school nurse] supervise the sexual acting out of the children closer. It is believed that the parents might have installed special cameras to monitor the girls *[sic]* behaviors. It is unknown if the parents are doing this for sexual gratification, but Munchausens cannot be ruled out.

Joint App'x at 25–26.

CPS employees investigated the complaint and deemed the concerns unfounded. Plaintiffs did not experience a loss of custody because of the CPS call.

On January 12, 2007, plaintiffs filed this action. The complaint, based on the First Amendment, alleges that defendants called CPS in illegal retaliation against plaintiffs for having complained about the treatment of IG and other students to the school. The District Court granted defendants' summary judgment motion and dismissed plaintiffs' amended complaint on September 22, 2011. This appeal followed.

## DISCUSSION

### A. First Amendment Retaliation Claim

To state a First Amendment retaliation claim, plaintiffs must establish that: "(1) [they] ha[ve] an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [their] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [their] First Amendment right." **\*60** *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001).

Under New York Social Services Law, teachers and school administrators have multiple responsibilities, including protecting abused and neglected students. *See* N.Y. SOC. SERV. LAW § 413(a) (making teachers and school administrators legally obligated to report suspected child abuse and neglect). As "mandatory reporters," school officials receive immunity from liability whenever they report suspected abuse in good faith, but they are exposed to liability if they willfully fail to do so. *See id.* §§ 419–420. We have recognized the difficult decisions that mandatory reporters face in the child abuse context. *See, e.g., Kia P. v. McIntyre,* 235 F.3d 749, 758–59 (2d Cir.2000) ("[Mandatory reporters are obliged to choose] between difficult alternatives.... If they err in interrupting parental custody, they may be accused of infringing the parents' constitutional rights. If they err in [not doing so], they risk injury to the child...." (quoting *van Emrik v. Chemung Cnty. Dep't of Soc. Servs.,* 911 F.2d 863, 866 (2d Cir.1990))).

**\*\*3  [1]**  On appeal, the parties dispute whether the CPS call was in retaliation for plaintiffs' criticisms. Plaintiffs argue that the retaliatory nature of the CPS call is shown by the fact that it occurred soon after they complained, and by the fact that the report was, according to plaintiffs' allegations, "materially false." Defendants respond that the propriety of the call is shown by the fact that it was based on a reasonable suspicion of child abuse, and that any retaliatory motive is rebutted because they sought and received advice of counsel to make the CPS call prior to plaintiffs' complaints.

After closely reviewing the record in this case, we conclude that the CPS call was not retaliatory. Plaintiffs' actions—including installing video cameras, inspecting IG's and NR's vaginas, and constantly calling and meeting with school officials about IG's masturbating, even though the observations by teachers and school officials failed to support such a concern—gave defendants a sufficient basis to suspect potential abuse. We owe defendants' decision to report reasonably suspected abuse and neglect "unusual deference" given their legal obligation to report suspected abuse and their potential liability for failing to do so. *See Cox v. Warwick Valley Cent. Sch. Dist.,* 654 F.3d 267, 274–75 (2d Cir.2011) ("If [the] reports [of suspected abuse by mandatory reporters] ... could result in § 1983 liability, administrators would be exposed to civil liability no matter what they did."); *see also Kia P., 235 F.3d at 758–59.*

### B. Fourteenth Amendment Right to Intimate Association Claim

**[2]**  To state a claim for a violation of the substantive due process right of intimate association, plaintiffs must demonstrate that the state action depriving them of custody was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Cox,* 654 F.3d at 275 (quoting *Tenenbaum v. Williams,* 193 F.3d 581, 600 (2d Cir.1999)).

Here, however, plaintiffs admit that they never lost custody of any of their children, including IG. Joint App'x at 151. Thus, the District Court was correct to grant summary judgment dismissing the claim. *See, e.g., Cox,* 654 F.3d at 276 ("Where there is no actual loss of custody, no substantive due process claim can lie."); *Anthony v. City of New York,* 339 F.3d 129, 142–43 (2d Cir.2003) (considering whether conduct was so "shocking, arbitrary, and egregious" only because a "temporary separation" **\*61**  had occurred) (internal quotation marks omitted).

## CONCLUSION

We have considered all of the Oglesbys' remaining arguments on appeal and find them to be without merit. For the reasons stated above, we **AFFIRM** the judgment of the District Court.

**All Citations**

499 Fed.Appx. 57, 2012 WL 4478772 (Table), 290 Ed. Law
Rep. 574

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

485 Fed.Appx. 500
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

John PARENT, individually and as natural
parent of Child "A" and Child "B," and
on behalf of parents similarly situated,
aka Leon R. Koziol, Plaintiff–Appellant,

v.

State of NEW YORK, Jonathan Lippman,
individually and as Chief Administrative Officer
of the New York Unified Court System, Unified
Court System of the State of New York, John W.
Grow, individually and as State Court Judge,
Charles C. Merrell, individually and as Family
Court Judge, George S. Getman, individually
and as Support Magistrate, David J. Swarts,
individually and as Commissioner of Motor
Vehicles for the State of New York, Brian J. Wing,
individually and as Commissioner of the Office
of Temporary and Disability Assistance for the
State of New York, Lucille Soldato, individually and
as Commissioner of the Oneida County Support
Collection Unit, Darlene Chudyk, individually
and as "Investigator" for Oneida County, Jane
Doe, individually and as "Custodial Parent" for
the State of New York, Keith Eisenhut, William
Koslosky, individually and as "Attorney for the
Child" for the State of New York, Michael Daley,
individually and as Acting Judge, Justices of The
Appellate Division, Fourth Department, Fifth
Judicial District Grievance Committee, Mary
Gasparini, individually and as investigator/attorney
for the Grievance Committee, Sheryl Crankshaw,
individually and as investigator for the Grievance
Committee, Kathleen Sebelius, Secretary of Health
and Human Services for the United States, Martha
Walsh Hood, individually and as Acting State
Court Judge, Gregory Huether, individually and as
Chief Counsel/Complainant for the Fifth Judicial
District, Justices of the Appellate Division, Third
Department, C. Duncan Kerr, individually and as
Deputy Tax Commissioner, County Of Oneida,

Town of New Hartford, Kelly Hawse–Koziol,
Charlotte Kiehle, and unknown enforcement agents
of the state, County of Oneida and New Hartford
Police, Donna Costello, Defendants–Appellees. *

No. 11–2474–cv.
|
June 18, 2012.

**Synopsis**

**Background:** Father filed putative class actions under
§ 1983 against state, town, state judicial officials,
state and local authorities, attorneys, his ex-wife, and
federal Secretary of Health and Human Services, alleging
that requirements imposed upon him by state court
pertaining to child custody and support in divorce
proceeding violated his constitutional rights. After cases
were consolidated, defendants moved to dismiss and for
summary judgment, and father moved for preliminary
injunction, full or partial summary judgment, and
default judgment regarding non-appearing defendants.
The United States District Court for the Northern District
of New York, David N. Hurd, J., 786 F.Supp.2d 516,
granted defendants' motion. Father appealed.

**[Holding:]** The Court of Appeals held that *Younger*
abstention was required.

Affirmed.

**\*501** Appeal from a judgment of the United States
District Court for the Northern District of New York
(David N. Hurd, Judge).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, \*502 AND DECREED** that
the judgment of the District Court is **AFFIRMED.**

**Attorneys and Law Firms**

Leon R. Koziol, Utica, NY, pro se.

Laura Etlinger, Assistant Solicitor General, for Eric T.
Schneiderman, Attorney General, New York State Office
of the Attorney General, Albany, NY, for Defendants–
Appellees State of New York, Lippman, Unified Court
System of the State of New York, Grow, Merrell,
Getman, Swarts, Wing, Daley, Justices of the Appellate

Division, Fourth Department, Fifth Judicial District Grievance Committee, Gasparini, Crankshaw, Walsh Hood, Huether, Justices of the Appellate Division, Third Department, Kerr, Kiehle, Costello.

Bartle J. Gorman, Gorman, Waszkiewicz, Gorman & Schmitt, Utica, NY, for Defendants–Appellees Soldato, Chudyk, County of Oneida.

Paul V. Mullin, Sugarman Law Firm LLP, Syracuse, NY, for Defendant–Appellee Town of New Hartford.

Paul G. Ferrara, Costello, Cooney & Fearon, PLLC, Syracuse, NY, for Defendants–Appellees Eisenhut, Koslosky.

Paula Ryan Conan, Assistant United States Attorney, for Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY, for Defendant–Appellee Sebelius.

PRESENT: GUIDO CALABRESI, JOSÉ A. CABRANES, RAYMOND J. LOHIER, JR., Circuit Judges.

**Opinion**

## SUMMARY ORDER

**\*\*1** Appellant Leon Koziol, [1] a suspended attorney proceeding *pro se,* appeals the District Court's judgment granting several motions to dismiss and/or for summary judgment filed by the defendants-appellees, denying his cross-motion for summary judgment, and dismissing both the lead and member complaints filed in his consolidated 42 U.S.C. § 1983 action. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss, "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Litwin v. Blackstone Grp., L.P.,* 634 F.3d 706, 715 (2d Cir.2011) (quoting *ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.,* 553 F.3d 187, 196 (2d Cir.2009)). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is

"inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* We note that, although this Court usually affords *pro se* litigants "special solicitude" by, *inter alia,* liberally construing their pleadings, *see, e.g., Tracy v. Freshwater,* 623 F.3d 90, 101 (2d Cir.2010), as a suspended attorney with over twenty years of experience litigating civil rights cases, Koziol is **\*503** not entitled to such "special solicitude," *see id.* at 102.

We review orders granting summary judgment *de novo* and focus on whether the district court properly concluded that there was no genuine issue as to any material fact and the moving party was entitled to judgment as a matter of law. In so doing, we construe the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. *See id.* Where parties have filed cross-motions for summary judgment, "each party's motion is examined on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." *Chandok v. Klessig,* 632 F.3d 803, 812 (2d Cir.2011).

We are "free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied." *Leecan v. Lopes,* 893 F.2d 1434, 1439 (2d Cir.1990).

On appeal, Koziol argues, *inter alia,* that the District Court erred in: (1) dismissing, apparently on the basis of absolute judicial immunity, his claims for declaratory relief, which sought declarations regarding the alleged unconstitutionality of: (a) certain New York State child custody and child support laws; (b) the "processes" involved in state court divorce actions and related proceedings to determine child custody and support issues; and (c) the manner in which his state attorney disciplinary proceedings were conducted; (2) rejecting his arguments that certain judicial defendants were not entitled to judicial immunity because they purportedly acted in the absence of all jurisdiction; (3) failing to consider whether he had adequately pleaded a retaliation claim against a number of State tax compliance agents; and (4) dismissing a state law trespass claim against the Town of New Hartford based on his failure to comply with the municipal notice requirements set out in New York

General Municipal Law § 50–i. We address each argument in turn.

**\*\*2** **[1]** First, we affirm the District Court's dismissal of Koziol's declaratory judgment claims because, under the abstention doctrine set out by the Supreme Court in *Younger v. Harris,* 401 U.S. 37, 43–45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the District Court is without jurisdiction over those claims. Under *Younger,* abstention is mandatory when: "1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Liberty Mut. Ins. Co. v. Hurlbut,* 585 F.3d 639, 647 (2009) (quoting *Philip Morris Inc. v. Blumenthal,* 123 F.3d 103, 105 (2d Cir.1997) (internal quotation marks omitted)). Although the *Younger* doctrine was originally formulated in the context of criminal proceedings, it now applies with equal force to civil proceedings, including state administrative proceedings that are "judicial in nature." *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (state administrative proceedings); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 433–34, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (state bar attorney disciplinary hearings). The doctrine applies to claims for injunctive and declaratory relief. *See Hansel v. Town Court,* 56 F.3d 391, 393 (2d Cir.1995).

**[2]** **[3]** All three *Younger* requirements are met in this case. First, the record reflects that state proceedings are ongoing both in Koziol's divorce action and in the state attorney disciplinary matter. Second, the resolution of domestic relations matters has been recognized as an important state interest, *see* **\*504** *Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 12–13, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (" '[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.' " (internal alteration and citation omitted)), as has a state's interest in regulating the conduct of attorneys admitted to its bar, *see Middlesex Cnty. Ethics Comm.,* 457 U.S. at 432–34, 102 S.Ct. 2515. Finally, despite Koziol's arguments to the contrary, he has not demonstrated that the state courts are an inadequate forum for raising his constitutional claims. Indeed, it appears that Koziol has repeatedly raised his constitutional claims before the state courts, albeit without receiving any favorable decisions. However, simply because the state courts have

not issued decisions in his favor does not render them "inadequate" for purposes of *Younger* abstention. *See Hansel,* 56 F.3d at 394 ("So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for *Younger* purposes."). Because we find that *Younger* abstention is appropriate, we express no opinion regarding the merits of Koziol's arguments in support of his constitutional claims, which constituted the bulk of his appellate brief.

**\*\*3** Koziol claims that Justice Michael Daley of the New York Supreme Court and Family Court Judge Martha Walsh Hood were not entitled to judicial immunity because they were acting in the absence of jurisdiction when they presided over his divorce action. We hold this claim to be without merit, for substantially the reasons stated by the District Court in its memorandum decision. Additionally, a review of Koziol's pleadings reveals no error in the District Court's implicit determination that he had failed adequately to plead a retaliation cause of action against two State tax compliance agents, Charlotte Kiehle and Donna Costello, and State Deputy Tax Commissioner C. Duncan Kerr.

With respect to Koziol's notice-of-claim argument with regard to the District Court's dismissal of his state law trespass cause of action against the Town of New Hartford, our review of the record reveals that the District Court was incorrect in stating that Koziol failed to oppose New Hartford's notice-of-claim argument. Nonetheless, we conclude that dismissal of Koziol's state law trespass claim against New Hartford pursuant to New York General Municipal Law § 50–i was appropriate, inasmuch as the record reflects that neither Koziol's pleadings nor his motion papers establish that "at least thirty days have elapsed since the service of such notice," *see* N.Y. Gen. Mun. Law § 50–i(1)(b). Indeed, his notice of claim was dated October 29, 2010, and the relevant complaint was filed in the District Court on November 10, 2010).

Koziol also generally asserts that the District Court failed to consider the record in a light most favorable to him as a non-movant with respect to the defendants' motions. *See* Fed.R.Civ.P. 12(b)(6). After conducting an independent review of the record and the District Court's decision, we conclude that Koziol's argument is without merit.

We further conclude that Koziol has forfeited any other challenges to the District Court's decision. *See Tolbert v. Queens Col.,* 242 F.3d 58, 75 (2d Cir.2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citation omitted)).

**CONCLUSION**

We have considered all of Koziol's arguments on appeal and conclude that they **\*505** are without merit. For the reasons stated above, the judgment of the District Court is **AFFIRMED.**

**All Citations**

485 Fed.Appx. 500, 2012 WL 2213658

Footnotes

\*     The Clerk of Court is respectfully directed to amend the official caption as shown above.

1     Koziol proceeded under the fictitious name "John Parent" in the lead case of the consolidated action from which the instant appeal arises. Consistent with the District Court's memorandum decision and the majority of the parties' filings in this Court, this opinion refers to the plaintiff-appellant by his real name. We further note that, contrary to what the caption suggests, this case is not a class action.

**End of Document**     © 2018 Thomson Reuters. No claim to original U.S. Government Works.

🟨 KeyCite Yellow Flag - Negative Treatment
Distinguished by Kenific v. Oswego County, N.D.N.Y., July 23, 2010

4 Fed.Appx. 33
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Sonny B. SOUTHERLAND, Sr., on his own
behalf and on behalf of his minor children
Ciara, Venus, Sonny, Jr., Nathaniel, Emmanuel,
Kiam, and Elizabeth, Plaintiff–Appellant,

v.

Rudolph GIULIANI, Individually and as Mayor of
the City of New York; Fred Levitan, Individually &
as Regional Director of the New York City Regional
office of Children & Family Services; Hattie L.
Lucas, Individually & as director Parents'/Children's
Rights Unit, ACS office of Advocacy; Viviane
Demilly, Individually & as Deputy Director of
Parents'/ Children's Rights Unit of ACS office of
Advocacy; Cyprian Belle, Individually & as Brooklyn
Borough Director Field office of ACS; Ms. Giakas,
as Supervisor ACS; Ms. Duran, as Deputy Director
ACS; Ms. Akhazeti, as Supervisor ACS; Teressa
Hardgrove, Supervisor ACS; F. Balon, Individually
& as Supervisor ACS; Timothy Woo, Individually
& as ACS Caseworker; Ronald Bateau, Individually
& as ACS Case Manager; John and Jane Doe, as
Agents of ACS; Arnold Elman, as Supervisor of
office of Advocacy of ACS; Cyril E. Jermin, I & R
Worker Unit of ACS; Daniel Turbow, Individually
& as Brooklyn Family Court Judge; Michael A.
Ambrosio, Individually & as a Former Brooklyn
Family Court Judge; Joseph Lauria, Individually &
as a Brooklyn Family Court Administrative Judge;
Philip C. Segal, Judge, Individually & as a Brooklyn
Family Court Judge; Corporation Counsel; Michael
Hess, Individually & as Corporation Counsel;
Gerald F. Harris, Individually & as Special assistant
Corporation Counsel; Jennifer Jones Austin,
as associate General Counsel of New York City;
Susan Jalowski, Esq., Individually & as Special
assistant Corporation Counsel; Estajo Koslow, Esq.,
Individually & as Law Guardian, Agent for the Legal
Aid Society; Molly Dieterich, Individually & as
Social Worker and Agent for the Legal
Aid Society; Richard Colodny, Esq., Individually & as assigned
18–B Attorney; Marc Berk, Esq., Individually
& as assigned 18–B Attorney; Saint Joseph for
Children and Families Services; Benedict Pierce,
Individually & as Supervisor of St. Joseph; Joyce
Baldwin, Individually & as a Foster Parent and
Agent of St. Joseph; Edwin Gould for Children
Services Inc.; Arthur Zanko, Individually & as
Executive Director of Edwin Gould; Ted Marrinaro,
Individually & as Supervisor of Edwin Gould;
Cadija R. Tibbs, Individually & as Caseworker of
Edwin Gould; Corlora Turnquest, Individually &
as Caseworker of Edwin Gould; Alana Kay Gore,
Individually & as Caseworker of Edwin Gould and
John & Jane Doe as Agents of Edwin Gould; Regina
Davis; Shakima Canty; Carolyn Lumpkin; and
John Doe, Individually, Defendants–Appellees.

No. 00–7410.
|
Feb. 14, 2001.

**Synopsis**
Father filed action on behalf of himself and his minor
children against the city, Administration for Children's
Services (ACS), and 41 other defendants, following
the removal of his children from his custody, alleging
violations of § 1983 and various other federal and state
law provisions. The United States District Court for
the Eastern District of New York, Charles P. Sifton,
Chief Judge, granted defendants' motions to dismiss
and father appealed. The Court of Appeals held that
father's allegations stated cognizable § 1983 claims against
ACS and its employees for violations of procedural and
substantive due process.

Affirmed in part, vacated in part, and remanded.

*35  Appeal from the United States District Court for the
Eastern District of New York, Charles P. Sifton, Chief
Judge.

**Attorneys and Law Firms**

Sonny B. Southerland, pro se.

Paul L. Herzfeld; Michael D. Hess, of counsel, Office of the Corporation Counsel of the City of New York, New York, NY, for appellees Michael Hess, City of New York, Rudolph Guiliani, Administration For Children's Services, Nicholas Scopetta, Hattie Lucas, Viviane Demilly, Cyprian Belle, Gerald Harris, Jennifer Jones Austin, and Susan Jalowski.

Carolyn Cairns Olson, Assistant Attorney General of the State of New York; Eliot Spitzer, Attorney General, and Robert A. Forte, Deputy Solicitor General, of counsel, New York, NY, for appellees Family Court of the State of New York, Daniel Turbow, Michael A. Ambrosio, Joseph Lauria, Philip Segal, and Fred Levitan.

Joseph H. Farrell, Conway, Farrell, Curtin & Kelly, P.C., New York, NY, for appellees St. Joseph for Children and Family Services, and Benedict Pierce.

Ira L. Eras, Brooklyn, NY, for appellee Richard Colodny.

David E. Potter, Lazare Potter Giacovas & Kranjac LLP, New York, NY, for appellees Edwin Gould Services for Children, Arthur Zanko, Ted Mannarino, Cadija R. Tibbs, Carlora Turnquest, Alana Kay Gore.

Daniel Hughes, Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski (Erin A. O'Leary), New York, NY, for appellee Mark Berk.PLS. START HERE

Appearing for Appellees Estajo Koslow and Molly Dieterich: William D. Buckley, Garbarini & Scher, P.C., New York, NY.

## Opinion

**\*\*1** UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Pro se plaintiff Sonny Southerland filed suit in the United States District Court for the Eastern District of New York on behalf of himself and his minor children **\*36** against the City of New York, the Administration for Children's Services ("ACS"), and forty-one other defendants following the removal of his children from his custody. The complaint alleges violations of 42 U.S.C. § 1983 and various other federal and state law provisions. The district court granted the defendants' motions to

dismiss and entered judgment in favor of the defendants. The plaintiff appeals.

The complaint alleges, *inter alia,* that ACS caseworker Timothy Woo wrongfully seized the plaintiff's children and removed them from his home and custody without a proper investigation of allegations of abuse and neglect. The complaint also alleges that the children were beaten in the foster care of defendant Joyce Baldwin.

The district court dismissed the claims in the complaint on various grounds, including failure to state a claim, lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine, Eleventh Amendment immunity, judicial immunity, and failure to plead certain matters with sufficient particularity.

**[1]** Although we agree with most of the district court's order, we conclude that the district court erred in dismissing, for failure to state a claim, the plaintiff's § 1983 claims against ACS and the individual employees of ACS. The plaintiff's complaint alleges that Timothy Woo, an employee of ACS, removed the plaintiff's children from his home on June 9, 1997 and that the other named ACS employees were complicit with his actions. The district court dismissed the plaintiff's claim, stating that the defendants' actions "implicat[e] [the plaintiff's] interest in the custody of his children but [they do] not ris[e] to the level of termination of his parental rights."

We think that the complaint states a valid claim for a violation of the Fourteenth Amendment's Due Process Clause. In *Tenenbaum v. Williams,* 193 F.3d 581 (2d Cir.1999), we restated the fundamental principle that "[p]arents ... have a constitutionally protected liberty interest in the care, custody and management of their children." *Id.* at 593. This liberty interest is protected by both the substantive and procedural safeguards of the Due Process Clause of the Fourteenth Amendment. *See Kia P. v. McIntyre,* 235 F.3d 749, 758–59 (2d Cir.2000). We have never required-as the district court apparently did-that parental rights be completely or permanently terminated in order for constitutional protections to apply.

**[2]** With respect to procedural due process rights, a state actor may not deprive a parent of the custody of his children without a pre-deprivation hearing unless the children are "immediately threatened with harm," in which case a prompt post-deprivation hearing is required.

*Tenenbaum,* 193 F.3d at 594 (internal quotation marks omitted). We think that Southerland should be given an opportunity to prove either that no emergency justified the seizure of his children without a hearing or that the subsequent family court proceedings were insufficiently prompt to pass constitutional muster.

**\*\*2**  **[3]**  With respect to substantive due process rights, state seizure of children is constitutionally permitted only where "case workers have a 'reasonable basis' for their findings of abuse." *Wilkinson v. Russell,* 182 F.3d 89, 104 (2d Cir.1999) (quoting *van Emrik v. Chemung County Dep't of Social Servs.,* 911 F.2d 863, 866 (2d Cir.1990)). At the least, Southerland's complaint alleges that there was no reasonable basis for the seizure of his children.

**[4]**  **[5]**  We therefore conclude that the plaintiff's allegations state cognizable § 1983 claims against ACS and its employees **\*37** for violations of procedural and substantive due process. We note that the district court's holding regarding the *Rooker–Feldman* doctrine does not provide an alternative basis for affirmance. The district court was correct that the *Rooker–Feldman* doctrine precludes federal court review of the New York state family court decisions subsequent to the seizure of Southerland's children, but it does not prevent a federal court from hearing claims that the plaintiff's constitutional rights were violated *prior* to the family court proceedings by the state's alleged failure to provide a pre-deprivation hearing or a prompt post-deprivation hearing, or by the allegedly unreasonable seizure of the children.[1]

We emphasize that our holding is limited to the claims made directly by Sonny Southerland. Although the children probably have similar claims,[2] we have held that "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) We leave it to the district court upon remand to determine whether Southerland should be given a chance to hire a lawyer for his children or to seek to have one appointed for them. We also leave it to

the district court to adjudicate the defendants' denial of service of process.

**[6]**  We note one final set of issues that the district court may need to confront upon remand. The plaintiff's allegation that his children were abused in foster care by Joyce Baldwin may state an additional due process claim. It is well-established that a child in foster care has a liberty interest to be free from harm, and correspondingly, that the state has a duty to protect such children from harm. *See Doe v. New York City Dep't of Social Servs.,* 649 F.2d 134, 141 42 (2d Cir.1981); *see also Nicini v. Morra,* 212 F.3d 798, 808 (3d Cir.2000); *Lintz v. Skipski,* 25 F.3d 304, 305 (6th Cir.1994); *Norfleet v. Arkansas Dep't of Human Servs.,* 989 F.2d 289, 293 (8th Cir.1993); *Yvonne L. v. New Mexico Dep't of Human Servs.,* 959 F.2d 883, 891–93 (10th Cir.1992); *K.H. v. Morgan,* 914 F.2d 846, 848–49 (7th Cir.1990); *Taylor v. Ledbetter,* 818 F.2d 791, 795 (11th Cir.1987) (en banc). Whether a parent of a child abused in foster care has a claim of his or her own is an unsettled question in this Circuit, but the Third Circuit has recognized such a claim. *See Estate of Bailey v. County of York,* 768 F.2d 503, 509 n. 7 (3d Cir.1985), *abrogated on other grounds by DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The complaint appears to state this claim most directly against Baldwin, and less directly against St. Joseph for Children and Family Services, the social services agency that placed Southerland's children in Baldwin's care and supervised this placement. But we decline to address **\*38** these difficult issues for the first time on appeal. Instead, we instruct the district court to consider them in the first instance upon remand.

**\*\*3**  For the foregoing reasons, the judgment of the district court is hereby affirmed in part, vacated in part, and remanded for further proceedings consistent with this order.

**All Citations**

4 Fed.Appx. 33, 2001 WL 127293

---

Footnotes

1   We note that the complaint makes a sufficient allegation of a municipal "policy" for imposition of § 1983 liability on ACS. *See Tenenbaum,* 193 F.3d at 597 (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In particular, the plaintiff alleges that "defendants have adopted and are presently pursuing (racially motivated) policies, practices, customs and procedures pursuant to which children are removed from their parents custody

and placed in foster care in cases where there is no threat of 'imminent danger' ... to child's life or health, on the basis of incompletely investigated allegations of neglect or abuse."

2   The children's claims for unreasonable seizure would proceed under the Fourth Amendment rather than the substantive component of the Due Process Clause. *See Kia P., 235 F.3d at 757–58.*

---

**End of Document**                                                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

576 Fed.Appx. 18
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE(WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

Amy R. WEISSBROD, Plaintiff–Appellant,

v.

Hon. Luis A. GONZALEZ, Presiding Chief Justice,
Appellate Division First Dept., James T. Shed,
Thomas Cahill, Naomi Goldstein, Jorge Dopico,
Halliburton Fales, Orlando Reyes, Esq., Quasi–
Judicial Officers at The First Departmental
Disciplinary Committee "FDDC Defendants",
Hon. Jonathan Lippman, Chief Justice of The
N.Y. Court of Appeals, Defendants–Appellees,
Paul Curran, Defendant.

No. 13–2211–cv.
|
Aug. 19, 2014.

Appeal from a May 14, 2013 judgment of the United
States District Court for the Southern District of New
York (Jesse M. Furman, Judge).
UPON DUE CONSIDERATION WHEREOF, IT IS
HEREBY ORDERED, ADJUDGED, AND DECREED
that the judgment of the District Court is AFFIRMED.

**Attorneys and Law Firms**

Amy R. Weissbrod, pro se, Upper Montclair, NJ, for
Plaintiff–Appellant.

**\*19** Barbara D. Underwood, Solicitor General, Michael
S. Belohlavek, Senior Counsel, Mark H. Shawhan,
Assistant Solicitor General, for Eric T. Schneiderman,
Attorney General of the State of New York, Albany, NY,
for Defendants–Appellees.

PRESENT: JOSÉ A. CABRANES and CHESTER J.
STRAUB,[*] Circuit Judges.

**Opinion**

## SUMMARY ORDER

Plaintiff Amy Weissbrod, an attorney proceeding *pro se,*
appeals from the District Court's judgment dismissing
her 42 U.S.C. § 1983 suit as barred by the *Rooker–
Feldman* doctrine and on immunity grounds, and from
the District Court's order denying reconsideration. We
assume the parties' familiarity with the underlying facts
and the procedural history of the case, to which we refer
only as necessary to explain our decision to affirm.

A district court has the inherent authority to dismiss
an action as frivolous, even when the plaintiff has paid
the filing fee. *Fitzgerald v. First E. Seventh St. Tenants
Corp.,* 221 F.3d 362, 363–64 (2d Cir.2000) (per curiam).
An action is frivolous "where it lacks an arguable basis
either in law or in fact." *Neitzke v. Williams,* 490 U.S.
319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). We
ordinarily afford special solicitude to *pro se* litigants,
but, as an attorney, Weissbrod is not entitled to liberal
construction of her pleadings. *See Tracy v. Freshwater,*
623 F.3d 90, 101–02 (2d Cir.2010). Although we have not
decided whether such *sua sponte* dismissals are reviewed
*de novo* or for abuse of discretion, we need not reach that
issue here because the District Court's decision "easily
passes muster under the more rigorous *de novo* review,"
*Fitzgerald,* 221 F.3d at 364 n. 2.

After review of Weissbrod's complaint and relevant case
law, we affirm substantially for the reasons set forth by
the District Court in its May 2, 2013 order. Weissbrod
complains principally of injuries caused by a state court
judgment ordering her to pay a fine and temporarily
suspending her from the practice of law. Yet the *Rooker–
Feldman* doctrine bars any attempt by Weissbrod to
disturb these disciplinary orders. *See Hoblock v. Albany
Cnty. Bd. of Elections,* 422 F.3d 77, 86–87 (2d Cir.2005).
Moreover, Weissbrod's claims seeking damages, among

other forms of relief, against the defendants in their individual and official capacities were properly dismissed on the grounds of absolute and sovereign immunity. *See Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993).

Weissbrod argues further that the District Court erred by denying her request for leave to amend, but she failed to make any substantive argument in support of that contention. *See Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir.1998). In any event, granting leave to amend would have been futile in light of the applicability of the *Rooker– Feldman* doctrine and sovereign and judicial immunity. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

We have considered all of the arguments raised by Weissbrod on appeal and find them to be without merit. For the reasons stated above, we **AFFIRM** the District **\*20** Court's May 14, 2013 judgment. [1]

### All Citations

576 Fed.Appx. 18

### Footnotes

[*]    Judge Livingston has recused herself from consideration of this matter. Pursuant to Second Circuit Internal Operating Procedure E(b), the matter is being decided by the two remaining members of the panel.

[1]    We also deny as moot Weissbrod's motion to file a supplemental appendix (ECF No. 93), inasmuch as the supplemental materials do not affect our review and disposition of this case.

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 2

2017 WL 4083575
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Frances AMATO; John Doe, progeny minor child;
Adrienne Auchmoody; Toni Jean Kulpinski;
Vladimir Kulpinski; Michaela Kulpinski; Michelle
Arzola; Jane Doe, minor child; and John Doe,
minor child of Michelle Arzola, Plaintiffs,
v.
Judge Anthony MCGINTY, individually and as
Ulster County Family Court Judge; Attorney Andrew
Gilday, individually and as a public defender
of New York; Amy Ingram, state attorney for
the child; Patrick V. Beesmer, individually; and
Pamela Augustine, individually, Defendants.

1:17-CV-00593 (MAD/ATB)
|
Signed 09/15/2017

**Attorneys and Law Firms**

FRANCES AMATO, P.O. Box 820, Marlboro, New
York 12542, Plaintiff, pro se.

**Opinion**

### MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, U.S. District Judge

### I. INTRODUCTION

 **\*1** On May 26, 2017, *pro se* Plaintiff Frances Amato
("Plaintiff Amato") commenced this action pursuant
to 42 U.S.C. § 1983 ("Section 1983"). *See* Dkt. No.
1 at 1, 4. Plaintiff Amato is joined in this action
with her son ("Plaintiff CB"); her mother, Adrienne
Auchmoody ("Plaintiff Auchmoody"); Plaintiff CB's
aunt, Toni Jean Kulpinski ("Plaintiff TK"); Plaintiff
CB's uncle, Vladimir Kulpinski ("Plaintiff VK"); Plaintiff CB's
cousin, Michaela Kulpinski ("Plaintiff MK"); Plaintiff
CB's sister, Michelle Arzola ("Plaintiff Arzola"); Plaintiff
CB's niece, ("Plaintiff Jane Doe"); and Plaintiff CB's
nephew ("Plaintiff John Doe"). *See id.* at 1-2. Plaintiffs
have brought this action against Ulster County Family

Court Judge Anthony McGinty ("Defendant McGinty")
for his role in a decision dictating the custody of Plaintiff
CB entered on October 24, 2016. *See* Dkt. No. 17 at 67;
Dkt. No. 1 at 3. Plaintiffs have also sued Plaintiff CB's
father, Patrick Beesmer ("Defendant Beesmer"); Plaintiff
CB's assigned counsel for the custody proceedings, Amy
Ingram, ("Defendant Ingram"); Defendant Beesmer's
assigned counsel for the custody proceedings, Attorney
Andrew Gilday ("Defendant Gilday"); and Defendant
Beesmer's "paramour" as Plaintiffs refer to her, Pamela
Augustine ("Defendant Augustine"), for their roles in the
custody proceeding. *See* Dkt. No. 1 at 3-4.

Plaintiffs filed a motion for a temporary restraining
order on June 2, 2017, *see* Dkt. No. 8, which the
Court denied that day, *see* Dkt. No. 9. On June 6,
2017, Magistrate Judge Baxter issued an Order and
Report-Recommendation recommending that Plaintiffs'
complaint be dismissed in its entirety with prejudice as
to all named Defendants in this action. *See* Dkt. No.
11 at 26. Plaintiffs submitted objections to Magistrate
Judge Baxter's Order and Report-Recommendation on
June 19, 2017. *See* Dkt. No. 17. Currently before the
Court is Magistrate Judge Baxter's Order and Report-
Recommendation and Plaintiffs' objections thereto.

### II. BACKGROUND

Plaintiff Amato and Defendant Beesmer are the parents
of Plaintiff CB and were involved in custody proceedings
over Plaintiff CB. *See* Dkt. No. 1 at 5. According to
the complaint, Defendant McGinty presided over the
custody proceedings after the originally assigned judge
recused herself. *See id.* In an order dated October 24, 2016,
Defendant McGinty granted Defendant Beesmer primary
custody of Plaintiff CB. *See* Dkt. No. 17 at 64-65, 67.

Upset with the outcome of the custody proceedings,
Plaintiff Amato commenced the instant action against
Defendants for their roles in the proceedings.[1] *See* Dkt.
No. 1. Plaintiff Amato claims that during the custody
proceedings, Defendant McGinty was "[h]ighly abusive"
to "all" plaintiffs; violated Plaintiffs' "constitutional" and
"ADA rights;" induced "[e]xtreme pain and suffering and
trauma to all plaintiffs;" "endanger[ed] the welfare of
a child;" and "[i]llegally extended fictious authority in
CLEAR ABSENCE of subject matter jurisdiction." *Id.*
at 6-7. Plaintiff Amato claims that Defendant McGinty

denied her access to "his court," denied her "rights to proper serving process," and denied the admission of "any evidence into the court for purpose of record." *Id.* at 7.

**\*2** Plaintiff Amato claims that Defendant McGinty "co-conspired" with other Defendants in a "mock trial" to punish Plaintiff Amato for her role as an "outspoken community advocate" for human rights and family court reform. *See id.* at 7, 9, 15. Plaintiff Amato alleges that Plaintiff CB's custody proceedings were "plagued by retributions" for Plaintiff Amato's public criticism of Defendant McGinty prior to the custody proceedings. *Id.* at 7.

Plaintiff Amato alleges that Defendant McGinty, with cooperation from Defendants Ingram and Gilday, committed a number of violations resulting in the "kidnaping and endangerment of a minor." *Id.* at 8. Plaintiff Amato claims that Defendants McGinty, Ingram and Gilday committed "Malicious Trespass," "Abuse of Process," "Retaliation," "False [and] unlawful arrest," and "Child Endangerment." *See id.* at 8-9. Plaintiff Amato alleges that Defendant McGinty "[p]re decided [a] trial with no evidence allowed." *Id.* at 8.

Plaintiffs allege "Causes of Action" for "First Amendment," "Parental Impairment," and "Due Process." *Id.* at 14-26. Plaintiffs also allege additional state law claims for "intentional and negligent emotional distress." *Id.* at 24. Plaintiffs request the "immediate return of the child," compensatory damages of $10,000,000 on each cause of action, punitive damages, costs and attorneys' fees, and a "[j]udgment declaring the orders, edicts and processes in th[e] [c]omplaint unconstitutional[,] together with an order permanently enjoining the enforcement of [the family court] orders." *Id.* at 26.

### III. DISCUSSION

#### A. Standard of Review

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect

*pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, "[t]he right of self-representation does not exempt a party from compliance with the relevant rules of procedural and substantive law." *Massie v. Ikon Office Solutions, Inc.*, 381 F. Supp. 2d 91, 94 (N.D.N.Y. 2005) (quoting *Clarke v. Bank of New York*, 687 F. Supp. 863, 871 (S.D.N.Y. 1988)).

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to a magistrate judge's report, the district court engages in *de novo* review of the issues raised in the objections. *See id.*; *Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid*, 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart*, No. 02-CV-1126, 2004 WL 2725126, \*1 (S.D.N.Y. Nov. 29, 2004).

Although a *pro se* litigant's objections should be accorded leniency, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (quotation omitted); *see also IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2008 WL 4810043, \*1 (S.D.N.Y. Nov. 3, 2008) ("To the extent ... that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error.").

**\*3** As mentioned, Plaintiffs have submitted objections to the Order and Report-Recommendation issued by Magistrate Judge Baxter. *See* Dkt. No. 17. The objections submitted by Plaintiffs are 117 pages long. *See id.* Despite the correct caption at the top of the document, the first 25 pages of the document appear to be an appellate brief to the State of New York Supreme Court, Appellate Division, Third Department.[2] *See id.* at 1-25. The remaining 92 pages include a brief analysis of custody factors, Defendant McGinty's custody decision, court transcripts, testimonial statements, and documents outlining the history of the custody proceedings. *See id.* at

25-117. There is no mention of Magistrate Judge Baxter or the Order and Report-Recommendation in any of these documents. Accordingly, Plaintiffs have failed to file specific objections. However, regardless of whether the Court reviews the Order and Report-Recommendation *de novo* or for clear error, Plaintiffs' complaint is still subject to dismissal.

## B. Judicial Immunity

Judges are afforded absolute immunity from suit for actions related to the exercise of their judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). Judges maintain judicial immunity "even when [the] judge is accused of acting maliciously and corruptly." *Id.* at 554. Judicial immunity is only defeated by "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity;" or "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted). A judicial action is "a function normally performed by a judge, and to the expectations of the parties." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). A judge's actions are in "absence of all jurisdiction" when the court has no "statutory or constitutional *power* to adjudicate the case." *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Judicial actions made in error or "in excess of his authority" do not defeat judicial immunity. *Mireles*, 502 U.S. at 12-13 (quoting *Stump*, 435 U.S. at 356). Furthermore, a district court cannot grant injunctive relief "against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (quotation omitted).

Plaintiffs have brought a number of allegations against Defendant McGinty, including that he violated their constitutional rights, co-conspired with the remaining Defendants, endangered the welfare of Plaintiff CB, and retaliated against Plaintiff Amato for being outspoken about Defendant McGinty's purported "abuses and discrimination against mothers and children." Dkt. No. 1 at 5-9. Accepting Plaintiff's claims as true, all claims occurred while Defendant McGinty was working within his judicial capacity to determine the proper custody for Plaintiff CB. Accordingly, Defendant McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13. Magistrate Judge Baxter correctly reasoned that any action Defendant McGinty committed with malice

or in retaliation of Plaintiff Amato's criticisms was still performed within the judicial functions of a family court judge presiding over a custody dispute. Magistrate Judge Baxter also correctly concluded that Plaintiff's arguments with respect to N.Y. Jud. Law § 21 are unavailing, as Defendant McGinty did not violate that provsion, and, even if he did, he would still be entitled to judicial immunity. *See generally Gross*, 585 F.3d at 84.

Furthermore, law guardians are entitled to quasi-judicial immunity for actions pertaining to their representation of a child in family court. *See Yapi v. Kondratyeva*, 340 Fed. Appx. 683, 685 (2d Cir. 2009) (citations omitted); *Lewittes v. Lobis*, No. 04 Civ. 0155, 2004 WL 1854082, *11 (S.D.N.Y. Aug. 19, 2004). Therefore, Magistrate Judge Baxter correctly concluded that Defendant Ingram is entitled to quasi-judicial immunity by virtue of her appointment as Plaintiff CB's law guardian. *See* Dkt. No. 11 at 12-13.

## C. State Action

**\*4** To state a claim under Section 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Moreover, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)).

The conduct of a private actor may be considered state action when the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). However, "private attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims." *Licari v. Voog*, 374 Fed. Appx. 230, 231 (2d Cir. 2010) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)). The mere conduct of a private party is excluded from the reach of Section 1983 "no matter how discriminatory or wrongful" that conduct may be. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted).

Plaintiffs filed suit against Defendant Gilday for his role as Defendant Beesmer's assigned counsel and against Defendant Ingram for her role as Plaintiff CB's assigned attorney. Defendants Gilday and Ingram, even if they were court appointed, cannot be considered state actors. *See Licari*, 374 Fed. Appx. at 231. Furthermore, Defendants Beesmer and Augustine are obvious private parties who are not state actors under Section 1983. Defendants Beesmer and Augustine had no connection to the state beyond their participation in the custody proceedings.

While Plaintiffs have claimed that Defendants Beesmer and Augustine "conspired" with the other Defendants to achieve the custody outcome, as Magistrate Judge Baxter found, there have been no facts to support these conclusory statements. [3] Conspiracy allegations that are wholly conclusory are insufficient to state a claim under Section 1983. *See Tapp v. Champagne*, 164 Fed. Appx. 106, 108 (2d Cir. 2006) (citing *Ciambriello*, 292 F.3d at 325); *see also Brito v. Arthur*, 403 Fed. Appx. 620, 621 (2d Cir. 2010) ("Complaints containing only 'conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights' will be dismissed.") (citing *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977)). Accordingly, this Court agrees with Magistrate Judge Baxter that Defendants Gilday, Ingram, Beesmer, and Augustine were not state actors, and the complaint is dismissed as to each of these Defendants.

### D. Minor Child Plaintiffs

An individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). Three minor plaintiffs, Plaintiff CB, Plaintiff John Doe, and Plaintiff Jane Doe, have been listed as *pro se* litigants in this action. *See* Dkt. No. 1 at 1-2; Dkt. No. 11 at 16. While the adult Plaintiffs may bring this lawsuit *pro se*, they may not act as counsel for the minor children without being a licensed attorney. *See Cheung*, 906 F.2d at 61. Therefore, this Court agrees with Magistrate Judge Baxter's determination that the adult

Plaintiffs in this matter may not bring suit on behalf of the minor Plaintiffs.

### E. Standing

**\*5** A plaintiff who wishes to invoke federal jurisdiction bears the burden of establishing that he or she has adequate standing to bring the action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)) (other citation omitted). To establish standing, "a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citations omitted). Moreover, there is a "prudential standing rule" which generally bars litigants "from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (quotation omitted).

Here, despite multiple adult Plaintiffs filing suit against Defendants, Plaintiff Amato is the only Plaintiff that was a party to the custody proceedings regarding Plaintiff CB. Plaintiffs Auchmoody, TK, VK, MK, and Arzola only appear to be connected to the custody proceedings by their relationship with Plaintiffs Amato and CB. *See generally* Dkt. No. 1. Pursuant to the prudential standing rule, Plaintiffs Auchmoody, TK, VK, MK, and Arzola cannot assert the rights of Plaintiff Amato or Plaintiff CB. *See Rajamin*, 757 F.3d at 86. Therefore, all Plaintiffs other than Plaintiffs Amato and CB lack standing, and the complaint with respect to these Plaintiffs is dismissed.

### F. Domestic Relations Exception

Magistrate Judge Baxter also noted that the Court lacks subject matter jurisdiction over several of Plaintiffs' claims pursuant to various legal doctrines. Due to the nature of Plaintiffs' complaint, it is difficult to precisely determine exactly which doctrines apply, but the Court will discuss several doctrines which preclude the Court from exercising subject matter jurisdiction over several of Plaintiffs' claims.

The domestic relations exception to federal jurisdiction divests federal courts of jurisdiction in matters involving divorce, alimony, and child custody. *Marshall v. Marshall*,

547 U.S. 293, 307-08 (2006) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992)); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) ("[I]t has been uniformly held that federal courts do not adjudicate cases involving the custody of minors"). In *Bukowski v. Spinner*, No. 17-CV-0845, 2017 WL 1592578, *1 (E.D.N.Y. Apr. 28, 2017), the Eastern District of New York dismissed a case with similar allegations as those brought in this case. [4]

Plaintiffs allege that the "orders and processes" of the family court are unconstitutional; however, the crux of their argument arises out of the alleged improper custody determination by Defendant McGinty. *See* Dkt. No. 1 at 14-15, 21, 24, 26. Plaintiffs' alleged injuries stem directly from the disputed family court custody decision. *See id.* at 5-9, 14-16, 21, 24. Additionally, Plaintiffs request that this Court overturn the custody decision and permanently enjoin the enforcement of family court decisions. *See id.* at 26. Accordingly, to the extent that Plaintiffs request that this Court overturn the custody determination, this Court lacks jurisdiction to adjudicate such a case.

## G. *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998) (citation omitted). "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Id.*

**\*6** In *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments." *Exxon Mobile*, 544 U.S. at 284. In light of *Exxon Mobile*, the Second Circuit has held that "there are four 'requirements' that must be met before the *Rooker-Feldman* doctrine applies." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (citation omitted). The requirements are as follows:

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of

injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Id.* (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

Plaintiffs request that this Court overturn and enjoin the unfavorable decisions of the family court. *See* Dkt. No. 1 at 26. Plaintiffs claim that their injuries resulted from the custody determination made by Defendant McGinty prior to the commencement of this action. [5] *See id.* As such, to the extent that Plaintiffs seek to challenge the family court decision, this Court does not have jurisdiction to grant such relief under *Rooker-Feldman*.

## H. *Younger* Abstention [6]

*Younger* abstention "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." *Torres v. Gaines*, 130 F. Supp. 3d 630, 635 (D. Conn. 2015) (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). This doctrine "applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.' " *Id.* at 636 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)). "If the federal action falls into one of these three categories, a [c]ourt may then consider the additional factors described in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)." [7] *Id.* Since the Supreme Court's decision in *Sprint*, several courts in this Circuit have held that *Younger* abstention applies in similar circumstances as this case. *See id.*; *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459, 2015 WL 1120120, *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that the plaintiff's claims for injunctive relief were barred by *Younger* where the plaintiff sought to challenge ongoing family court proceedings regarding the loss of custody of her son).

Accordingly, as Magistrate Judge Baxter concluded, to the extent that any issues in this litigation are still pending

in family court, this Court is barred from exercising such jurisdiction pursuant to *Younger.*

## I. Opportunity to Amend

**\*7**  When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

Defendants McGinty and Ingram are entitled to immunity, and, thus, better pleading would not be able to cure the defects in Plaintiffs' allegations against them. Defendants Gilday, Ingram, Beesmer, and Augustine were not state actors, and the conspiracy allegations against them are entirely conclusory. Therefore, better pleading would not cure the substantive defects in the complaint. Accordingly, to the extent that Plaintiffs allege constitutional and state law violations that this Court has subject matter jurisdiction over, those claims are dismissed without leave to amend with respect to all named Defendants in this action.

However, Magistrate Judge Baxter recommended that, to the extent Plaintiff Amato challenges the constitutionality of the New York Domestic Relations Law §§ 236 and 240, she may be able to do so in certain circumstances. *See* Dkt. No. 11 at 25-26. The Court agrees, and Plaintiff's complaint is dismissed without prejudice with respect to a claim challenging the constitutionality of the New York Domestic Relations Law, with only Plaintiff Amato as the named plaintiff, and the complaint must be filed against the proper defendant, at the proper time, and in the appropriate forum, as set forth more fully in the Order and Report-Recommendation. *See id.* at 25-26.

## IV. CONCLUSION

After carefully reviewing the record in this matter, Plaintiffs' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Order and Report-Recommendation (Dkt. No. 11) is **ADOPTED** consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED** as against Defendants McGinty, Ingram, Gilday, Beesmer, and Augustine; and the Court further

**ORDERS** that Plaintiff Amato's complaint (Dkt. No. 1) is **DISMISSED without prejudice** with respect to any claim challenging the constitutionality of the New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such challenge, and in the proper forum, as discussed above; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2017 WL 4083575

---

Footnotes

1    While all Plaintiffs have submitted claims against Defendants, the narrative in the complaint and objections is written in a singular voice referring to Plaintiff Amato as "I," "me," and "myself." *See generally* Dkt. Nos. 1, 17.

2    The objections make several comments claiming that "this court" "held" or "ruled" and cited case law from the Third Department. *See, e.g.,* Dkt. No. 17 at 23.

3    Similarly, Plaintiffs' purported state law claims are entirely conclusory and do not come close to alleging facts to support a valid cause of action. *See* Dkt. No. 1 at 24-26.

4    The court determined that despite the plaintiff "raising constitutional issues, the allegations stem from a state domestic relations matter and are thus outside this Court's jurisdiction." *Bukowski,* 2017 WL 1592578, at \*3.

5    Plaintiffs filed this action on May 26, 2017 and Defendant McGinty rendered his custody determination on October 24, 2016. *See* Dkt. No. 17 at 4-5, 67.

6    *See Younger v. Harris*, 401 U.S. 37 (1971).

7    The factors examine "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." *Torres*, 130 F. Supp. 3d at 636

---

**End of Document**                © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

2017 WL 1592578
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Joyelle BUKOWSKI, Plaintiff,

v.

Judge Jeffrey Arlen SPINNER, Mary Beth Daniels,
Dennis M. Brown, Lori Towns, Joanne Merrihue,
Kathleen Turner, Stephanie Stevenson, Philip J.
Castrovinci & Mady, and Adam Saylor, Defendants.

17-CV-0845(JS)(ARL)
|
Signed 04/28/2017

**Attorneys and Law Firms**

For Plaintiff: Joyelle Bukowski, prose, 62 Point Circle
South, Coram, NY 11727.

For Defendants: Hon. Jeffrey Arlen Spinner, Ralph
Pernick, Deputy Attorney General, New York State
Attorney General, 200 Old Country Road, Ste. 240,
Mineola, NY 11501.

For Defendants: Mary Beth Daniels, Matthew K.
Flanagan, Esq., Catalano, Gallardo & Petropoulos, LLC,
100 Jericho Quadrangle, Ste. 214, Jericho, NY 11753.

For Defendants: Dennis M. Brown, Lori Towns, Joanne
Merrihue, and Kathleen Turner, Brian C. Mitchell,
Deputy County Attorney, Suffolk County Department of
Law, 100 Veterans Memorial Highway, P.O. Box 6100,
Hauppauge, NY 11788.

For Defendants: Philip J. Castrovinci & Mady, Philip J.
Castrovinci, Esq., Castrovinci & Mady, Attorneys at Law,
One Edgewood Avenue, Ste. 200, Smithtown, NY 11787.

No appearance for Adam Saylor.

**Opinion**

## MEMORANDUM & ORDER

Joanna Seybert, U.S.D.J.

**\*1** On February 13, 2017, pro se plaintiff Joyelle
Bukowski ("Plaintiff") filed a Complaint in this Court

pursuant to 42 U.S.C. § 1983 ("Section 1983") against
the Hon. Jeffrey Arlen Spinner, New York State
Family Court, Suffolk County ("Judge Spinner"); Mary
Beth Daniels, Law Guardian ("Daniels"); Dennis M.
Brown, Suffolk County Attorney ("Brown"); Lori Towns
("Towns"), Joanne Merrihue ("Merrihue"), Kathleen
Turner ("Turner"), Stephanie Stevenson ("Stevenson"),
Philip J. Castrovinci & Mady [1] ("Castrovinci"), and
Adam Saylor ("Saylor" and collectively, "Defendants"),
accompanied by an application to proceed in forma
pauperis.

On March 20, 2017, Plaintiff filed a motion to withdraw
her pending application to proceed in forma pauperis
and paid the $400 filing fee. (See Docket Entries
6-7.) Given the payment of the filing fee, Plaintiff's
motion to withdraw her request to proceed in forma
pauperis is GRANTED. However, for the reasons that
follow, the Complaint is sua sponte DISMISSED WITH
PREJUDICE pursuant to FED. R. CIV. P. 12(h)(3).

## BACKGROUND [2]

Plaintiff's Complaint is submitted on a Section 1983
complaint form and seeks to challenge rulings made in
an underlying state court child custody case, including
an unfavorable opinion granting sole custody of her
son to Saylor, the father of her child. More specifically,
Plaintiff complains that her child was removed from her
home on June 20, 2016 pursuant to a warrant issued
by Judge Spinner in violation of her Fourth, Sixth, and
Fourteenth Amendment rights. (Compl. ¶ II.B at
5, 11.) Temporary custody was awarded to the child's
father, Saylor, and a restraining order was entered against
Plaintiff that permitted her to have supervised visitation
with her son for one hour per week "at a CPS detention
center." (Compl. at 5, 8.) Plaintiff also claims that, as of
November 23, 2016, Judge Spinner removed all visitation
and Plaintiff has not seen her son since that time. (Compl.
at 5.)

Plaintiff alleges that Saylor "has been abusive and
negligent" and that the child's law guardian, Daniels,
was "not trouble[d]" by these actions. (Compl. at 5.)
Plaintiff claims that caseworkers Towns and Merrihue
"lambasted" Plaintiff in their report to Judge Spinner
and she lost custody of her son. (Compl. at 5, 8.)
According to the Complaint, Plaintiff called 911 to report

that she believed her son had been sexually abused while in Saylor's care and, as a result, she has been characterized by Castrovinci, Sayor's attorney in the underlying Family Court matter, and the CPS attorneys as "unstable." (Compl. at 6.) Plaintiff complains that she has been subjected to "unfounded" charges of neglect by CPS and the individuals involved in the underlying family court matter—Castrovinci and "the chorus of CPS caseworkers ... orchestrated by a compliant Judge alligned [sic] against [Plaintiff]." (Compl. at 8.) Plaintiff describes that what has happened to her and her son "is heinous, unconscionable, fascist and psychopathic. No institution of this government has the right to act as terrorists." (Compl. at 9.)

**\*2** As a result of the foregoing, Plaintiff claims that "monetary injuries have been substantial—loans, inability to seize on job opportunities" and seeks, inter alia, an order restoring custody of her son and prohibiting Saylor from visitation for two years "as the family relationship is fully restored and visitation thereafter at the discretion solely of the mother." (Compl. at 8-9.) Plaintiff also seeks to recover an award of actual and punitive damages. (Compl. at 9.)

Defendants Judge Spinner, Daniels, Brown, Towns, Merrihue, Turner, Stevenson, and Castrovinci have filed letters requesting a pre-motion conference for the purpose of moving to dismiss the Complaint. (See Docket Entry Nos. 10-11, 15-16.) Plaintiff has filed opposition. (See Docket Entry Nos. 13-14.) Given the dismissal of the Complaint for the reasons set forth below, the Defendants' requests for a pre-motion conference are DENIED AS THEY ARE MOOT.

## DISCUSSION

### I. Standard of Review
The Court is required to read a pro se plaintiff's Complaint liberally and construe it to raise the strongest arguments it suggests. See, e.g., McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). Irrespective of whether they are drafted pro se, all complaints must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Further, a district court has the inherent power to dismiss a case, sua sponte, if it determines that the action is frivolous or the court lacks jurisdiction over the matter regardless of whether a plaintiff has paid the filing fee. FED. R. CIV. P. 12(h)(3); Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363-364 (2d Cir. 2000) (per curiam).

### II. The Domestic Relations Exception Bars Plaintiff's Claims
Jurisdiction over the Complaint is barred by the domestic relations exception to the jurisdiction of the federal courts. Under the domestic relations exception, "divorce, alimony, and child custody decrees" remain outside federal jurisdictional bounds. Marshall v. Marshall, 547 U.S. 293, 308, 126 S. Ct. 1735, 1746, 164 L.Ed. 2d 480, 495 (2006) (internal quotation marks and citation omitted); Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (dismissing pro se complaint seeking to challenge state court child custody order because federal court review was barred by the domestic relations exception) (citing Mitchell–Angel v. Cronin, 101 F.3d 108 (2d Cir. 1996) (unpublished opinion); American Airlines v. Block, 905 F.2d 12, 14 (2d Cir. 1990)). This exception is based upon a "policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which the federal courts lack." Thomas v. N.Y. City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

**\*3** As is readily apparent, Plaintiff's claims focus on the return of custody of her son following determinations in the state family court placing the child in the custody of his father, Saylor. Such claims unquestionably implicate the judicially recognized exception to federal subject matter jurisdiction in cases involving domestic relations.

Specifically, the Supreme Court has recognized "that [t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S. Ct. 2206, 2214, 119 L.Ed. 2d 468 (1992) (internal quotation marks and citation omitted); Sobel v. Prudenti, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." (internal quotation marks and citation omitted); see also Hernstadt v. Hernstadt, 373 F.2d 316, 317 (2d Cir. 1967) ("Since the very early dicta [of] In re Burrus, 136 U.S. 586, 10 S. Ct. 850, 34 L.Ed. 500 (1890), it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and, a fortiori, rights of visitation.").

Although Plaintiff styles some of her claims as raising constitutional issues, the allegations stem from a state domestic relations matter and are thus outside this Court's jurisdiction. McArthur v. Bell, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (former husband's 42 U.S.C. § 1983 action in which he claimed that his constitutional rights were violated in proceedings in which former wife obtained upward adjustment of child support would require the court to "re-examine and re-interpret all the evidence brought before the state court" in the earlier state proceedings and, therefore, the district court did not have subject matter jurisdiction) (citing Neustein v. Orbach, 732 F. Supp. 333 (E.D.N.Y. 1990) (district court lacked jurisdiction because it could not resolve factual disputes connected to domestic relations)); see also Sullivan v. Xu, 10-CV-3626, 2010 WL 3238979, at *2 (E.D.N.Y. Aug. 13, 2010) (no jurisdiction over the plaintiff's challenges to child custody and child support orders). Accordingly, because Plaintiff seeks a determination that she was improperly denied custody and/or visitation with her child, the Court lacks jurisdiction and this action is barred by the domestic relations exception to this Court's jurisdiction. The Complaint is thus DISMISSED pursuant to FED R. CIV. P. 12(h)(3). See Neustein, 732 F. Supp. at 339 (an action is barred by domestic relations exception if, "in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation....").

### III. The Rooker-Feldman Doctrine Also Bars Plaintiff's Claims

Even if Plaintiff's Complaint was not barred by the domestic relations exception, the Rooker-Feldman doctrine precludes review of Plaintiff's claims in this Court. Coalescing the Supreme Court's holdings in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L.Ed. 2d 206 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 414–17, 44 S. Ct. 149, 150, 68 L.Ed. 362 (1923), the Rooker–Feldman doctrine prohibits federal district courts from considering collateral attacks to state court judgments. There are four requirements for the application of the Rooker–Feldman doctrine: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff's injuries must be caused by the state court judgment; (3) the plaintiff's claims must invite the district court to review and reject the state court judgment; and (4) the state-court judgment must have been rendered prior to the commencement of the district court proceedings. See Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). "A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment simply by casting his [or her] complaint in the form of a civil rights action." Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (internal quotation marks and citation omitted).

**\*4** Here, Plaintiff's allegations seek to collaterally attack the state court's orders against Plaintiff relating to the custody and visitation of her son. Plaintiff is a state-court loser who complains here of injuries caused by the state court and invites this Court to review and reject the state court orders, all of which were issued on or before June 20, 2016, well before Plaintiff filed her Complaint here on February 13, 2017. Thus, because all of the Rooker-Feldman requirements are satisfied, the Court lacks jurisdiction to adjudicate Plaintiff's claims. Accordingly, the Complaint is DISMISSED pursuant to FED. R. CIV. P. 12(h)(3) on the additional ground that the Rooker-Feldman doctrine divests this Court of jurisdiction.

### IV. Leave to Amend

Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted here. Because the defect in Plaintiff's claims is substantive and would not be cured if afforded an opportunity to amend, leave to amend the Complaint is DENIED.

CONCLUSION

For the reasons set forth above, Plaintiff's motion to withdraw her pending application to proceed in forma pauperis (Docket Entry 7) is GRANTED given her payment of the filing fee. However, the Complaint is sua sponte DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(h)(3) and Defendants' applications requesting a pre-motion conference for the purpose of moving to dismiss the Complaint (Docket Entries 10, 11, 15, 16) are DENIED AS MOOT.

The Court notes that the filing fee was paid while Plaintiff's application to proceed in forma pauperis was pending, and her application demonstrates that she is indigent. Further, she represents that she borrowed the money to pay the filing fee from a family member. In light of the extraordinary circumstances in this case, IT IS HEREBY ORDERED that the filing fee shall be returned to Plaintiff.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore should Plaintiff seek leave to appeal in forma pauperis, such status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L.Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Order to Plaintiff and to mark this case CLOSED.

SO ORDERED.

**All Citations**

Slip Copy, 2017 WL 1592578

Footnotes

1    Given that Castrovinci is an attorney at Castrovinci & Mady (see Docket Entry No. 16), it appears that, although Plaintiff included "& Mady" in the caption of the Complaint, Plaintiff's claims are intended as against Castrovinci and not the law firm.

2    The following facts are taken from Plaintiff's Complaint and are presumed to be true for the purposes of this Memorandum and Order.

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 752178
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Rochelle Coleman, Plaintiff,
v.
Paula Engle, Sarah Merrick, Onondaga County of
Social Services Commissioner, Robert Antunacci,
Onondaga County Comptroller, Defendants.

5:16-cv-00833 (MAD/DEP)
|
Signed 02/27/2017

**Attorneys and Law Firms**

ROCHELLE COLEMAN, 231 Lilac Street, Syracuse,
New York 13208, Plaintiff Pro Se.

**Opinion**

### ORDER

Mae A. D'Agostino U.S., District Judge

**\*1** On July 8, 2016, *pro se* Plaintiff Rochelle Coleman
filed three civil rights complaints as one action against
Defendants Paula Engle, an attorney, Sarah Merrick,
the Onondaga County Social Services Commissioner
and Comptroller, and Robert Antunacci, the Onondaga
County Comptroller. *See* Dkt. Nos. 1, 1-1, and 1-2.
Plaintiff asserts claims pursuant to 42 U.S.C. § 1983
("section 1983"), Title VII of the Civil Rights Act of 1964
("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Americans
with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*
*See id.*

On July 29, 2016, Magistrate Judge Peebles issued a
Report, Recommendation and Order granting Plaintiff's
application to proceed *in forma pauperis* ("IFP") while
denying Plaintiff's motion for appointment of counsel. *See*
Dkt. No. 6 at 18. After review, Magistrate Judge Peebles
recommended the Court dismiss all three of Plaintiff's
complaints with prejudice due to her failure to state
a claim. *See id.* at 19. Currently before the Court is
Magistrate Judge Peebles' Report, Recommendation and
Order.

When a plaintiff seeks to proceed IFP, "the court shall
dismiss the case at any time if the court determines that ...
the action or appeal (i) is frivolous or malicious; (ii) fails
to state a claim on which relief may be granted; or (iii)
seeks monetary relief against a defendant who is immune
from such relief." 28 U.S.C. § 1915(e)(2)(B). In making
this determination, " 'the court has the duty to show
liberality towards pro se litigants,' however, 'there is a
responsibility on the court to determine that a claim has
some arguable basis in law before permitting a plaintiff to
proceed with an action *in forma pauperis.*' " *Griffin v. Doe*,
71 F. Supp. 3d 306, 311 (N.D.N.Y. 2014) (citing *Moreman
v. Douglas*, 848 F. Supp. 332, 333-334 (N.D.N.Y. 1994)
(internal citations omitted)); *see also Thomas v. Scully*, 943
F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that
a district court has the power to dismiss a complaint *sua
sponte* if the complaint is frivolous).

When reviewing a complaint under 28 U.S.C. § 1915(e),
courts are guided by the applicable requirements of the
Federal Rules of Civil Procedure. Rule 8(a) of the Federal
Rules of Civil Procedure provides that a pleading must
contain "a short and plain statement of the claim showing
that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)
(2). While Rule 8(a) "does not require 'detailed factual
allegations,' ... it demands more than an unadorned"
recitation of the alleged misconduct. *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 555 (2007)) (other citations omitted).

To survive dismissal for failure to state a claim, a party
need only present a claim that is "plausible on its face."
*Twombly*, 550 U.S. at 570. "A claim has facial plausibility
when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant
is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678
(citation omitted). In determining whether a complaint
states a claim upon which relief may be granted, "the court
must accept the material facts alleged in the complaint as
true and construe all reasonable inferences in the plaintiff's
favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.
1994) (citation omitted). However, "the tenet that a court
must accept as true all of the allegations contained in a
complaint is inapplicable to legal conclusions. Threadbare
recitals of the elements of a cause of action, supported
by mere conclusory statements, do not suffice." *Iqbal*, 556
U.S. at 678 (citation omitted).

**\*2** Neither party objected to Magistrate Judge Peebles' Report, Recommendation, and Order. As a general matter, when a party files specific objections to a magistrate judge's report and recommendation, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files " '[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge,' " the court reviews those recommendations " 'for clear error.' " *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) (quotation omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point") (citation omitted). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

In her section 1983 complaint, Plaintiff alleges that her benefits were stolen, accuses "county workers" of welfare fraud and asserts that after she made her accusations, Defendants contributed to the wrongful removal of her children from her custody. *See* Dkt. No. 1 at 3; *see also* Dkt. No. 6 at 3. Specifically, Plaintiff claims that Defendants ignored her complaints, conspired to cover up the fraud, and conspired to remove Plaintiff's children from her custody. *See* Dkt. No. 1 at 3. Liberally construed, Plaintiff's section 1983 complaint includes claims for retaliation, violation of due process rights, unlawful seizure, and conspiracy to deprive Plaintiff of constitutional rights. *See* Dkt. No. 6 at 9.

A section 1983 retaliation claim exists when a state actor takes adverse action against a plaintiff motivated by the plaintiff's exercise of a constitutional right, such as free speech under the First Amendment. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws") (citations omitted). To succeed on a section 1983 claim for retaliatory conduct, a plaintiff must demonstrate that (1) she engaged in protected conduct; (2) the defendant took adverse action against her; and (3) there was a causal connection between the protected activity and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the government official's decision to take action against the plaintiff. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 9:99-cv-2065, 2003 WL 22299359, \*4 (N.D.N.Y. Oct. 3, 2003).

**\*3** Here, in connection with Plaintiff's section 1983 claim for retaliatory conduct, the only identified adverse action is the removal of her children. *See* Dkt. No. 1 at 3. As Magistrate Judge Peebles correctly found, Plaintiff has failed to allege any facts to plausibly suggest that Defendants were involved in the decision to remove Plaintiff's children from her custody, or that this alleged adverse action was motivated by Plaintiff's complaints. *See* Dkt. No. 6 at 10.

As to the second claim in her section 1983 complaint, Magistrate Judge Peebles correctly determined that Plaintiff failed to state a claim for violation of due process under the Fourteenth Amendment or unlawful seizure under the Fourth Amendment. *See id.* at 10-11. Again, Plaintiff alleges nothing that "plausibly suggest[s] that any of the defendants were personally involved in any respect with the removal of [P]laintiff's children from her custody." *See id.* at 11; *see also Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation") (citations omitted).

Lastly, Magistrate Judge Peebles correctly determined that Plaintiff's section 1983 conspiracy claim failed to state a claim against Defendants. *See* Dkt. No. 6 at 11-12. Plaintiff failed to provide any details "relative to defendants' alleged involvement in the conspiratorial conduct" and she "failed to allege any of the defendants entered into an agreement with anyone to deprive [P]laintiff of her constitutional rights." *See id.* at 12. To sustain a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff must demonstrate that a defendant 'acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts.' " *Krebs v. New York State Division of Parole*, No. 9:08-cv-0255, 2009 WL 2567779, *13 (N.D.N.Y. Aug. 17, 2009) (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)). Finally, Magistrate Judge Peebles also correctly determined that all claims raised in Plaintiff's section 1983 complaint are also subject to dismissal pursuant to the *Rooker-Feldman* doctrine. *See Torres v. Family Court/Admin. for Children's Servs.*, No. 01 Civ. 4351, 2001 WL 1111510, *2 (S.D.N.Y. Sep. 20, 2001) (citations omitted); *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003). Therefore, the Court dismisses Plaintiff's section 1983 complaint with prejudice.

Plaintiff's Title VII complaint asserts a claim for employment discrimination on the basis of her race or color, national origin, education, income, and disability. *See* Dkt. No. 1-1 at 2. Plaintiff alleges that Plaintiff failed to investigate her report of fraud. *See id.* at 3. Plaintiff also accuses the Commissioner of providing a complaint she filed against a family court judge to that judge in retaliation for unspecified conduct. *See id.* at 4. Magistrate Judge Peebles recommends the Court dismiss Plaintiff's Title VII complaint with prejudice. *See* Dkt. No. 6 at 15. Plaintiff, using a form complaint designed for pleading employment discrimination, "allege[d] that the [D]efendants discriminated against her by failing to investigate her reports of fraud." As Magistrate Judge Peebles correctly determined, these allegations do not state an employment discrimination claim under Title VII. *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005) (reciting the elements of a Title VII claim). Additionally, " 'individuals are not subject to liability under Title VII.' " *Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)) (other quotations

omitted). Moreover, "Title VII plaintiffs must receive a 'right-to-sue' letter from the EEOC before filing suit in court" which Plaintiff failed to attach to her complaint. *See Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d 164, 168 (2d Cir. 1998) (citing 42 U.S.C. § 2000e-5(f)(1)) (other citations omitted). Therefore, the Court dismisses Plaintiff's Title VII complaint with prejudice.

**\*4** Plaintiff's ADA complaint lists the following disabilities: PTSD, insomnia, depression, anxiety, arthritis, brain surgery on November 10, 2015, paralyzed right hand, lung, heart, and brain cancer, migraines and heart palpitations. *See* Dkt. No. 1-2 at 3. In her complaint, she alleges that Defendant Engle "tried to cover up crimes committed against [her] family" and "tries to work both sides" which "is a conflict." *Id.* at 4. Plaintiff alleges Defendant Merrick, "ignored evidence submitted, retaliated against and never wrote [Coleman] to address [her] issues." *Id.* Lastly, Plaintiff alleges Defendant Antonacci "ignored [Coleman's] complaints after he said he would investigate [her] reports" and "yelled at [her] for emailing his boss." *Id.* (emphasis omitted).

Magistrate Judge Peebles recommends dismissal of Plaintiff's ADA complaint with prejudice. *See* Dkt. No. 6 at 16. The ADA provides for protection against retaliation based upon disability. *See* 42 U.S.C. § 12101 *et seq.* The anti-retaliation provision contained in Title V provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). As Magistrate Judge Peebles correctly determined, Plaintiff failed to allege any facts as to how she was retaliated against by reason of her disability. Instead, Plaintiff simply alleges that Defendants ignored her complaints or, in the case of Defendant Engle, "cover[ed] up crimes committed against [P]laintiff's family." Such allegations are insufficient to support an ADA claim. Additionally, "[t]he ADA does not provide for individual liability." *Hodges v. Wright*, No. 9:10-cv-0531, 2011 WL 5554866, *8 (N.D.N.Y. Sept. 29, 2011) (citing *Herzog v. McLane Northeast, Inc.*, 999 F. Supp. 274, 276 (N.D.N.Y. 1998)). Therefore, the Court dismisses Plaintiff's ADA complaint with prejudice.

Magistrate Judge Peebles also correctly determined that Plaintiff's complaints should be dismissed with prejudice. Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once " 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where the court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). As the Second Circuit explained, "[w]here it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted). Although courts generally permit a *pro se* litigant leave to amend at least once, the Court finds that amendment is inappropriate in this case. As Magistrate Judge Peebles explained, Plaintiff's Title VII and ADA complaints cannot proceed because the statutes do not permit suits against defendants in their individual capacities. Moreover, amendment would be futile as to Plaintiff's section 1983 claims because they depend on the

propriety of the removal of Plaintiff's children from her custody and, therefore, are barred by the *Rooker-Feldman* doctrine. *See id.* As a result, Plaintiff's claims in all three complaints are dismissed with prejudice.

**\*5** After carefully reviewing Plaintiff's submissions, Magistrate Judge Peebles' July 29, 2016 Report, Recommendation and Order, the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Peebles' Report, Recommendation and Order (Dkt. No. 6) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaints are **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2017 WL 752178

---

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 5300009
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Allen HERBERT, Plaintiff,

v.

CATTARAUGUS COUNTY, et al., Defendants.

17-CV-248S
|
Signed 11/13/2017

**Attorneys and Law Firms**

Christopher A. Spence, Olean, NY, for Plaintiff.

Sean William Costello, Rupp, Baase, Pfalzgraf, Cunningham & Coppola LLC, Christopher L. Boyd, NYS Attorney General's Office, Buffalo, NY, for Defendants.

Donna Holiday, Franklinville, NY, pro se.

**Opinion**

### DECISION AND ORDER

WILLIAM M. SKRETNY, United States District Judge

### I. INTRODUCTION

 **\*1**  Plaintiff Allen Herbert brings this suit seeking damages and injunctive relief under 42 U.S.C. § 1983, for alleged deprivations of his constitutional rights. Presently before this Court are Defendants' motions to dismiss, in which they argue that this Court lacks subject matter jurisdiction under Rule 12(b)(1), and that Plaintiff has failed to state a claim under Rule 12(b)(6). For the following reasons, Defendants' motions are granted and the Complaint is dismissed.

### II. BACKGROUND [1]

Plaintiff, who is "of African and European descent" (Compl. ¶ 20), brings this civil suit against Defendants Cattaraugus County, Michael Nenno (retired Cattaraugus County Family Court Judge), Schavon Morgan (Support Magistrate for Cattaraugus County),

Steven Miller (Assistant County Attorney for Cattaraugus County), and Donna Holiday (an employee of Cattaraugus County, who is also Plaintiff's mother-in-law and the foster parent to Plaintiff's minor son). (Id. ¶¶ 5-10, 25.) Plaintiff alleges that Defendants incarcerated him and denied him access to his son due to racial animus.

Specifically, Plaintiff alleges that, although he was authorized visitation with his son by an order from the Cattaraugus County Family Court, Defendants have blocked visitation through his son's foster care placement. (Id. ¶¶ 25-26.) Plaintiff further alleges that the denial of visitation is a result of Defendants' racial animus, and that his incarceration was ordered in retaliation for his attempts to visit his son. (Id. ¶ 27.) Plaintiff does not make specific allegations of racism against any Defendant except Holiday, [2] but alleges generally that there is a history of discrimination against Americans of African descent, including separating African Americans from their children. (Id. ¶¶ 18-19.)

Although the timeline and procedural history are not clear from the Complaint, it appears that Defendant Morgan initially recommended Plaintiff be incarcerated for overdue child support payments at a hearing on June 1, 2015. (Id. ¶ 29.) Judge Ploetz of the Cattaraugus County Family Court (who is not named as a Defendant here) sentenced Plaintiff to six months incarceration on August 7, 2015, but stayed enforcement of the sentence for one year. (Id. ¶ 29.) Plaintiff alleges that, on December 10, 2015, [3] Defendants Holiday, Miller, and Cattaraugus County moved to re-open his case, seeking to impose incarceration and $50,293.84 [4] in arrears. (Id. ¶ 33.) Around the same time, "the parties"—presumably Plaintiff and Holiday—also consented to a new visitation order. (Id. ¶ 32.) Following a hearing on March 22, 2016, Judge Nenno sentenced Plaintiff to six-months incarceration, but found that the amount of unpaid child support was $320, not the larger amount allegedly demanded by Defendants. (Id. ¶ 35.) Plaintiff alleges that, although Judge Nenno signed the visitation order agreed by the parties in December 2015, that order was frustrated due to his incarceration. (Id. ¶¶ 35.) Plaintiff further alleges that Support Magistrate Morgan denied the petition to assess $50,293.84 in arrears and dismissed the petition under which he was incarcerated at the end of March 2016. (Id. ¶¶ 36-37.)

**\*2** Plaintiff completed his sentence on July 22, 2016, and contacted Holiday to visit his son per the controlling Family Court visitation order. (Id. ¶ 40.) Plaintiff alleges that Defendants "determined to recommence proceedings to incarcerate" him after he attempted to contact his son and, on September 2, 2016, petitioned for Plaintiff's reincarceration for failure to pay child support during the period of his confinement. (Id. ¶¶ 41-42.) At a hearing on February 22, 2017, Defendant Miller, on behalf of defendants Cattaraugus County and Holiday, allegedly stated that Plaintiff should be incarcerated for failure to pay child support. (Id. ¶ 43.)

Finally, Plaintiff alleges that "Defendants were and are paid wages and employment benefits ... from United States Grants to New York State to fund public assistance to those unable to support their minor children." (Id. ¶ 44.) Plaintiff contends that Defendants have refused to assist him and denied him his constitutional rights, despite their obligation to assist non-custodial parents in visiting their children under the terms of the grants. (Id. ¶¶ 45-46.)

The Complaint names five causes of action: (1) that Plaintiff's First and Fourteenth Amendment rights to associate with his son were violated through Defendants' actions including prosecution and incarceration; (2) that his Fifth and Fourteenth Amendment rights to liberty were violated when he was incarcerated; (3) that his Fifth, Fourteenth, and Fifteenth Amendment rights to liberty were violated due to his race; (4) that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was denied liberty and access to his son; and (5), that Defendants' current prosecutions have denied him his Fifth and Fourteenth Amendment rights to be free from double jeopardy. The Complaint seeks compensatory damages, attorneys' fees, and equitable and declaratory relief against Defendants Cattaraugus County, Miller, and Holiday.

### III. DISCUSSION

Plaintiff's claims are brought under 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. County of Fulton, 126 F.3d

400, 405 (2d. Cir. 1997) (citing Eagleston v. Guido, 41 F.3d 865, 875-76 (2d Cir. 1994)). Defendants seek dismissal of the Complaint under Rules 12(b)(1) and 12(b)(6), as well as sanctions and legal fees.

#### A. Subject Matter Jurisdiction

To defeat a motion to dismiss brought under Rule 12(b)(1), "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). Where subject matter jurisdiction is lacking, the suit must be dismissed. Id. "Although courts are generally limited to examining the sufficiency of the pleadings on a motion to dismiss, on a challenge to a district court's subject matter jurisdiction, the court may also resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." Licci v. Lebanese Canadian Bank, SAL, 834 F.3d 201, 211 (2d Cir. 2016).

##### 1. Rooker-Feldman

Defendants contend that the Complaint must be dismissed under the Rooker-Feldman doctrine,[5] which precludes district court review of state court judgments due to a lack of subject matter jurisdiction. Mitchell v. Fishbein, 377 F.3d 157, 165 (2d Cir. 2004); Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 83-84 (2d Cir. 2005) ("Where a federal suit follows a state suit, the former may be prohibited by the so-called Rooker-Feldman doctrine in certain circumstances."). Named for two Supreme Court cases—Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L.Ed. 2d 206 (1983)—the doctrine "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." See Hoblock, 422 F.3d at 84. Because a federal statute, 28 U.S.C. § 1257, "vests authority to review a state court's judgment solely in th[e] [Supreme] Court," Rooker and Feldman held that district courts "lacked subject-matter jurisdiction" to hear cases seeking to "overturn an injurious state-court judgment." See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291-92, 125 S. Ct. 1517, 1526, 161 L.Ed. 2d 454 (2005).

**\*3** The Rooker-Feldman doctrine has four requirements: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court

judgment; and (3) the plaintiff invites the federal court to review and reject that judgment; and (4) the state court judgment was rendered prior to the commencement of proceedings in the district court." Brodsky v. Carter, 673 Fed.Appx. 42, 43 (2d Cir. 2016). "Under Rooker-Feldman, a district court may not review a claim that is 'inextricably intertwined' with a state court's judgment." Simpson v. Putnam Cty. Nat'l Bank of Carmel, 20 F. Supp. 2d 630, 633 (S.D.N.Y. 1998) (quoting Feldman, 460 U.S. at 483 n.16); see also Dye v. Virts, No. 03-CV-6273L, 2004 WL 2202638, at *3 (W.D.N.Y. Sept. 28, 2004) ("[W]here a claim is so 'inextricably intertwined' with a state court judgment that 'federal relief can only be predicated upon a conviction that the state court was wrong' the Rooker-Feldman doctrine will defeat the court's jurisdiction over the claim.") (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, 107 S. Ct. 1519, 95 L.Ed. 2d 1 (1987)).

"[I]n determining whether the doctrine applies, the key inquiry is whether the complaint alleges an injury caused by a state court judgment." Brodsky, 673 Fed.Appx. at 43. Here, the alleged injuries in Counts One, Two, and Four flow from orders entered in the Cattaraugus County Family Court, specifically the orders of incarceration. Although Plaintiff does not challenge the orders themselves, to address his claims and find that constitutional violations had been committed, this Court would be required to review and reject the Family Court's decision to incarcerate the Plaintiff. With respect to timing, the two orders of incarceration, which are dated August 7, 2015 and March 22, 2016, significantly precede the filing of this action on March 21, 2017. (See Compl. ¶¶ 26, 31, 33-38.)

Plaintiff argues that the Rooker-Feldman doctrine is inapplicable because "his prosecution itself is a violation of federal law." (Pl. Opp. at 7.) Plaintiff cites no precedent in support of this position, and the doctrine extends to bar § 1983 claims that are framed to, or in effect do, challenge the validity of a state court judgment. Brodsky, 673 Fed.Appx. at 43; Segreto v. Islip, No. 12-CV-1961(JS)(WDW), 2013 WL 572435 (E.D.N.Y. Feb. 12, 2013) (holding that recasting a complaint in the form of a civil rights action pursuant to § 1983 does not avoid the Rooker-Feldman bar). A federal plaintiff cannot "avoid Rooker-Feldman by clever pleading—by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order

itself." See Hoblock, 422 F.3d 77 at 87-88. Further, "even if the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding." Gonzalez v. Ocwen Home Loan Servicing, 74 F. Supp. 3d 504, 517 (D. Conn. 2015), aff'd 632 Fed.Appx. 32 (2d Cir. 2016) (internal quotation marks omitted).

This Court finds that the requirements of the Rooker-Feldman doctrine are met as to Counts One, Two, and Four, and that Plaintiff's "clever pleading" cannot overcome that. Accordingly, because there is no subject matter jurisdiction over those claims, they must be dismissed. [6]

2. Younger Abstention

**\*4** The alleged constitutional violations in Count Five arise from ongoing Family Court proceedings and Defendants' alleged continued attempt to incarcerate Plaintiff. This Court finds that, although Count Five does not meet the Rooker-Feldman requirements because the Family Court proceedings are not yet final, this claim is nevertheless barred by the abstention doctrine set forth in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed. 2d 669 (1971). Younger abstention "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." Torres v. Gaines, 130 F. Supp. 3d 630, 635 (D. Conn. 2015). This doctrine "applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" Id. at 636 (quoting Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588, 187 L.Ed. 2d 505 (2013)).

Several courts in this Circuit have held that Younger abstention applies in similar circumstances as this case. See id.; see also Graham v. N.Y. Ctr. for Interpersonal Dev., No. 15-CV-00459, 2015 WL 1120120, *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that the plaintiff's claims for injunctive relief were barred by Younger where the plaintiff sought to challenge ongoing family court proceedings regarding the loss of custody of her son); Moore v. Sims, 442 U.S. 415, 435, 99 S. Ct. 2371, 60 L.Ed. 2d 994 (1979) (family relations are a traditional area of state concern).

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Because the issues in Count Five are still pending in the Family Court, this Court abstains from exercising jurisdiction pursuant to Younger. Accordingly, Count Five is also dismissed.

## B. Failure to State a Claim

Defendants have also moved for dismissal under Rule 12(b)(6). On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Count Three of Plaintiff's Complaint alleges that Plaintiff was unconstitutionally deprived of his right to liberty based upon Defendants' racial hatred. This alleged deprivation of liberty may be construed as independent from the challenges to Family Court's orders incarcerating Plaintiff, therefore, this claim may survive Rooker-Feldman. See In re Dayton, 786 F. Supp. 2d 809, 817 (S.D.N.Y. 2011) (finding that claims arising from actions that were not done pursuant to the final court order survived Rooker-Feldman).

### 1. Defendant Holiday

Holiday, proceeding *pro se*, has moved for dismissal of all the claims against her and for "sanctions and costs and fees associated" with her defense of the action. "It is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation omitted). Here, Holiday contends that all of her interactions with Plaintiff have been on a "personal level" and that there are no allegations related to her work as an employee of the state.

Plaintiff alleges that he was incarcerated on the demand of defendant Holiday and that she blocked access to his son (see Compl. ¶¶ 25, 27), yet fails set forth any allegation

that these actions were carried out under the color of state law or in Holiday's official capacity as an employee of the Department of Social Services Public Assistance Unit. Conclusory allegations that a defendant acted in concert with state officials do not suffice to state a § 1983 claim against a private actor. Finnan v. Ryan, 357 Fed.Appx. 331, 333 (2d Cir. 2009), *cert. denied*, 562 U.S. 952 (2011).

**\*5** Accordingly, because Plaintiff has not alleged that Holiday was acting under color of state law, see Whalen, 126 F.3d at 405, the claims against her are dismissed. [7]

### 2. Defendants Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller

Defendants Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller move for dismissal on the grounds of judicial and prosecutorial immunity. "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). Therefore, a judge is immune from all forms of suit unless he or she has acted either beyond the judge's judicial capacity, or "in the complete absence of all jurisdiction." Bobrowsky v. Yonkers Courthouse, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (quoting Mireles v. Waco, 502 U.S. 9, 12, 112 S. Ct. 286, 288, 116 L.Ed. 2d 9 (1991)). In determining whether or not a judge acted in the "clear absence of all jurisdiction," the judge's jurisdiction is to be construed broadly, "and the asserted immunity will only be overcome when the 'judge clearly lacks jurisdiction over the subject matter.' " Ceparano v. Southampton Justice Court, 404 Fed. Appx. 537, 539 (2d Cir. 2011) (quoting Maestri v. Jutkofsky, 860 F.2d 50, 52 (2d Cir. 1998)).

"Whether a judge acted in a 'judicial capacity' depends on the 'nature of the act [complained of] itself, *i.e.*, whether it is a function normally performed by a judge, and [on] the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.' " Id. (quoting Stump v. Sparkman, 435 U.S. 349, 362, 98 S. Ct. 1099, 1107, 55 L.Ed. 2d 331 (1978)). "Further, if the judge is performing in his judicial capacity, the judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Id. (quotations omitted). The doctrine of judicial immunity is applicable to actions

brought pursuant to 42 U.S.C. § 1983. Pierson v. Ray, 386 U.S. 547, 554, 87 S. Ct. 1213, 1218, 18 L.Ed. 2d 288 (1967).

Prosecutors are also immune from § 1983 actions arising from conduct that was an exercise prosecutorial functions. See, e.g., Imbler v. Patchman, 424 U.S. 409, 423, 96 S. Ct. 984, 991, 47 L.Ed. 2d 128 (1976). For such immunity to apply, the prosecutor must have been functioning as an advocate when he or she engaged in the challenged conduct, meaning that immunity attaches only as to actions within the scope of the judicial phase, and not to actions taken as an administrator or investigative officer that falls outside that scope. Warney v. Monroe County, 587 F.3d 113, 120-122 (2d. Cir. 2009) (citing Imbler, 424 U.S. at 430). Prosecutors are also immune from liability for their decision to prosecute. See Anilao v. Spota, 774 F. Supp. 2d 457, 480 (E.D.N.Y. 2011) (citing Hartman v. Moore, 547 U.S. 250, 261-62, 126 S. Ct. 1695, 164 L.Ed. 2d 441 (2006). Further, "absolute immunity still applies where a prosecutor brought a case in violation of a defendant's constitutional rights but was otherwise acting within his role as an advocate." Id. at 488.

*6 Here, Plaintiff's claims against Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller arise solely from their conduct within their judicial and prosecutorial roles. Plaintiff alleges injuries arising from the Findings and Fact and Orders by Judge Nenno and Support Magistrate Morgan, as well as from the prosecutorial actions taken by Assistant County Attorney Miller. Plaintiff's argument that Support Magistrate Morgan is not eligible for judicial immunity is without merit. See Parent v. New York, 786 F. Supp. 2d 516, 533-34 (S.D.N.Y. 2011) (dismissing claims brought against both a judge and Support Magistrate as both parties had judicial immunity). His contentions of wrongdoing are also insufficient to defeat the motions to dismiss, as judicial immunity protects judges and prosecutors even from claims of malfeasance as long as they are acting within their jurisdiction. See Teichmann v. New York, 769 F.3d 821, 826 (2d Cir. 2014) (holding that the Plaintiff failed to state a claim to relief because the judge and district attorney whom Plaintiff asserted violated his constitutional rights were entitled to absolute immunity).

Accordingly, the claims against defendants Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller are dismissed.

### 3. Defendant Cattaraugus County

Finally, Defendant Cattaraugus County moves for dismissal pursuant to Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed. 2d 611 (1978). Under the standards set forth in Monell, a municipality can be held liable under § 1983 if a plaintiff can plead and prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983); see also Connick v. Thompson, 563 U.S. 51, 60-61 (2011). Monell does not provide an independent separate cause of action against a municipality; rather, "it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006). A municipality can be held liable for actions taken pursuant to its policies, pursuant to custom, or for "practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61. "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d. Cir. 2012) (citing Monell, 436 U.S. at 691).

To successfully state a claim for municipal liability under Monell, a plaintiff must allege the existence of a policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right. Barnes v. Cty. of Monroe, 85 F. Supp. 3d 696, 718 (W.D.N.Y. 2015). Here, the only policy or custom identified by Plaintiff is a passing reference to the state of New York and Cattaraugus County's receipt of funding under 42 U.S.C. § 607 (Grants to States with Child Welfare Services ("GSGC")), and an allegation that Defendants have failed to assist him as a non-custodial parent, despite their obligations to do so under the GSGC. [8] (Compl. ¶¶ 44-46.) Plaintiff therefore fails to make factual allegations that his constitutional rights were violated pursuant to an official course of action in the form of a policy or custom, or even that Cattaraugus County maintains a policy or custom based upon receipt of GSCS funds. See Finnan, 357 Fed.Appx. at 333 (finding that plaintiff failed to allege a governmental custom or policy sufficient to make the defendant County liable, therefore, the claims against the County were properly

dismissed for failing to state a claim). Further, Plaintiff fails to put forth facts sufficient to create a plausible inference that Cattaraugus County's receipt of GSCS funding defendant did, or would, create a policy or custom that could injure Plaintiff and deny him his constitutional rights. See Montalvo v. Lamy, 139 F. Supp. 3d 597, 609 (W.D.N.Y. 2015) (finding the policy identified by Plaintiff did not violate a constitutional right and, therefore, held that Plaintiff's Monell claim must be dismissed for failure to allege an underlying constitutional violation).

*7 Accordingly, because the allegations in the Complaint are not sufficient to state a claim under Monell, the claim against Cattaraugus County must be dismissed.

**C. Defendants' Requests for Fees**
Defendants Holiday, Judge Nenno, and Support Magistrate Morgan have requested attorneys' fees under 42 U.S.C. § 1988(b); Holiday also requests sanctions. Section 1988 states that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." When the prevailing party is the defendant, as here, attorneys' fees may be recovered if the underlying action was "frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so." Davidson v. Keenan, 740 F.2d 129, 132 (2d Cir. 1984) (quotation omitted). The Second Circuit has found denial of fees appropriate where a "plaintiff[ ] had some foundation, albeit a weak one, to bring [the] claim." Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 229 (2d Cir. 2004). Here, although this Court has found no jurisdiction or merit in these causes of action, it finds that they are not entirely frivolous or unreasonable.

Moreover, the request is premature and fails to comply with the relevant rules. See Bartels v. Inc. Vill. of Lloyd Harbor, No. 10 CV 5076 PKC, 2015 WL 4459403, at *1 (E.D.N.Y. July 21, 2015) (denying award of fees because, inter alia, prevailing defendant had failed to comply with Fed. R. Civ. P. 54(d)(2)(B)). Accordingly, this Court

exercises its discretion to deny Defendants' requests for fees and sanctions.

## IV. CONCLUSION

For the reasons stated above, Defendants' motions are granted and the Complaint is dismissed. Counts One, Two, and Four are dismissed for lack of subject-matter jurisdiction under Rooker-Feldman. Count Five is dismissed under the Younger abstention doctrine. Count Three is dismissed for failure to state a claim. To the extent that Defendants seek other remedies, including sanctions and attorneys' fees, their motions are denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants Schavon Morgan and Michael Nenno's motion to dismiss (Docket No. 7) is GRANTED;

FURTHER, that Defendants Cattaraugus County and Steven Miller's motion to dismiss (Docket No. 8) is GRANTED;

FURTHER, Donna Holiday's motion to dismiss (Docket No. 10) is GRANTED;

FURTHER, that all requests for fees or sanctions are DENIED;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

**All Citations**

Slip Copy, 2017 WL 5300009

---

Footnotes

1    For the sake of brevity and clarity, this Court recites only those facts pertinent to the pending motions.
2    Plaintiff alleges that Holiday referred to her own daughter—Plaintiff's estranged wife, who is also "of African and European descent"—by a racially disparaging term. (Id. ¶¶ 22-23.)
3    The Complaint states that this took place in December 2016, but context suggests that this took place in 2015, prior to Plaintiff's initial incarceration in March 2016. (Compare Compl. ¶ 33 and ¶ 35.)
4    Plaintiffs alleges that he owed only $320. (Id. ¶ 27.)

5    "Because the Rooker-Feldman doctrine implicates the subject matter jurisdiction of the District Court, the doctrine's application" should be analyzed first. Fraccola v. Grow, 670 Fed.Appx. 34, 35 n. 1 (2d Cir. 2016) (internal citation omitted).

6    This Court notes that Rooker-Feldman "does not bar federal adjudication of a general constitutional challenge to a state law or rule." Dubin v. Cty. of Nassau, No. 16CV4209JFBAKT, 2017 WL 4286613, at *6 (E.D.N.Y. Sept. 27, 2017) (citing Feldman, 460 U.S. at 482-85) (distinguishing "between general challenges to state bar admission rules and claims that a state court has unlawfully denied a particular applicant admission" and holding that a federal district court has jurisdiction over the former claim); Feng Li v. Rabner, 643 Fed.Appx. 57, 59 (2d Cir. 2016) ("As to the court's Rooker-Feldman ruling, this doctrine does not apply to Li's challenge to the constitutionality of the state court rule."). However, in Counts One, Two, and Four, the challenge is specifically aimed at how the law was applied to the Plaintiff, and not at the law itself.

7    Further, Plaintiff made no argument opposing Holiday's motion. This Court therefore deems the claims against Holiday to be abandoned. See Brandon v. City of New York, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases); Bonilla v. Smithfield Assoc. LLC, 09 Civ. 1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (dismissing plaintiff's claims as abandoned by failing to address them in his opposition motion to defendant's motion to dismiss all claims).

8    Plaintiff presents additional theories and allegations in his Opposition to the Motions to dismiss. However, these new allegations cannot be considered because "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).

---

**End of Document**                                      © 2018 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by McCloud v. Mairs, E.D.N.Y., October 24, 2014

2007 WL 2176059
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Virginia LOMNICKI, et al., Plaintiffs,

v.

CARDINAL McCLOSKEY SERVICES
and the City of New York, Defendants.

No. 04-CV-4548 (KMK).
|
July 26, 2007.

**Attorneys and Law Firms**

Neil R. Kafko, Esq., Kafko, Schnitzer & Sheeger, Bronx, NY, for Plaintiff.

Brian Pelle Moran, Esq., Deborah Salzberg, Esq., Paul, Hastings, Janofsky & Walker LLP, New York, NY, Guardian Ad Litem for Plaintiff Children.

Vanessa Mary Corchia, Esq., Judah Zvi Cohen, Esq., Armienti, DeBellis & Whiten, New York, NY, for Defendant Cardinal McCloskey Services.

Suzanne M. Halbardier, Esq., Barry McTiernan & Moore, New York, NY, for Defendant The City of New York.

**Opinion**

*OPINION AND ORDER*

KENNETH M. KARAS, District Judge.

**\*1** Plaintiff Virginia Lomnicki ("Plaintiff") brings this action on behalf of herself and her minor children, Eugene, Robert, and Joseph Lomnicki ("Plaintiff's children"). After New York State Family Court, New York County, determined that Plaintiff had neglected her children, and terminated Plaintiff's custodial rights,[1] Plaintiff's children were taken from her and placed in the custody of Defendants Cardinal McCloskey Services ("CMS") and the City of New York (collectively, "Defendants"). Plaintiff sues pursuant to 42 U.S.C. § 1983 for alleged violations of constitutional rights, including due process

violations and race discrimination, in connection with the removal of her children from her custody.

Defendants move to dismiss the Second Amended Complaint pursuant to Rules 12(b)(1), 12(b)(6), 12(h)(3), and 9 of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion to dismiss is GRANTED.

*I. Background*

*A. Facts*

The following facts are alleged in the Second Amended Complaint or taken from public records. Facts alleged in the Second Amended Complaint (economical though they may be) are presumed true for the purposes of the instant motions.[2]

Plaintiff is the mother of three children: Eugene Lomnicki, age 14; Robert Lomnicki, age 11; and Joseph Lomnicki, age 10. (Notice of Mot. of Def. Cardinal McCloskey Servs. ("CMS Mot.") Exs. K-M (Family Court orders).) Plaintiff also has a daughter, Kimberly, who is not a subject of this case. (*Id.* Ex. E.) On July 31, 1998, after a caseworker filed a petition requesting a state court order determining Eugene, Robert, and Joseph to be neglected children, the Family Court issued an Order Directing Temporary Removal for each child, noting that "respondent mother [Plaintiff] uses excessive corporal punishment." (Notice of Mot. of Def. New York City ("NYC Mot.") Exs. C-E ("the July 1998 Family Court Order").) As a result of this order, the children were placed in the custody of the New York City Administration for Children's Services ("ACS"). In August 1999, following a hearing and an examination of the facts and circumstances of Plaintiff's family, Judge Susan Larabee of the New York State Family Court determined "that continuation in the children's home would be contrary to the best interests of the children," and accordingly Judge Larabee issued an Order of Disposition Neglect removing the children from Plaintiff's custody and placing the children in the custody of Defendants for a one-year period. (CMS Mot. Ex. E ("the August 1999 Family Court Order").) Defendants carried out the removal of Eugene, Robert, and Joseph from the custody of their mother, Plaintiff, and CMS took custody. (Second Am. Compl. ¶¶ 2-3, 13.) For each of the next three years, the Family Court issued Orders for Extension of Placement, extending the

temporary placement of Plaintiff's Children with CMS. (CMS Mot. Exs. F-H.) Finally, on April 13, 2004, the Family Court ordered that "all [of Plaintiff's] parental rights be terminated and that all custody and guardianship be transferred to [the Department of Social Services] and Agency [CMS for] immediate adoption by current Foster Parents." (*Id.* Ex. I.)

**\*2** Plaintiff alleges that the removal of the children from her custody was "based on unproven allegations of abuse and/or neglect," (Second Am. Compl. ¶ 35) and that Defendants removed her children from her because she is white, placing the children with non-white foster parents (Second Am. Compl. ¶ 13).

According to the Second Amended Complaint, Plaintiff has complied with all of Defendants' requests, including that she obtain counseling and attend parenting courses. (Second Am. Compl. ¶ 6.) Plaintiff asserts that she has no history of drug or alcohol abuse or a criminal record. (*Id.* ¶¶ 7, 9.) She is gainfully employed and has created a plan to provide for her children. (*Id.* ¶¶ 8, 10.)

### B. Procedural History

Plaintiff filed suit against Defendants on June 14, 2004. Plaintiff amended her complaint twice, filing the Second Amended Complaint on January 13, 2005. The Second Amended Complaint asserts four causes of action. First, Plaintiff alleges that Defendants improperly removed Plaintiff's children from her because she is white and placed them with non-white foster parents.[3] (*Id.* ¶ 13.) Second, Plaintiff asserts a violation of her due process right to care for her own children. (*Id.* ¶ 21.) Third, Plaintiff, on behalf of her children, alleges that Defendants have not provided proper foster care to the children. (*Id.* ¶ 26.) Fourth, Plaintiff charges that the children "were seized based upon unproven allegations of abuse and/or neglect." (*Id.* ¶ 35.)

At a conference on January 21, 2005, the Court raised concerns about a possible conflict of interest faced by Plaintiff's attorney who was at that time representing both Plaintiff and her children in connection with this litigation. Following the conference, Plaintiff's counsel wrote to the Court and advised that he would withdraw from representing Eugene, Robert, and Joseph Lomnicki. Thereafter, the Court appointed the firm of Paul, Hastings, Janofsy & Walker, LLP as guardian ad litem for

the Lomnicki children.[4] *Lomnicki v. Cardinal McCloskey Servs.,* No. 04-CV-4548 (S.D.N.Y. Dec. 13, 2005) (order appointing guardian).

On April 27, 2006, CMS filed its motion to dismiss pursuant to Rules 12(b)(1), 12(b)(6) and 9 of the Federal Rules of Civil Procedure, and on May 1, 2006, the City of New York filed its motion to dismiss pursuant to Rules 12(b)(1), 12(b)(6) and 12(h)(3).[5]

At oral argument, the Court was advised, for the first time, that Robert and Joseph have been adopted, thus divesting Plaintiff of any standing to pursue this case on their behalf. However, Ms. Lomnicki is in the process of being reunified with Eugene.

## II. Discussion

The instant motions seek dismissal for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and the *Rooker-Feldman* doctrine. Additionally, Defendants argue that dismissal is proper pursuant to Fed.R.Civ.P. 12(b)(6) because Plaintiff's allegations are conclusory and do not state a claim upon which relief can be granted.

### A. Standard of Review

**\*3** When a defendant moves to dismiss under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds such as Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990); *Adamu v. Pfizer, Inc.,* 399 F.Supp.2d 495, 500 (S.D.N.Y.2005).

That said, under both 12(b)(1) and 12(b)(6), "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). When considering a motion to dismiss, courts are generally limited to examining the sufficiency of the pleadings, but where a party challenges the court's subject matter jurisdiction, "the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Flores v. S. Peru Copper Corp.,* 414 F.3d 233, 255 n. 30

(2d Cir.2003) (quotations omitted). The party asserting jurisdiction, in this case Plaintiff, has the burden of showing by a preponderance of the evidence that the Court has jurisdiction. *See APWU v. Potter,* 343 F.3d 619, 623 (2d Cir.2003).

If jurisdiction is established, the Court will then consider Defendant's Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. In order to survive such a motion, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* at 1965. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. A complaint will be dismissed where "it fail[s] *in toto* to render plaintiffs' entitlement to relief plausible." *Id.* at 1973 n. 14.

### B. The Rooker-Feldman Doctrine and the Court's Subject Matter Jurisdiction

Under the *Rooker-Feldman* doctrine, a federal district court may not review the judicial decisions of state courts. The Supreme Court is the only federal court with appellate jurisdiction over state-court judgments, whereas the district court's jurisdiction is "strictly original." [6] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005) (quoting *Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923)). The doctrine is named after two Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. at 413, and *District of Columbia Court of Appeals v. Feldman,* 460 U .S. 462 (1983).

The Supreme Court recently discussed the doctrine in *Exxon Mobil,* 544 U.S. at 280. Justice Ginsburg, writing for a unanimous court, observed that lower courts had sometimes construed the *Rooker-Feldman* doctrine "to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Id.* at 283. Accordingly, the *Exxon Mobile* Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

**\*4** Thereafter, in *Hoblock v. Albany Co. Board of Elections,* 422 F.3d 77 (2d Cir.2005), the Second Circuit applied *Exxon Mobile* and reexamined the Circuit's approach to *Rooker-Feldman.* The Court of Appeals observed that, in the wake of *Exxon Mobile,* it was clear that *Rooker-Feldman* consisted of four requirements: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and 4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock,* 422 F.3d at 85 (quotations omitted). The first and fourth requirements are "procedural" and the second and third requirements are "substantive." *Id.* If a case meets all four requirements, the Court will dismiss it pursuant to *Rooker-Feldman.*

The first requirement-that the federal plaintiff lost in state court-is plainly met under the facts of Plaintiff's case. Plaintiff was a respondent in three separate actions in Family Court regarding her children Eugene, Robert, and Joseph: docket numbers B-1455/03, B-1456/03, and B-1457/03 of the Family Court of the State of New York, New York County. (CMS Mot. Exs. K-M.) Defendants CMS and the City of New York, by the Commissioner of Social Services, were petitioners in those cases. (*Id.*) The Family Court concluded "that respondent mother [Plaintiff] has permanently neglected the subject child [ren] within the meaning of Section 384-b of the Social Services Law [and] that said respondent's rights to the subject child[ren]'s custody and guardianship be terminated and transferred and committed to the Commissioner of Social Services and the petitioning agency for purposes of adoption." (*Id.*) Clearly, then, Plaintiff is "a state-court loser" under the *Rooker-Feldman* doctrine. *See Exxon Mobile,* 544 U.S. at 283-84.

The Second Circuit suggested in *Hoblock* not only that the federal plaintiff must have been a party in the state-court action, but also that each of "the parties in the state and federal action must be the same." *Hoblock,* 422 F.3d at 89. This prerequisite that both the federal plaintiff and the federal defendant were parties in the state-court action is also met here. [7] As mentioned above, Defendants were

Case 1:16-cv-01235-NAM-DJS    Document 54    Filed 03/15/18    Page 74 of 94
Lomnicki v. Cardinal McCloskey Services, Not Reported in F.Supp.2d (2007)
2007 WL 2176059

petitioners in the state-court proceeding, while Plaintiff was a respondent. [8]

The second requirement of *Rooker-Feldman* is that the plaintiff complains of injuries caused by a state-court judgment. This is "the core requirement" of *Rooker-Feldman. Id.* at 87. A plaintiff "complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at 88. In this case, the First, Second, and Fourth causes of action asserted by Plaintiff are claims of injuries caused by the Family Court judgment. Each of these causes of action complain of the removal of Plaintiff's children from Plaintiff's custody. As noted above, it was the Family Court that ordered Plaintiff's children to be removed from her custody and placed in the custody of Defendants. Under *Hoblock,* this is not changed simply because it was Defendants, not the Family Court, who actually carried out the removal. *Id.* ("In the child-custody example ... if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child."). The removal of Plaintiff's children from her custody was an action "produced by a state-court judgment." *See id.*

**\*5** Plaintiff attempts to contravene the *Rooker-Feldman* doctrine by not mentioning the Family Court anywhere in her Second Amended Complaint and by alleging in a conclusory fashion that race discrimination formed the basis for the Defendants' actions. (Second Am. Compl. ¶ 13.) She argues that she "is not requesting the Federal Court herein to review the Family Court's determinations regarding custody, neglect and visitation of the children, but is seeking damages for a Civil Rights violation." (Pl.'s Mem. in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Mem.") 1.) Her argument cannot succeed. The fact that Plaintiff is alleging a new claim-discrimination-does not change the injury about which she complains. That injury-the removal of the children from her custody-was caused by the Family Court judgment. [9] "[A] federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court." *Hoblock,* 422 F.3d at 86.

Similarly, Plaintiff does not avoid *Rooker-Feldman* by seeking damages instead of injunctive relief. In order to award damages to Plaintiff, the Court would have to review the decision of the Family Court. *See McLean v. City of New York,* No. 04 Civ. 8353, 2007 WL 415138, at \*4 (S.D.N.Y. Feb. 6, 2007) ("[B]y seeking damages for violations of their parental rights, plaintiffs are in effect asking this Court to reject the Family Court's findings and reverse its judgment ordering the children's removal from plaintiffs' custody."); *Phillips v. City of New York,* 453 F.Supp.2d 690, 718 (S.D.N.Y.2006) (explaining that *Rooker-Feldman* bars a federal suit seeking damages, "if the federal suit nonetheless complains of injury produced by a state-court judgment"). This case is precisely the type of "federal suit [ ] that purport[s] to complain of injury by individuals [but] in reality complain[s] of injury by state-court judgment[ ]." *Hoblock,* 422 F.3d at 88.

The second requirement of *Rooker-Feldman,* however, does not pertain to Plaintiff's Third Cause of Action, which complains of the treatment that Plaintiff's children received once they were in Defendants' care, treatment that was not directed by the Family Court's orders. (Second Am. Compl. ¶¶ 25-32.) Plaintiff alleges that the children were abused by their step-families and otherwise did not receive proper foster care. (*Id.*) The complained-of injury here allegedly occurred after the Family Court judgment, but it was not "caused by" that state-court judgment. *See McKithen v. Brown,* 481 F.3d 89, 98 n. 9 (2d Cir.2007) (discussing the concept of causation in the *Rooker-Feldman* context). Accordingly, the Third Cause of Action survives dismissal on *Rooker-Feldman* grounds. *See McLean,* 2007 WL 415138, at \*3 ("If *all* four [*Rooker-Feldman* ] conditions apply, the federal court lacks subject matter jurisdiction to adjudicate the case.") (emphasis added). [10]

The Court turns now to the third requirement of the *Rooker-Feldman* doctrine to assess whether Plaintiff invites district court review and rejection of a state-court judgment. With regard to Plaintiff's First, Second, and Fourth Causes of Action, this requirement is plainly met. The Second Amended Complaint alleges that the determination to remove Plaintiff's children from Plaintiff's custody "was made despite the fact that plaintiff ... had evidence and proof of her innocence to allegations of abuse and neglect" (Second Am. Compl. ¶ 5), that the "original [removal/custody] determination was made upon erroneous grounds" (*id.* ¶ 12), that

the standards applied to plaintiff were "unfair, unjust, and illegal" (*id.* ¶ 20), and that the allegations that Plaintiff neglected her children were "unproven" (*id.* ¶ 35). Essentially, Plaintiff is asking the Court to review the Family Court's decisions to remove Plaintiff's children from her home, place them in the temporary custody of Defendants, and ultimately revoke Plaintiff's parental rights and give custody to Defendants. This the Court cannot do. *See Hoblock,* 422 F.3d at 86 ("[A] federal suit is ... barred by *Rooker–Feldman* ... if it ... seeks review and rejection of [a state-court] judgment."). Thus, the third requirement of the doctrine is met.

**\*6** Finally, the Court must consider whether the instant federal suit followed the state court judgment or was initiated prior to final judgment. The Family Court order terminating Plaintiff's parental rights and committing custody to Defendants was issued and signed by Judge Larabee on April 13, 2004, but it was not entered by the Clerk of the Family Court until August 26, 2004.[11] Plaintiff filed the instant suit on June 14, 2004, but she filed the Second Amended Complaint on January 13, 2005, well after the judgment terminating Plaintiff's parental rights. Because the filing of the Second Amended Complaint makes the initial complaint a nullity, *see Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977) ("[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect."), the operative complaint, Plaintiff's Second Amended Complaint, followed the state court judgment. Moreover, there is no question that even Plaintiff's initial complaint was filed well after the August 1999 Family Court Order. That order-an "Order of Disposition Neglect"-removed Plaintiff's children from her custody and placed them in the custody of Defendants. It is the source of Plaintiff's alleged injuries, and is therefore the operative order for the purposes of *Rooker–Feldman.* Because New York state courts have adopted the position that "an order of disposition is synonymous with a final order or judgment," *see* Douglas J. Besharov, Practice Commentaries, McKinney's Consol. Laws of N.Y., N.Y. Jud. Ct. § 1112 (1999), the Court considers the August 1999 Family Court Order a final judgment subject to *Rooker–Feldman* dismissal.

In sum, with regard to the First, Second, and Fourth Causes of Action, each of the requirements of the *Rooker–Feldman* doctrine is met, and therefore the Court lacks jurisdiction over those claims.

### C. Jurisdiction Over Plaintiff's Third Cause of Action

Plaintiff's Third Cause of Action alleges that Plaintiff's children received improper foster care and suffered abuse by their step-families. These claims are brought on behalf of Eugene, Robert, and Joseph Lomnicki. As Plaintiff's attorney admitted at oral argument on the instant motions, Plaintiff lacks standing to bring claims on behalf of the children, since her parental rights were terminated by the Family Court. The Court notes that it previously appointed a guardian ad litem for the children, *Lomnicki,* No. 04-CV-4548 (S.D.N.Y. Dec. 13, 2005), and the guardian, who is representing the children as counsel, has not opposed Defendants' motions.

In any case, Plaintiff appears to be claiming negligence and battery-common law torts. Because the Third Cause of Action concerns state torts, not federal law, and because the Plaintiff has not asserted diversity jurisdiction, the Court lacks an independent basis for federal jurisdiction over these remaining claims. 28 U.S.C. §§ 1331, 1332. Having dismissed Plaintiff's First, Second, and Fourth Causes of Action for lack of subject matter jurisdiction (and the First Cause of Action for failure to state a claim, as discussed below), the Court also does not have a basis to exercise, and even if it had a basis it would not exercise, supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367 ("[I]n any civil action *of which the district courts have original jurisdiction,* the district courts shall have supplemental jurisdiction."). Therefore, the Third Cause of Action is dismissed for lack of subject matter jurisdiction.

### D. Plaintiff's First Cause of Action Fails to State a Claim

**\*7** Even were the Court to construe Plaintiff's Affidavit in Opposition to Defendants' Motion as an attempt at a Third Amended Complaint, and deem it to allege discriminatory conduct by ACS and CMS independent of carrying out the Family Court order-i.e., conduct relating to the initiation of court proceedings and the placement of the children-those claims would be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Despite the dubious nature of these claims-not ever made in state court or in the first two complaints in this action but only added after the Court mentioned *Phifer,* 289 F.3d at 49-the allegations would be assumed to be true. But the allegations fail to state a claim. First, they are conclusory and therefore insufficient. *See E &*

*L Consulting, Ltd. v. Doman Indus.,* 472 F .3d 23, 28 (2d Cir.2006) ("[C]onclusory statements are not a substitute for minimally sufficient factual allegations."). Second, they fail as to New York City because Plaintiff does not allege the elements necessary to hold a municipality liable under *Monell v. Department of Social Services,* 436 U.S. 658 (1978). According to *Monell,* municipalities "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. Rather, a city may only be held liable if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ...." *Id.* Yet, nothing in the Second Amended Complaint or Plaintiff's Affidavit remotely alleges the existence of an unconstitutional city policy or custom regarding foster children, and counsel conceded at oral argument that he has no basis to make such an allegation. Third, Plaintiff's claims fail as to CMS because they only allege racist comments by employees, not that Plaintiff or her children were ever discriminated against because of their race. There are no facts alleged that are "claimed to constitute intentional discrimination [or that give] rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College,* 35 F.3d 709, 713 (2d Cir.1994). Fourth, as noted above, and as conceded by counsel at oral argument, Plaintiff has no standing to allege claims on behalf of the children. Therefore, even if Plaintiff's discrimination claims were to survive Fed.R.Civ.P. 12(b)(1) dismissal, they would be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). [12]

*III. Conclusion*

Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is GRANTED. Defendants' remaining motion to dismiss pursuant to Rules 12(b)(6), 12(h), and 9 of the Federal Rules of Civil Procedure are moot. The Clerk of the Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2176059

Footnotes

1    The Second Amended Complaint states that "[Plaintiff's] children were adjudicated to be neglected children and were placed in the custody of the defendants," without mentioning that it was the New York State Family Court that conducted the adjudication and ordered Plaintiff's children to be removed from her care. (Second Am. Compl. ¶ 3.) The Court takes judicial notice of this fact and of the relevant Family Court orders. *See* Fed.R.Evid. 201(b); *Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir.2000) (explaining that a court may take judicial notice of public records).

2    The dearth of specifics in the Second Amended Complaint is notable. For example, the Second Amended Complaint does not contain any dates of when illegal actions allegedly occurred. It does not even list the ages of Plaintiff's children.

3    Plaintiff amended her original complaint to add this discrimination claim only after the Court suggested at the initial conference on November 19, 2004 that jurisdiction might be lacking. Plaintiff had submitted a default judgment prior to the conference because Defendants had not yet appeared. During the conference, the Court advised counsel for Plaintiff that the case had serious *Rooker-Feldman* problems, and citing *Phifer v. City of New York,* 289 F.3d 49 (2d Cir.2002), noted that alleging racial discrimination was one of the few exceptions for federal litigants to avoid *Rooker-Feldman* dismissal in cases involving state parental custody disputes. It also bears noting that even though at oral argument counsel for Plaintiff described the discrimination claim as the "crux" of Plaintiff's case, Plaintiff never made any claims of discrimination in the five years of litigation in the family court.

4    Initially, there was another lawyer hired by the mother to represent the children, but he agreed that he too had a conflict. *Lomnicki v. Cardinal McCloskey Servs.,* No. 04-CV-4548 (S.D.N.Y. Jan. 1, 2007) (so ordered stipulation substituting counsel).

5    At a conference on July 13, 2006, counsel for Eugene, Robert, and Joseph indicated that the children would not oppose the motion to dismiss. (Conf. Tr. 37, July 13, 2006.)

6    Habeas review is a notable exception to this jurisdictional rule. *See* 28 U.S.C. § 2254(a); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292 n. 8 (2005).

7    Complete identity of all parties does not appear necessary. *Hoblock* states that "the parties in the state and federal action must be the same" but not that "*all* parties" must be the same. *Hoblock,* 422 F.3d at 89. It would not make sense for a plaintiff to be able to frustrate *Rooker-Feldman* simply by naming an additional defendant who was not a party to the state

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.  6

2007 WL 2176059

court action. Further, as Judge Castel observed in *Bush v. Danziger,* No. 06 Civ. 5529, 2006 WL 3019572 (S.D.N.Y. Oct. 23, 2006), the Supreme Court "has held that *Rooker-Feldman* may not be asserted against a non-party to the underlying state-court proceeding, [but] the Court has not held that there must be complete identity of plaintiffs or parties in the two proceedings." *Id.* at *4 n. 3 (citing *Lance v. Dennis,* 126 S.Ct. 1198, 1201 (2006) (per curiam)). Thus, while the children nominally are listed as plaintiffs here, their absence as parties in the Family Court is irrelevant.

8    Again, it bears noting that counsel on behalf of the children is not opposing this motion, and, in fact, argues that Ms. Lomnicki has no standing to prosecute this case on behalf of the children.

9    Even if Plaintiff's discrimination claim can be more broadly construed, as suggested by her Affidavit in Opposition to Defendants' Motion ("Pl.'s Aff."), it would fail to state a claim. This is discussed below in Section D.

10   Nonetheless, the Court will dismiss this cause of action on other jurisdictional grounds, as discussed in section C below.

11   The Court notes that this judgment was appealed, but that the judgment was final for *Rooker-Feldman* purposes. *See Galtieri v. Kelly,* 441 F.Supp.2d 447, 458 n. 9 (E.D.N.Y.2006) (noting that state-court judgment was final under *Rooker-Feldman* even though the state-court appeal was pending).

12   Given the dearth of substance in Plaintiff's Affidavit, dismissal under 12(b)(6) would be with prejudice. Plaintiff has already had two opportunities to amend her complaint, and her Affidavit submitted in connection with the instant motions makes clear that she would be unable to state a claim of discrimination even if given another chance at filing a complaint. *Cf. Van Buskirk v. N.Y. Times Co.,* 325 F.3d 87, 91 (2d Cir.2003) ("[A] court granting a 12(b)(6) motion should consider a dismissal without prejudice when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotations removed).

---

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 1877141
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert MATTHEWS, Plaintiff,
v.
Timothy BREEN, Defendant.

No. 1:06–CV–0704 (GLS)(DRH).
|
July 6, 2006.

**Attorneys and Law Firms**

Robert Matthews, pro se.

**Opinion**

### MEMORANDUM–DECISION and ORDER

GARY L. SHARPE, District Judge.

### I. Introduction

*1 Presently before this Court is a complaint filed by Robert Matthews, together with a request for a temporary restraining order and preliminary injunctive relief. Matthews, who has not paid the statutory filing fee for this action, has also filed an application to proceed *in forma pauperis.*

By his *pro se* complaint, Matthews alleges that his civil and constitutional rights were violated as a result of the issuance of a "Matrimonial Judgment" on January 21, 2006. Dkt. No. 1 at 2. According to the complaint, the "Matrimonial Judgment" was issued by defendant, Timothy Breen, Acting New York Supreme Court Justice for Warren County, in a divorce proceeding in which Matthews was the defendant. *Id.* Matthews claims that Justice Breen misapplied various provisions of New York law and "neglected his judicial duties" in the course of the divorce proceedings. *Id.* at 4–8. Matthews seeks an order of this Court declaring the Matrimonial Judgment unconstitutional, enjoining any party from enforcing the provisions of thereof pertaining to Matthews' residence and pension, and "remanding" the proceeding for entry of judgment in favor of Matthews. *Id.* at 8–12. For a

complete statement of Matthews' claims, reference is made to the complaint. [1]

### II. Discussion

Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000)* (district court may dismiss frivolous complaint *sua sponte* notwithstanding fact that plaintiff has paid statutory filing fee).

In this case, where Matthews seeks to proceed *in forma pauperis,* the Court must also assess the sufficiency of the complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that when a plaintiff seeks to proceed *in forma pauperis,* the Court:

> (2) [S]hall dismiss the case at any time if the Court determines that—
>
> * * *
>
> (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B). Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis,* it is the Court's responsibility to determine that a complaint may properly be maintained in the District before it may permit the plaintiff to proceed with his or her action *in forma pauperis. Id .* [2]

The law in this Circuit clearly provides that "[j]udges enjoy **absolute immunity** from personal liability for 'acts committed within their judicial jurisdiction.' " *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994) (emphasis added) (quoting *Pierson v. Ray,* 386 U.S. 547 (1967)). "The absolute immunity of a judge applies however erroneous the act may have been, and however injurious in its

consequences it may have proved to the plaintiff." *Young,* *41 F.3d at 51* (internal quotations omitted).

**\*2** As noted, the sole defendant in this action is the Acting Supreme Court Justice who presided over the divorce proceeding and issued the orders complained of by Matthew. These actions were clearly within the defendant's "judicial jurisdiction." Because the sole defendant is absolutely immune from suit under 42 U.S.C. § 1983, this action is dismissed, with prejudice.

In light of Matthews' *pro se* status, the Court has examined the complaint carefully to determine whether any basis exists for this Court's exercise of jurisdiction over his claims, and concludes that it does not. Federal district courts "do not have jurisdiction ... over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional ." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 414–16, 44 S.Ct. 149, 150 (1923). This principal of comity has become known as the Rooker–Feldman doctrine. The essence of the Rooker–Feldman doctrine is that inferior federal courts have no authority to review judgments of state courts in judicial proceedings and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court. *Phifer v. City of New York,* 289 F.3d 49, 55–56 (2d Cir.2002); *Rogers–Fink v. Cortland County Dep't of Social Servs.,* 855 F.Supp. 45, 47 (N.D.N.Y.1994) (Scullin, J.).

Moreover, federal courts generally lack subject matter jurisdiction over claims arising out of domestic relations matters:

A century ago, ..., the Supreme Court, sagely circumscribed the jurisdiction of federal courts as regards domestic relations when it held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ex parte Burris,* 136 U.S. 586, 594, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890).... This Court applied this principle in *Lhotan v. D'elia,* 415 F.Supp. 826 (E.D.N.Y.1976) when it held "[f]ederal courts do not adjudicate cases involving the custody of minors or rights of visitation [because t]hat is

the function of the States." *Id.* at 827 (dismissing foster parents' suit seeking writ of habeas corpus requiring director of county department of social services to direct placement of foster children).

*Neustein v. Orbach,* 732 F.Supp. 333, 339 (E.D.N.Y.1990). [3] *See also Martin v. Chiles,* 63 F.Supp. 133, 136 (S.D.Fla.1991) (federal courts generally dismiss cases involving divorce, alimony, child custody, visitation rights and enforcement of separation or divorce decrees still subject to state court modification).

In this case, where Matthews' claims arise out of and assert the unconstitutionality of the decision rendered by the Warren County Supreme Court in a domestic relations matter best left to the state courts, this Court lacks subject matter jurisdiction of the claims and must therefore dismiss the complaint.

**\*3** In light of the dismissal of this action, Matthews' application for leave to proceed *in forma pauperis* (Dkt. No. 2) and for injunctive relief (Dkt. No. 3) are denied.

### III. Conclusion

For the reasons set forth above, the complaint fails to state a claim upon which relief may be granted by this Court, and is therefore dismissed, with prejudice.

WHEREFORE, it is hereby

ORDERED, that this action is dismissed, with prejudice, and it is further

ORDERED, that Matthews' application to proceed *in forma pauperis* (Dkt. No. 2) is denied, and it is further

ORDERED, that Matthews' request for injunctive relief (Dkt. No. 3) is denied, and it is further

ORDERED, that the Clerk serve a copy of this Decision and Order on Matthews. IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2006 WL 1877141

**Matthews v. Breen, Not Reported in F.Supp.2d (2006)**

2006 WL 1877141

Footnotes

1    In addition, a copy of the Matrimonial Judgment and several other documents relating to the divorce proceeding were submitted in support of Matthews' application for injunctive relief. Dkt. No. 3.

2    Matthews has demonstrated sufficient economic need to proceed *in forma pauperis.* Dkt. No. 2.

3    The *Neustein* court also noted that "on rare occasions, the federal courts have gingerly forayed into the domestic relations arena but only to resolve claims that are traditionally adjudicated in federal court." 732 F.Supp. at 339. Matthews' claims, however, appear to fall squarely within the domestic relations exception to the exercise of federal jurisdiction.

---

**End of Document**                                      © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 435310
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States District Court,
D. New Jersey,
**Camden Vicinage**.

Tyrell McKenzie, Plaintiff,

v.

Watson, Defendant.

CIV. NO. 16-5029 (RMB)
|
Signed 01/31/2017
|
Filed 02/02/2017

**Attorneys and Law Firms**

Tyrell McKenzie, Bridgeton, NJ, pro se.

**Opinion**

**OPINION**

RENÉE MARIE BUMB, U.S. District Judge

**\*1** This matter comes before the Court upon Plaintiff's submission of a prisoner civil rights complaint (Compl., ECF No. 1), and an application to proceed in forma pauperis (ECF No. 1-2.) Plaintiff is confined in Talbot Hall [1] in Kearny, New Jersey. (Id., ECF No. 1 at 3.)

Plaintiff has established his inability to pay the filing fee, and his IFP application will be granted pursuant to 28 U.S.C. § 1915. I. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) and § 1915A

After Plaintiff pays the filing fee or is granted in forma pauperis status, the Court is required to review a prisoner's civil rights complaint under 28 U.S.C. § 1915(e)(2)(B) and § 1915A. The Court must dismiss any claims that are: (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A.

II. DISCUSSION

A. The Complaint
Plaintiff alleges the following in the Statement of Claims section of his Complaint:

> I was call by Watson and one other
> Talbot Hall Staffs to give a urine.
> Once I was down stair with the two
> I was given a cup and was told to
> drop my pant and underwear and
> turn around with my butt facing the
> two staffs and urine in the cup.

(Compl., ECF No. 1, ¶ 6.) Plaintiff alleged his constitutional rights were violated, but he did not identify the right. (Id., ¶ 5.) The Court assumes Plaintiff intended to raise a Fourth Amendment claim for unreasonable search and seizure.

B. Standard of Review
A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.)

"[A] court must accept as true all of the allegations contained in a complaint." Id. A court need not accept legal conclusions as true. Id. Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

## C. Analysis

**\*2** Plaintiff is confined in Talbot Hall, a halfway house. Halfway houses are institutional confinement similar to prison. *Asquith v. Dept. of Corr.*, 186 F.3d 407, 411 (3d Cir. 1999). The Fourth Amendment proscription against unreasonable search and seizure applies to bodily searches in prison. *Parkell v. Danburg*, 833 F.3d 313, 325 (3d Cir. 2016). The contours of a prisoner's Fourth Amendment rights are very narrow. Id. at 326. Courts must balance " 'the need for the particular search against the invasion of personal rights that the search entails.' " Id. (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. A prisoner search policy is constitutional if it strikes a reasonable balance between the inmate's privacy and the needs of the institution. Id. (citing *Florence v. Board of Chosen Freeholders of County of Burlington*, 132 S.Ct. 1510, 1523 (2012)).

Plaintiff has not clearly indicated whether the drug test here was random or based on reasonable suspicion or probable cause. He has not identified whether his consent to random drug testing by direct observation was a condition of confinement in Talbot Hall or whether he is aware of any justification by the institution for requiring the type of drug test he underwent. Although Plaintiff indicated that the test took place downstairs, he did not describe whether it was conducted in open view of any persons other than the two staff members who were present. See *Smart v. Intensive Supervision Program*, 651 Fed.Appx. 136, 139 (3d Cir. 2016) (holding direct observation method of drug testing was a reasonable search under the Fourth Amendment in the context of the New Jersey Intensive Supervision Program).

## III. CONCLUSION

Therefore, the Court will dismiss the complaint without prejudice because Plaintiff has not alleged sufficient facts for the Court to determine whether the drug test violated the reasonableness requirement of the Fourth Amendment. Plaintiff will be permitted to amend his complaint to cure this deficiency.

An appropriate order follows.

**All Citations**

Slip Copy, 2017 WL 435310

Footnotes

1    Talbot Hall is a residential assessment and treatment center whose residents are referred through the New Jersey Department of Corrections. Available at http://www.cecintl.com/reentry/residential-reentry-locations/talbot-hall/

**End of Document**                                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 5201738
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michael Joseph ROTONDO, Plaintiff,

v.

The State of NEW YORK, Defendant.

Civil Action No. 5:17-CV-1065 (GLS/DEP)

|

Signed 10/31/2017

**Attorneys and Law Firms**

MICHAEL JOSEPH ROTONDO, 408 Weatheridge Dr.,
Camillus, NY 13031, Pro se.

**Opinion**

ORDER, REPORT, AND RECOMMENDATION

David E. Peebles, U.S. Magistrate Judge

**\*1** This is a civil rights action brought by *pro se* plaintiff Michael Joseph Rotondo against the State of New York pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that during the course of proceedings in New York State court, he was denied due process.

Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been forwarded to me for review. Based upon my review of those materials, I conclude that plaintiff qualifies for leave to proceed without prepayment of fees, and therefore will grant his IFP application. I further find, however, that plaintiff's claims in this action are precluded by the *Rooker-Feldman* [1] doctrine and the domestic relations exception to this court's jurisdiction.

I. BACKGROUND

Plaintiff commenced this action on September 25, 2017. Dkt. No. 1. Named as the sole defendant in the action is the State of New York. *Id.* at 1. Plaintiff claims that throughout the course of proceedings in the New York State Supreme Court Appellate Division, Fourth Judicial Department, he was denied due process when (1) Associate Justice Edward D. Carni declined to issue

an order to show cause applied for by plaintiff to stay a support order entered in Onondaga County Family Court, and (2) the court dismissed his appeal from lower court proceedings and denied a motion by plaintiff for a transfer of venue. *Id.* at 3, 5. *See also* Dkt. No. 1 at 8-11. In his three causes of action plaintiff claims that he was denied due process, as guaranteed under the Fourteenth Amendment to the United States Constitution, by Judges Edward D. Carni, John V. Centra, Patrick H. NeMoyer, Shirley Troutman, Joanne M. Winslow, Henry J. Scudder, Gerald J. Whalen, Nancy E. Smith, Erin M. Peradotto, Stephen K. Lindley, and John M. Curran. [2] *Id.* at 5.

Plaintiff's complaint is accompanied by an application for leave to proceed without prepayment of fees or costs. Dkt. No. 2. That application sets forth the necessary financial information concerning plaintiff's income and expenses to permit the court to determine whether he qualifies for IFP status.

II. DISCUSSION

A. IFP Application

**\*2** When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [3] In this instance, because I conclude that plaintiff meets the requirements for IFP status, his application for leave to proceed without prepayment of fees is granted. [4]

B. Sufficiency of Plaintiff's Complaint

1. Standard of Review

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See*, *e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

**\*3**  When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### 2. Analysis

Federal district courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). In accepting matters for adjudication, district courts must insure that the subject matter requirement is met, and may raise the question of jurisdiction *sua sponte* at any point in the litigation. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir. 1997) ("[A] challenge to subject matter jurisdiction ... may be raised ... *sua sponte*." (quotation marks and alterations omitted)). "Where jurisdiction is lacking, ... dismissal is mandatory." *United Food & Commercial Workers Union, Local 919, AFL–CIO v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In this case, two legal doctrines implicating this court's jurisdiction require dismissal of plaintiff's complaint— the domestic-relations exception and *Rooker-Feldman* doctrine. I will address each separately below.

#### a. Domestic-Relations Exception

Because plaintiff's claims, brought under 42 U.S.C. § 1983, are couched in terms of constitutional deprivations, the

court would ordinarily possess subject matter jurisdiction over them. 28 U.S.C. §§ 1331, 1343. There exists, however, a judicially recognized exception to federal subject matter jurisdiction in matters involving domestic relations. *Ankenbrandt v. Richards*, 504 U.S. 689, 701-04 (1992); *Thomas v. N.Y.C.*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has "recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.' " [5] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) (quoting *Ankenbrandt*, 504 U.S. at 703).

**\*4** The exception recognizes that "the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack." *Thomas*, 814 F. Supp. at 1146 (citing *Ankenbrandt*, 504 U.S. at 703-04). "The doctrine also rests on the idea that state courts are peculiarly suited to enforce state regulations and domestic relations decrees involving alimony and child custody particularly in light of the fact that such decrees often demand substantial continuing judicial oversight." *Id.*

In this case, it is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction. Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court. Dkt. No. 1 at 3, 6. In order to adjudicate plaintiff's claims, this court would be forced to examine the family court and Appellate Division decisions, and the evidence upon which those decisions were rendered, in the domestic relations proceedings. Because the court lacks jurisdiction over plaintiff's claims, I recommend the complaint be dismissed. *See, e.g., Kneitel v. Palos*, No. 15-CV-2577, 2015 WL 3607570, at \*4-5 (E.D.N.Y. June 8, 2015) (relying on the domestic-relations exception to federal court jurisdiction when dismissing the plaintiff's claims that challenged the state courts' determinations concerning his child support obligations).

### b. *Rooker-Feldman*

Plaintiff's claims are also precluded by the *Rooker-Feldman* doctrine, which recognizes that, except for the

Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). Under the *Rooker-Feldman* doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen*, 626 F.3d at 154 (citation omitted). The *Rooker-Feldman* doctrine relates to "lack of subject matter jurisdiction, and may be raised at any time by either party or sua sponte by the court." *Moccio v. N.Y.S. Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

This preclusion "merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, a role which Congress has reserved to [the Supreme Court]." *Verizon Md. Inc. v. Public Svc. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002). In other words, district courts do not have jurisdiction to hear cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

"A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action.' " *Rabinowitz v. N.Y.*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *McKithen*, 481 F.3d at 97 (quotation marks omitted).

**\*5** The four elements required for the application of the *Rooker-Feldman* doctrine are clearly satisfied in this case. In his complaint, plaintiff effectively asks this court to assume appellate jurisdiction over matters pending in a New York State family court and the Appellate Division. Dkt. No. 1 at 3, 6. Because plaintiff's claims are

precluded on this separate and independent basis, as well, I recommend their dismissal.

C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this instance, the deficiencies identified in this report are substantive in nature and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, because I find that any amendment that might be offered by plaintiff would be futile, I recommend against granting him leave to amend.

III. SUMMARY AND RECOMMENDATION

Because plaintiff's IFP application demonstrates that he qualifies for leave to proceed without prepayment of fees or costs, that application is granted.

Turning to the merits of plaintiff's claims, I conclude that they are precluded by both the domestic relations exception to this court's jurisdiction and the *Rooker-Feldman* doctrine, and that plaintiff would be unable to overcome these deficiencies by better pleading. Accordingly, it is hereby

ORDERED that plaintiff's application for leave to proceed without prepayment of cost and fees (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint in this action be DISMISSED without leave to amend; and it is further

RECOMMENDED that plaintiff's letter requesting the court expedite review of this matter (Dkt. No. 4) be DENIED as moot.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [6] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

**\*6** The clerk of the court is respectfully directed to serve a copy of this report, recommendation, and order on plaintiff in accordance with the local rules of practice for this court.

**All Citations**

Slip Copy, 2017 WL 5201738

Footnotes

1    *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

2    As was previously indicated, the sole named defendant in this case is the State of New York. In the event that plaintiff intended to name the judges identified in his causes of action as defendants, his claims against them would be precluded. "It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert*, 320 F. Supp. 2d 39, 40-41 (W.D.N.Y. 2004) (citing *Mireles v. Waco*, 502 U.S. 9, 10 (1991)); *see also Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been,

2017 WL 5201738

and however injurious its consequences were to the plaintiff. *Young,* 41 F.3d at 51. It should be noted, however, that "a judge is immune only for actions performed in his judicial capacity." *DuQuin,* 320 F. Supp. 2d at 41.

3    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.,* 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

5    "[A]lthough the domestic relations exception originated in the context of diversity cases, some courts have applied the exception in cases based upon federal question jurisdiction since the policy considerations which underlie the domestic relations exception may apply with equal force in cases arising under the court's federal question jurisdiction." *Thomas,* 814 F. Supp. at 1146 (citations omitted).

6    If you are proceeding *pro se* and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

End of Document    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    5

2017 WL 5198194
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michael Joseph ROTONDO, Plaintiff,
v.
The State of NEW YORK, Defendant.

5:17-cv-1065 (GLS/DEP)
|
Signed 11/09/2017

**Attorneys and Law Firms**

FOR PLAINTIFF: Michael Joseph Rotondo, 408
Weatheridge Dr. Camillus, NY 13031, pro se.

**Opinion**

### ORDER

Gary L. Sharpe, U.S. District Judge

*1 The above-captioned matter comes to this court
following an Order, Report, and Recommendation
(R&R) by Magistrate Judge David E. Peebles, duly filed
on October 31, 2017. (Dkt. No. 5.) Following fourteen
days from the service thereof, the Clerk has sent the file,
including any and all objections filed by the parties herein.

Plaintiff *pro se* Michael Joseph Rotondo has filed
a document labeled "Objections to the Report-
Recommendation," which consists of a single sentence
wherein he summarily "respectfully reasserts the merit
of his allegations." (Dkt. No. 6.) Because Rotondo's
objections are general and conclusory, the court will
review the R&R for clear error only. *See Almonte v.
N.Y.S. Div. of Parole*, No. Civ. 904CV484, 2006 WL
149049, at *5-*6 (N.D.N.Y. Jan. 18, 2006). After careful
consideration, the court finds no clear error and adopts
the R&R in its entirety.

Accordingly, it is hereby

**ORDERED** that the Order, Report, and
Recommendation (Dkt. No. 5) is **ADOPTED** in its
entirety; and it is further

**ORDERED** that Rotondo's complaint (Dkt. No. 1) is
**DISMISSED** without leave to amend; and it is further

**ORDERED** that Rotonodo's letter motion seeking to
expedite review of this matter (Dkt. No. 4) is **DENIED** as
moot; and it is further

**ORDERED** that the Clerk provide a copy of this Order to
the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2017 WL 5198194

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 1323931
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jeanette WOOLSEY, Plaintiff,
v.
Desiree Ann MITZEL and
Charles Mitzel, Defendants.

Civil Action No. 1:17-CV-0033 (TJM/DEP)
|
Signed 03/06/2017

**Attorneys and Law Firms**

JEANETTE WOOLSEY, 132 North Washington Street, Winchester, VA 22601, Pro Se.

**Opinion**

REPORT AND RECOMMENDATION

David E. Peebles, U.S. Magistrate Judge

 **\*1**  This is an action brought by *pro se* plaintiff Jeanette Woolsey against two individuals who appear to have been granted custody of plaintiff's biological daughter, "R.M.R." Following commencement of the action, which was filed in another district, and its transfer to this court, plaintiff submitted an amended complaint using a form designed to assert civil rights causes of action pursuant to 42 U.S.C. § 1983, adding several defendants, providing a more comprehensive description of her claim, and attaching a variety of documents.

Although plaintiff has paid the statutory filing fee, I have reviewed plaintiff's amended complaint based upon the inherent authority of the court. Because I conclude that the court lacks jurisdiction of the causes of action that are discernible, and the pleading is otherwise frivolous, I recommend that plaintiff's amended complaint be dismissed, with leave to replead.

I. BACKGROUND

Plaintiff commenced this action in the United States District Court for the Eastern District of New York on or about October 5, 2016. Dkt. No. 1. Plaintiff's complaint names Desiree Ann Mitzel and Charles Mitzel as defendants, and is comprised of seven pages, including forty-five additional pages of attachments of varying description. *See generally id.* In the pleading, which is difficult to decipher, plaintiff appears to seek custody of her biological daughter who, through New York State Family Court proceedings, has been placed in the custody of defendants. *Id.* Following commencement of the action, District Judge LaShann DeArcy Hall issued an order, dated January 9, 2017, directing that it be transferred to this court pursuant to 28 U.S.C. § 1406(a). [1] Dkt. No. 7.

On or about January 27, 2017, prior to any appearance on behalf of the Mitzel defendants, plaintiff filed an amended complaint. Dkt. No. 12. The amended pleading is comprised of twenty-one pages and accompanied by 285 pages of attached exhibits. *Id.* In her amended complaint plaintiff seeks to add several defendants, including governmental agencies and departments, private entities, and public and private individuals. *Id.* Like its predecessor, plaintiff's amended complaint is difficult to interpret and appears to center upon her efforts to secure custody of her biological daughter and her interactions with various social services agencies and child protective services. *Id.*

II. DISCUSSION

A. Authority to Review

Had plaintiff requested and been granted leave to proceed in the action without prepayment of fees, the court would had been required to review the claims set forth in her complaint for legal sufficiency under 28 U.S.C. § 1915(e). Plaintiff, however, did not request IFP status and instead paid the full filing fee upon commencing suit.

 **\*2**  Despite the fact that plaintiff has paid the filing fee, the court is not divested of the power to review her amended complaint in this action *sua sponte.* It is well-established that the court possesses the inherent power to dismiss actions when they are frivolous. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000); *see also Preacely v. City of N.Y.*, 622 Fed.Appx. 14, 15 (2d Cir. 2015); *MacKinnon v. City of N.Y./Human Res. Admin.*, 580 Fed.Appx. 44, 45 (2d Cir. 2014). In addition, Rule 12(h)(3) requires the court to dismiss any action over which it does not have subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter

jurisdiction, the court must dismiss the action."). Rule 1 of the Federal Rules of Civil Procedure also compels the court to review plaintiff's amended complaint for legal sufficiency and compliance with applicable pleading requirements. [2]

### B. Analysis of Plaintiff's Amended Complaint

In reviewing plaintiff's amended complaint for legal sufficiency, the court has taken into consideration the deference owed to plaintiff as a *pro se* litigant. *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990). Undeniably, a court must exercise caution when ordering *sua sponte* dismissal of a *pro se* complaint, particularly before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations. *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). By the same token, however, the court has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff to proceed. *See, e.g., Fitzgerald*, 221 F.3d at 363. "Legal frivolity occurs when 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exist on the face of the complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

In this case, from what the court is able to discern from plaintiff's amended complaint, it is clear that it sets forth no cognizable legal cause of action over which this court has subject matter jurisdiction. As was noted above, plaintiff's amended complaint focuses on the return custody of her biological daughter following determinations in state family court placing the child in the custody of defendants. Such a claim, however, implicates the judicially recognized exception to federal subject matter jurisdiction in cases involving domestic relations. *Ankenbrandt v. Richards*, 504 U.S. 689, 701-04 (1992); *Thomas v. N.Y.C.*, 814 F. Supp. 1139, 1146

(E.D.N.Y. 1993). Specifically, the Supreme Court has "recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.'" [3] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) (quoting *Ankenbrandt*, 504 U.S. at 703). Accordingly, to the extent plaintiff asserts a claim seeking a determination that she was improperly denied custody of her child, the court lacks jurisdiction to hear such a claim.

**\*3** In addition, because plaintiff's claims appear to seek reversal of the judgments rendered by state family court judges, the *Rooker-Feldman* doctrine precludes litigation of all or some of plaintiff's claims. [4] That legal doctrine recognizes that, with the exception of the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). In the Second Circuit, *Rooker-Feldman* applies when the following four requirements are satisfied: (1) the federal-court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state-court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state-court judgment must have been rendered before the district court proceedings commenced. *McKithen*, 491 F.3d at 97. "A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action.'" *Rabinowitz v. N.Y.*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *McKithen*, 481 F.3d at 97. Accordingly, to the extent plaintiff's amended complaint seeks reversal of the family courts' decisions granting custody of plaintiff's daughter to defendants, such a claim is barred by *Rooker-Feldman*.

Lastly, with respect to any claim that may be asserted in plaintiff's amended complaint that squarely implicates this court's jurisdiction for any reason, the general difficulty presented in evaluating the pleading is that it is rambling, disjointed, and difficult to construe, making the task of determining whether it states a cognizable cause of action in this court an exceedingly difficult one. As was previously noted, the amended complaint consists

of twenty-one pages of handwritten ramblings with little or no organization. Equally troubling is the fact that it is accompanied by 285 pages of exhibits that are not organized or indexed, and many of which bear extensive, and often illegible, handwriting.

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

Plaintiff's amended complaint is anything but a short and plain statement of her asserted claim(s). Moreover, the amended complaint fails to comply with Rule 10 of the Federal Rules of Civil Procedure, which provides, in relevant part, that "[a] party must state its claims or defenses in numbered paragraphs, *each limited as far as practicable to a single set of circumstances.*" Fed. R. Civ. P. 10(b) (emphasis added).

Having carefully considered plaintiff's amended complaint against the foregoing backdrop, and in particular remaining mindful of this court's jurisdictional limitations and Rules 8 and 10 of the Federal Rules of Civil Procedure, I recommend that plaintiff's amended complaint be dismissed. [5]

### C. Whether to Permit Amendment

**\*4** Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, the deficiencies identified above with respect to plaintiff's causes of action that seek custody of her biological daughter and/or to overturn the judgments of the New York State Family Courts granting custody of the child to defendants are substantive in nature, and no further pleading could cure them. Accordingly, I do not recommend that plaintiff be granted leave to file a second amended complaint to reassert those causes of action. However, in light of plaintiff's status as a *pro se* litigant, I recommend that she be granted leave to amend her pleading to the extent she has attempted to raise any other causes of action implicating the court's jurisdiction.

If plaintiff chooses to file a second amended complaint, she should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any second amended complaint, plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Plaintiff is informed that any such second amended complaint will replace the existing amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any

pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

Finally, with respect to the manner in which plaintiff styles and organizes any second amended complaint, plaintiff is reminded that any such pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure, in that it must make allegations that are separated into numbered paragraphs for ease of response by defendants, and that clearly articulate the claims asserted, bearing in mind the jurisdictional issues discussed in this report. While any second amended complaint may be accompanied by exhibits, plaintiff should submit them in original form without editorial comments because, at least with respect to her amended complaint and its accompanying attachments in their current form, it is unclear whether defendants are obligated to respond to the handwritten notations placed on many of the attachments. Plaintiff's second amended complaint should also succinctly and clearly state the relief she is seeking in a manner that permits the court to determine whether it has subject matter jurisdiction to grant the relief sought.

## III. SUMMARY AND RECOMMENDATION

**\*5** Liberally construing plaintiff's amended complaint, it appears that she is attempting to assert causes of action over which the court does not have jurisdiction. Much of the amended pleading, moreover, is not clearly discernible and violates Rules 8 and 10 of the Federal Rules of Civil Procedure. Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's amended complaint (Dkt. No. 12) be DISMISSED as frivolous, with leave to replead only with respect to claims that do not directly relate to plaintiff's attempt to regain custody of her biological daughter, as this court does not have jurisdiction over them.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [6] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Slip Copy, 2017 WL 1323931

Footnotes

1    Plaintiff has sought reconsideration of that court's transfer order. Dkt. No. 17. Although plaintiff's motion appears to be addressed to District Judge DeArcy Hall, a copy of the motion was filed with this court. *Id.* Once the action was transferred, the Eastern District of New York was divested of jurisdiction in the case, and lost the authority to review the transfer order. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516-17 (10th Cir. 1991); *accord, Hill Dermaceuticals, Inc. v. Galderma*, No. 03-CV-2509, 2003 WL 21146634, at *1 (S.D.N.Y. May 15, 2003).

2    Rule 1 of the Federal Rules of Civil Procedure provides as follows:
          These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

3    "[A]lthough the domestic relations exception originated in the context of diversity cases, some courts have applied the exception in cases based upon federal question jurisdiction since the policy considerations which underlie the domestic relations exception may apply with equal force in cases arising under the court's federal question jurisdiction." *Thomas, 814 F. Supp. at 1146* (citations omitted).

4    *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

5    It is worth noting that Senior District Judge Thomas J. McAvoy recently issued a decision and order with respect to a motion filed by plaintiff seeking a temporary restraining order. Dkt. No. 21. In addition to citing the domestic relations and *Rooker-Feldman* exceptions to jurisdiction, in his decision Judge McAvoy opined that plaintiff's claims that request the court to restore custody of her daughter with plaintiff are also barred by the abstention doctrine pursuant to *Younger*

*v. Harris*, 404 U.S. 37 (1971), in light of ongoing related state court proceedings. *Id.* at 6-10. In light of that analysis, I recommend dismissal of plaintiff's claims concerning custody on that legal doctrine, as well.

6    If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 1322197
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jeanette WOOLSEY, Plaintiff,
v.
Desiree Ann MITZEL and
Charles Mitzel, Defendants.

Civil Action No. 1:17-CV-0033 (TJM/DEP)
|
Signed 04/10/2017

**Attorneys and Law Firms**

Jeanette Woolsey, Winchester, VA, pro se.

Desiree Ann Mitzel, Kingston, NY, pro se.

Charles Mitzel, Kingston, NY, pro se.

**Opinion**

### DECISION & ORDER

Thomas J. McAvoy, Senior, U.S. District Judge

## I. INTRODUCTION

**\*1** This *pro se* action brought pursuant to 42 U.S.C.
§ 1983 was referred to the Hon. David E. Peebles,
Chief United States Magistrate Judge, for a Report and
Recommendation pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c). No objections to Magistrate Judge
Peebles' Report and Recommendation [dkt. # 24] have
been filed, and the time to do so has expired.

## II. DISCUSSION

After examining the record, this Court has determined
that the Report and Recommendation is not subject to
attack for plain error or manifest injustice.

## III. CONCLUSION

Accordingly, the Court **ADOPTS** the Report and
Recommendation [dkt. # 24] for the reasons stated
therein. Therefore, plaintiff's amended complaint [dkt. #
12] is DISMISSED as frivolous, with leave to replead
<u>only</u> with respect to claims that do not directly relate
to plaintiff's attempt to regain custody of her biological
daughter.

If plaintiff elects to file a second amended complaint, she
must do so within thirty (30) days from the date of this
Decision and Order. Plaintiff is advised that <u>an amended
complaint **supersedes in all respects** the prior pleading.
Therefore, if plaintiff files a second amended complaint,
she **must properly allege in the second amended complaint
all factual bases for all claims asserted therein, and the
second amended complaint must be in compliance with** Rules
8 and 10 of the Federal Rules of Civil Procedure **as explained
by Magistrate Judge Peebles.** The failure to file a second
amended complaint within this time frame will be deemed
an abandonment of any other potential claims arising
from this matter, and the Court Clerk's Office will close
this file and enter judgment for defendants.</u>

Defendants' Motion to Dismiss [dkt. # 30], is denied
without prejudice as moot.

### IT IS SO ORDERED.

**All Citations**

Slip Copy, 2017 WL 1322197

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.